No. 22-12041
_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**
_____

BRANDON FULTON

*Plaintiff/Appellant*

v.

FULTON COUNTY BOARD OF COMMISSIONERS

*Defendant/Appellee*
_____

**FULTON COUNTY BOARD OF COMMISSIONERS'
BRIEF OF APPELLEE**
_____

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT,
NORTHERN DISTRICT OF GEORGIA, ATLANTA DIVISION
CIVIL ACTION NO. 1:20-cv-01936-SCJ**
_____

MATHEW ELI PLOTT, Assistant County Counsel

**OFFICE OF THE FULTON COUNTY ATTORNEY**
141 Pryor Street, S.W., Suite 4038
Atlanta, Georgia 30303
(404) 612-0246 (Office) | (404) 730-6324 (Facsimile)
mathew.plott@fultoncountyga.gov

*Attorney for Appellee Fulton County Board of Commissioners*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1, the undersigned counsel for Appellee Fulton County Board of Commissioners certify that the following is a full and complete list of all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations (including those related to a party as a subsidiary, conglomerate, affiliate, or parent corporation) that have an interest in the outcome of this particular case:

1. Edwards, John C. (Counsel for Plaintiff/Appellant)

2. Fulton, Brandon (Plaintiff/Appellant)

3. Fulton County Board of Commissioners (Defendant/Appellee)

4. John Edwards Law Group, LLC (Counsel for Plaintiff/Appellant)

5. Jones, The Honorable Steve C. (United States District Judge)

6. Office of the Fulton County Attorney (Counsel for Defendant/Appellee)

7. Plott, Mathew (Counsel for Defendant/Appellee)

8. Lee & Ziegler, LLP (Counsel for Plaintiff/Appellant)

9. Rosenberg, Steven (Former Counsel for Defendant/Appellee)

10. Ziegler, Konrad G.W. (Counsel for Plaintiff/Appellant)

No publicly traded company or corporation has an interest in the outcome of this case.

## STATEMENT REGARDING ORAL ARGUMENT

Appellee, Fulton County Board of Commissioners, does not request oral argument. Oral argument is unnecessary because this appeal involves a challenge to the proper application of longstanding, relevant case law by the District Court to the facts of Appellant's case. While Appellant frames this appeal as presenting "novel questions concerning interpretation of the Takings Clause and 42 U.S.C. § 1983[,]" in reality, Appellant is asking this Court to create a previously unrecognized cause of action out of whole cloth. Oral argument is unnecessary for this Court to reject Appellant's request and affirm the District Court.

# TABLE OF CONTENTS

**STATEMENT REGARDING ORAL ARGUMENT** ............................................. i

**TABLE OF CONTENTS** ....................................................................... ii

**TABLE OF CITATIONS** ...................................................................... iv

**STATEMENT OF JURISDICTION** ..................................................... vi

**STATEMENT OF THE ISSUES** ..........................................................1

**STATEMENT OF THE CASE** .............................................................1

**LEGAL STANDARD OF REVIEW** .....................................................5

**SUMMARY OF ARGUMENT** ............................................................5

**ARGUMENT AND CITATION OF AUTHORITY** ..............................8

**I.    Appellant misinterprets "self-executing" in the context of the Takings Clause.** ...............................................................................8

**II.   Appellant mistakenly conflates federal question jurisdiction with the existence of a cause of action.** .....................................................11

**III.   To the extent Appellant argues that the text, history, and tradition of the Takings Clause show that vindication of the Takings Clause, *in federal district courts*, does not depend on § 1983, Appellant is incorrect.** ................14

**IV.   As § 1983 is the proper vehicle for Appellant to bring his Takings Clause claim in federal court, *Monell* bars Appellant's claim.** ......................20

**V. Assuming *arguendo* that this Court concludes that the Takings Clause does provide aggrieved parties an independent cause of action that can be brought in federal court, Appellant's claim fails because it was brought outside the relevant statute of limitations.**........................................................21

**CONCLUSION**............................................................................22

**CERTIFICATE OF COMPLIANCE** ..................................................24

**CERTIFICATE OF SERVICE** .........................................................25

# TABLE OF CITATIONS

## Cases

*Brown v. Georgia Bd. of Pardons & Paroles*, 335 F.3d 1259 (11th Cir. 2003)......21

*Chicago, Burlington & Quincy R.R. v. Chicago*, 166 U.S. 226 (1897)...................17

*City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156 (1997) .............................19

*Cockrell v. Sparks*, 510 F.3d 1307 (11th Cir. 2007) ....................................................5

*E. Cent. Illinois Pipe Trades Health & Welfare Fund v. Prather Plumbing & Heating, Inc.*, 3 F.4th 954 (7th Cir. 2021) ..................................................... 11, 13

*\*First Eng. Evangelical Lutheran Church of Glendale v. Los Angeles Cnty., Cal.*, 482 U.S. 304 ........................................................................................... 8, 9, 10, 17

*Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1 (1983)..........................................................................................19

*Hagans v. Lavine*, 415 U.S. 528 (1974)..................................................................12

*Heck v. Humphrey*, 512 U.S. 477 (1994)................................................................18

*\*Knick v. Twp. of Scott, Pennsylvania,* 139 S. Ct. 2162 (2019)6, 8, 9, 10, 15, 17, 18

*\*Monell v. Department of Social Services*, 436 U.S. 658 (1978).. 5, 6, 7, 15, 16, 20, 23

*Moor v. Alameda Cnty.*, 411 U.S. 693 (1973) ........................................................13

*Myles v. United States*, 416 F.3d 551 (7th Cir. 2005) ............................................13

*Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104 (1978) .......................17

*Reynolds v. Murray*, 170 F. App'x 49 (11th Cir. 2006) .........................................22

iv

*Rozar v. Mullis*, 85 F.3d 556 (11th Cir. 1996)..........................................................21

*San Remo Hotel, L. P. v. City and County of San Francisco*, 545 U.S. 323 (2005)

.....................................................................................................................18

*Section Lynch v. Household Fin. Corp.*, 405 U.S. 538 (1972) ................................12

*Smith v. Ocwen Fin.*, 488 F. App'x 426 (11th Cir. 2012) .........................................12

*United States v. Bormes*, 568 U.S. 6 (2012) ............................................................15

*Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985)........................................................................... 17, 18

**Statutes**

28 U.S.C. § 1257 .................................................................................. 10, 17

28 U.S.C. § 1291 ..........................................................................................v

28 U.S.C. § 1331 ......................................................................................v, 12

28 U.S.C. § 1343(a)(3)..................................................................................12

28 U.S.C. § 1346(a) ......................................................................................14

28 U.S.C. § 1491 ..........................................................................................14

*42 U.S.C. § 1983..1, 2, 3, 6, 7, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23

42 U.S.C. § 1988 ......................................................................................v, 13

Civil Rights Act of 1871 ....................................................... 12, 15, 16, 17

Tucker Act of 1887 ............................................................................. 14, 15

## STATEMENT OF JURISDICTION

On May 5, 2020, Appellant initiated the present action, alleging violations of his rights under the United States Constitution. (Doc. 1). Appellant asserted the District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1988(a).[1] (Doc. 1 ¶ 5).

On February 24, 2021, the District Court entered the order at issue in the present appeal; in the order, the District Court denied Appellant's Motion for Leave to Amend Complaint and granted Appellee's Motion to Dismiss. (Doc. 39). On May 10, 2022, the District Court entered an order granting Defendant Paul Howard's Motion to Dismiss, thereby resolving all pending matters in this case, and directing the Clerk to close this case. (Doc. 55). On May 11, 2022, the Clerk entered the judgment of the District Court, dismissing this action with prejudice. (Doc. 56).

On June 9, 2022, Appellant timely filed a Notice of Appeal, with the appeal being "taken against only Defendant Fulton County Board of Commissioners." (Doc. 57). This Honorable Court has jurisdiction to hear appeals of final orders of a district court pursuant to 28 U.S.C. § 1291.

---

[1] The issue of whether the District Court had subject-matter jurisdiction is addressed more thoroughly *infra*.

## STATEMENT OF THE ISSUES

1. Did the District Court err when it denied Appellant's Motion for Leave to Amend Complaint to: 1) change the named party from "Fulton County Board of Commissioners" to "Fulton County;" and 2) add a Fifth Amendment Takings Clause claim against Fulton County?

2. Can a plaintiff initiate a Takings Clause claim against a county, independent of 42 U.S.C. § 1983, in federal court?

## STATEMENT OF THE CASE

This is an appeal of the District Court's order which denied Appellant's Motion for Leave to Amend Complaint and granted Appellee Fulton County Board of Commissioners' Motion to Dismiss. (Docs. 39, 56, 57). In his Brief, Appellant represents that "[t]he only part of the trial court's February 24, 2021 Order that Mr. Fulton appeals is the trial court's denial of Mr. Fulton's Motion for Leave to Amend the Complaint." (Brief of Appellant, 2).

The basis for the District Court's order was Appellant's failure to state a claim, specifically Appellant's failure to allege facts showing a policy or practice that led to the purported violation of his constitutional rights. (Doc. 39). As such, the District Court correctly found it would be futile to grant Appellant's Motion for Leave to

1

Amend Complaint and properly dismissed Appellant's claim against Appellee Fulton County Board of Commissioners.

In his Complaint, Appellant alleges that on April 22, 2017, Fulton County Animal Services (hereafter "FCAS") officers entered his property and seized seven horses in conjunction with Appellant's arrest for felony cruelty to animals. (Doc. 1 at ¶¶ 10-12). Appellant asserts that he was subjected to a bond order, entered by the Magistrate Court of Fulton County, which required Appellant to turn over any animals he owned to FCAS.[2] (Doc. 1 at ¶ 13). According to Appellant, the bond order caused the seven horses to remain in the custody of FCAS. (Doc. 1 at ¶ 14). Appellant claims that on April 5, 2018, his felony animal cruelty charges were dismissed. (Doc. 1 at ¶ 15). Appellant alleges that FCAS continues to hold the horses despite Appellant's request for their return or the return of their "equivalent value." (Doc. 1 at ¶¶ 16-17).

On May 5, 2020, Appellant brought the present lawsuit, pursuant to 42 U.S.C. § 1983, alleging that Appellee Fulton County Board of Commissioners refused to return Appellant's property in violation of the Fifth Amendment. (Doc. 1 at ¶¶ 19-21). Also named in the lawsuit were Paul L. Howard, Jr., in his individual capacity,

---

[2] In his Complaint, Appellant claims that this bond order was entered on June 20, 2016, which would predate the alleged seizure of his horses by FCAS on April 22, 2017. (Doc. 1 at ¶¶ 10-13).

and Rebecca Guinn, in her individual capacity, neither of whom are parties to the present appeal. (Docs. 1, 57).

On August 24, 2020, Appellee filed a Motion to Dismiss for Failure to State a Claim pursuant to FRCP 12(b)(6), and a brief in support thereof. (Docs. 18 and 18-1). Appellee moved to dismiss Appellant's claim against it because the Fulton County Board of Commissioners is not an entity capable of being sued, Appellant failed to state a claim against it under § 1983, and Appellant's claim was barred by the statute of limitations. (Doc. 18-1).

On September 18, 2020, Appellant filed both a Response in Opposition and Motion for Leave to Amend Complaint. (Docs. 25 and 26). In his Motion to Amend, Appellant sought to change the named party from "Fulton County Board of Commissioners" to "Fulton County" and add a Fifth Amendment Takings Clause claim against Fulton County. (Doc. 26).

On October 2, 2020, Appellee filed a Reply in support of its Motion to Dismiss which reiterated that the Fulton County Board of Commissioners was not a proper party and Appellant brought his claim outside the statute of limitations. (Doc. 31). The same day, non-party Fulton County, by special appearance, filed an objection to Appellant's Motion for Leave to Amend. (Doc. 30).

On February 24, 2021, the District Court denied Appellant's Motion for Leave to Amend Complaint and granted Appellee's Motion to Dismiss. (Doc. 39). The

District Court found that Appellant failed to allege any facts showing a policy or custom that led to the purported violation of Appellant's right. (Doc. 39). As such, the Court concluded that it would be futile to grant Appellant's Motion for Leave to Amend and further concluded that Appellant had failed to state a claim against Appellee. (Doc. 39).

On May 10, 2022, the District Court granted Defendant Paul L. Howard's Motion to Dismiss, thereby resolving all pending matters in this case, and Appellant's Complaint was dismissed with prejudice. (Doc. 55). The Clerk was directed to close this case. (Doc. 55).

On June 9, 2022, Appellant timely filed a Notice of Appeal. (Doc. 57). In the Notice, Appellant identified the February 24, 2021 Order and the Final Judgment entered on May 11, 2022 (only as to Defendant Fulton County Board of Commissioners) as the judgments he sought to appeal. (Doc. 57). Appellant made clear the appeal was to be "taken against only Defendant Fulton County Board of Commissioners." (Doc. 57).

After the present appeal was docketed, on August 2, 2022, the present appeal was dismissed due to Appellant's failure to prosecute. On August 4, 2022, Appellant moved to reinstate the present appeal. On August 8, 2022, the present appeal was reinstated. On October 3, 2022, Appellant filed his brief. Appellee Fulton County Board of Commissioners' brief now follows.

## LEGAL STANDARD OF REVIEW

The Eleventh Circuit "review[s] a district court's denial of a motion to amend only for abuse of discretion, [but] review[s] *de novo* a decision that a particular amendment to the complaint would be futile." *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007) (citation omitted).

## SUMMARY OF ARGUMENT

In his Brief, Appellant concedes that "[t]he trial court was right that *Monell v. Department of Social Services*, 436 U.S. 658 (1978), bars Mr. Fulton's Takings Clause claim raised through § 1983 against Fulton County." (Brief of Appellant, 4). As such, Appellant represents that he is exclusively challenging the District Court's denial of his Motion for Leave to Amend Complaint. (Brief of Appellant, 2) ("The only part of the trial court's February 24, 2021 Order that Mr. Fulton appeals is the trial court's denial of Mr. Fulton's Motion for Leave to Amend the Complaint"). In his Motion for Leave to Amend Complaint, Appellant sought to: 1) change the named party from "Fulton County Board of Commissioners" to "Fulton County;" and 2) add a Fifth Amendment taking without just compensation claim against Fulton County. (Doc. 26).

On appeal, Appellant argues that the District Court erred in not allowing him to amend his Complaint because, according to Appellant, the Fifth Amendment,

independent of 42 U.S.C. § 1983, creates a cause of action against local governments that can be brought in federal court. As such, Appellant asserts that such claims against counties/municipalities are not bound by the requirements articulated in *Monell v. Department of Social Services*, 436 U.S. 658 (1978), including the need to show a policy, practice, or custom that led to the alleged violation of a plaintiff's constitutional rights. Under this theory, Appellant maintains that, because he was not required to plead a policy, practice, or custom, amendment would not have been futile. However, Appellant's position is unsupported by existing U.S. Supreme Court precedent. Therefore, the District Court properly found that amendment would be futile due to Appellant's failure to state a claim, specifically Appellant's failure to allege any facts showing a policy or practice that caused Appellant's alleged constitutional violation. (Doc. 39).

Prior to *Knick v. Twp. of Scott, Pennsylvania,* 139 S. Ct. 2162 (2019), when plaintiffs brought governmental takings claims against county and municipal governments, those plaintiffs would bring such claims in state courts, often as inverse condemnation actions. In *Knick*, the U.S. Supreme Court made clear that a plaintiff bringing a Fifth Amendment takings claim may "proceed directly to federal court under § 1983." *Knick*, 139 S. Ct. at 2171. However, nothing in *Knick* suggested that the Takings Clause itself provided a cause of action against local governments that could proceed directly to federal court independent of 42 U.S.C. § 1983.

Appellant's argument rests on four flawed assumptions. First, Appellant misinterprets "self-executing" in the context of the Takings Clause. Second, 42 U.S.C. § 1983 is what provides the federal cause of action when a local government purportedly violates a plaintiff's constitutional rights; Appellant mistakenly conflates federal question jurisdiction with the possession of a cause of action. Third, to the extent Appellant argues that the text, history, and tradition of the Takings Clause show that vindication of the Takings Clause, *in a federal district court*, does not depend on § 1983, Appellant is incorrect. Fourth, because a plaintiff seeking to bring a Takings Clause claim against a local government in federal court must travel under § 1983, *Monell*'s practice, policy, or custom requirement are applicable.

For the reasons detailed above, Appellant is incorrect that the Fifth Amendment, independent of § 1983, provides a cause of action that can be brought in federal court against a local government. Finally, even if, in theory, such a cause of action exists, Appellant has failed to properly assert it because Appellant's claim was brought outside the relevant statute of limitations.

Wherefore, this Court should affirm the judgment of the District Court.

## ARGUMENT AND CITATION OF AUTHORITY

**I.     Appellant misinterprets "self-executing" in the context of the Takings Clause.**

In arguing that the District Court erred in denying his Motion for Leave to Amend Complaint, Appellant first argues that "[b]ecause the Takings Clause is self-executing, it need not be coupled with § 1983 to be actionable." (Brief of Appellant, 6-8). Appellee does not dispute that federal courts have referred to the Takings Clause as "self-executing." *See Knick*, 139 S. Ct. at 2171 and 2172; *see also First Eng. Evangelical Lutheran Church of Glendale v. Los Angeles Cnty., Cal.*, 482 U.S. 304, 315 (1987). However, Appellant's argument ignores how the U.S. Supreme Court has interpreted the phrase "self-executing." *Id.*

As detailed below, the Fifth Amendment has been held to be "self-executing…with respect to compensation," meaning that the government cannot take an individual's property without compensation. *Id.* However, while the self-executing nature of the Fifth Amendment provides the availability of the remedy, i.e. compensation, that does not mean that the Fifth Amendment, standing alone, provides a vehicle for enforcing or vindicating that right in federal district court.

Traditionally, aggrieved parties vindicated their right to compensation following a local governmental taking through the procedural mechanism set up in that complaining party's respective state, including inverse condemnation actions.

8

*See generally First English*. In 2019, the U.S. Supreme Court made clear that a Fifth Amendment Takings Clause claim against a local government could also be brought directly in a federal district court under 42 U.S.C. 1983. *See Knick*, 139 S. Ct. at 2179.The Court in *Knick* did not hold that the Fifth Amendment provided a cause of action against a local government, independent of § 1983, that could be brought in federal court. *See generally Knick*.

In support of his argument that, because the Fifth Amendment has been held to be "self-executing," it is actionable without any additional statutory support, Appellant heavily relies upon *First English*. (Brief of Appellant, 6-8). Appellant is correct that in *First English* the U.S. Supreme held that the Fifth Amendment was "self-executing." *First English*, 482 U.S. at 315. However, in *First English* the U.S. Supreme Court interpreted the "self-executing" nature of the Takings Clause to mean that "a landowner is entitled to bring an action in inverse condemnation as a result of the self-executing character of the constitutional provision with respect to compensation..." *Id.*

In *First English*, as in many of the cases cited by Appellant, the complaining party challenged the taking at issue through an action in inverse condemnation filed in a state court, not a federal district court. *Id*. at 308. In inverse condemnation actions, like the one at issue in *First English*, state courts were bound by the Fifth Amendment and were required to award an aggrieved party compensation if a taking

9

had occurred. However, the Fifth Amendment right was vindicated through an action in inverse condemnation. If, after having the state court's decision reviewed by the highest court in that state, the aggrieved party believed that their Fifth Amendment rights had not been vindicated by their action in inverse condemnation, that party could attempt to invoke the appellate and certiorari jurisdiction of the U.S. Supreme Court under 28 U.S.C. § 1257. *See First English*, 482 U.S. at 313 n.8.

Appellant is correct that the Fifth Amendment has been held to be "self-executing," and as such, when a taking has occurred, the party the taking was committed against is entitled to compensation under the Fifth Amendment. Nonetheless, in order to vindicate this right against a local government in federal district court, the party must have a cause of action. In *Knick*, in the context of Takings Clause claims against local governments, the U.S. Supreme Court made clear that such a cause of action was provided by § 1983. *See Knick*, 139 S. Ct. at 2179.

Accordingly, "self-executing" does not mean that a plaintiff has a federal cause of action against a local government under the Fifth and Fourteenth Amendments, independent of § 1983, that he can bring in federal district court. Rather, self-executing means that no additional legislation is needed in order to guarantee a person a right to be free from a governmental taking without compensation. However, to *vindicate* that right in federal district court, he will need

10

a cause of action that can be heard in federal court. This cause of action is provided by § 1983, not the Fifth and Fourteenth Amendments on their own. As such, Appellant is barred from initiating a Takings Clause claim against a local government in a federal district court independent of § 1983.

## II.    Appellant mistakenly conflates federal question jurisdiction with the existence of a cause of action.

Appellant next argues that "as § 1983 does not confer federal jurisdiction itself, a Takings Clause claim in the absence of a § 1983 claim is proper so long that federal question jurisdiction is present from another source." (Brief of Appellant, 9-11). The flaw in Appellant's argument is that he conflates the concepts of a cause of action that can be heard in federal court with federal question jurisdiction. In order for there to be federal question jurisdiction, there must exist some cause of action.

As addressed *supra*, and in further detail *infra*, § 1983 is what provides the federal cause of action for a constitutional violation by a local government. Both a cause of action and the requisite jurisdiction are essential elements for a claim to be brought in federal district court. *See E. Cent. Illinois Pipe Trades Health & Welfare Fund v. Prather Plumbing & Heating, Inc.*, 3 F.4th 954, 961 (7th Cir. 2021). This distinction is recognized by the case that Appellant himself quotes in his brief: "the federal cause of action created by the section [1983] does not by itself confer

11

jurisdiction upon the federal district courts to adjudicate these claims." *Hagans v. Lavine*, 415 U.S. 528, 535 (1974).

For a court to hear a cause of action, Appellant is correct that the court must possess jurisdiction. The first source of jurisdiction alleged by Appellant in this portion of his argument is found at 28 U.S.C. § 1343(a)(3). (Brief of Appellant, 9-10). However, this Code Section was never alleged as a jurisdictional basis in Appellant's Complaint, Appellant's Motion for Leave to Amend Complaint, or even Appellant's Statement of Jurisdiction in his Brief of Appellant. As such, this Court should decline to consider this novel jurisdictional argument that was not timely presented by Appellant.[3] *See Smith v. Ocwen Fin*., 488 F. App'x 426, 428 (11th Cir. 2012) (citation omitted) ("In civil cases, we generally do not consider arguments raised for the first time on appeal.").

As such, the second jurisdictional hook Appellant identifies in this portion of his argument, 28 U.S.C. § 1331, the general federal question jurisdiction statute,

---

[3] Moreover, even if this Court does reach the merits of this jurisdictional claim, 28 U.S.C. § 1343(a)(3) has historically provided federal jurisdiction to § 1983 claims: Both statutory provisions originated in the same statute, § 1 of the Civil Rights Act of 1871, and 28 U.S.C. § 1343(a)(3) has been referred to as §1983's jurisdictional counterpart. *See Section Lynch v. Household Fin. Corp.*, 405 U.S. 538, 544 n.7 (1972). As such, given that Appellant has remained adamant that the claim he seeks to bring is <u>not</u> being brought under § 1983, this Court should decline to find that 28 U.S.C. § 1343(a)(3) provides the federal district court with jurisdiction over the claim.

would seem a more natural fit for Appellant's argument.[4] This jurisdictional hook *was* identified by Appellant in both his Complaint and his Brief's Statement of Jurisdiction. (Doc. 1 at ¶ 5; Brief of Appellant, 1). However, while this jurisdictional argument may have been timely presented and preserved for review by this Court, it nonetheless fails due to the lack of a cause of action. "§ 1331 does not itself provide a right of action . . . the general grant of federal question jurisdiction contained in § 1331, without a federal cause of action, is not enough." *E. Cent. Illinois Pipe Trades Health & Welfare Fund.*, 3 F.4th at 961 (citation and punctuation omitted). Here, absent § 1983, Appellant does not have a cause of action against a local government that he can initiate in federal district court.

The only other potential statutory basis for a cause of action identified by Appellant, 42 U.S.C. § 1988, (Doc. 1 at ¶ 5; Brief of Appellant, 1), has been held <u>not</u> to independently create a federal cause of action but merely "instructs federal courts as to what law to apply in causes of actions arising under federal civil rights acts." *See Moor v. Alameda Cnty.*, 411 U.S. 693, 702–06 (1973). Ultimately, because there is no cause of action, there is nothing for a federal district court to have jurisdiction over. As such, the District Court did not err in denying Appellant's Motion for Leave to Amend Complaint.

---

[4] This is particularly true given the more limited jurisdictional role some Courts have seen for § 1343(a)(3) after the amount-in-controversy requirement of § 1331 was eliminated in 1976. *See Myles v. United States*, 416 F.3d 551, 554 (7th Cir. 2005).

**III.    To the extent Appellant argues that the text, history, and tradition of the Takings Clause show that vindication of the Takings Clause, *in federal district courts*, does not depend on § 1983, Appellant is incorrect.**

In his third argument, Appellant alleges that the text, history, and tradition of the Takings Clause show that the vindication of the Takings Clause does not depend on § 1983. (Brief of Appellant, 11-21). To the extent that Appellant is alleging that this is true in the context of these claims being brought directly in federal district courts, he is incorrect.

In support of his argument that there does not need to be an enabling statute in order for a complainant to assert a Takings Clause claim, Appellant first cites to: A) the text of the Fifth Amendment; and B) Takings Clause claims brought against the federal government prior to the enactment of § 1983 in 1871. (Brief of Appellant, 11-13). However, Appellant's characterization of Fifth Amendment claims against the federal government prior to the 1870s is inaccurate; the text and history actually indicate that an enabling statute is necessary.

Prior to the passage of the Tucker Act of 1887,[5] aggrieved parties could not bring Takings Clause claims against the federal government. "The Tucker Act's jurisdictional grant, and accompanying immunity waiver, supplied the missing ingredient for an action against the United States for the breach of monetary

---

[5] Currently codified at 28 U.S.C. §§ 1346(a) and 1491.

obligations not otherwise judicially enforceable." *United States v. Bormes*, 568 U.S. 6, 12 (2012). Therefore, Appellant is mistaken that the "U.S. Supreme Court's jurisprudence shows no hesitation to enforce the Takings Clause before Congress enacted § 1983 in 1871." (Brief of Appellant, 12). In the same way that the Tucker Act allows those who have been deprived of their property by the federal government to assert their claims for compensation, § 1983 allows such claims to be asserted against local governments. The analogous nature of these two statutes, the Tucker Act and § 1983, was recognized by the U.S. Supreme Court in *Knick*:

> Just as someone whose property has been taken by the Federal Government has a claim "founded ... upon the Constitution" that he may bring under the Tucker Act, someone whose property has been taken by a local government has a claim under § 1983 for a "deprivation of [a] right[ ] ... secured by the Constitution" that he may bring upon the taking in federal court.

*Knick*, 139 S. Ct. at 2172. As such, both the text and the history of the Takings Clause prior to the ratification of the 14th Amendment and passage of enabling statutes in the late 1800s <u>do not support</u> Appellant's position that an enabling statute, such as § 1983, is unnecessary.

Furthermore, Appellant is inaccurate in his characterization of Takings Clause claims brought after the passage of § 1983. (Brief of Appellant, 14-21). The legislative history of § 1983, and its predecessor § 1 of the Civil Rights Act of 1871, clearly indicate that Congress intended for the statute to provide the vehicle for Takings Clause claims. In *Monell*, the U.S. Supreme Court extensively explored the

legislative history of § 1 of the Civil Rights Act of 1871, the predecessor of § 1983, and found that "legislative history of the Civil Rights Act of 1871 compels the conclusion that Congress did intend municipalities and other local government units to be included among those persons to whom § 1983 applies." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). Of particular importance to the issue presently before this Court, the U.S. Supreme Court in *Monell* explored how the measure had been adopted to provide civil remedies for uncompensated takings by local governments:

> Representative Bingham, for example, in discussing § 1 of the bill [the Civil Rights Act of 1871], explained that he had drafted § 1 of the Fourteenth Amendment with the case of *Barron v. Mayor of Baltimore*, 7 Pet. 243, 8 L.Ed. 672 (1833), especially in mind. "In [that] case the *city* had taken private property for public use, without COMPENSATION . . . , AND THERE WAS NO REDRESS FOR THE wrong . . . ." globe App. 84 (emphasis added). Bingham's further remarks clearly indicate his view that such **takings by cities, as had occurred in *Barron*, would be redressable under § 1 of the bill**. See Globe App. 85. More generally, and as Bingham's remarks confirm, **§ 1 of the bill would logically be the vehicle by which Congress provided redress for takings**, since that section provided the only civil remedy for Fourteenth Amendment violations and that Amendment unequivocally prohibited uncompensated takings.

*Id.* at 686-87 (emphasis supplied). As such, the legislative history of § 1983's predecessor clearly indicates that Congress did not believe that the Fifth and Fourteenth Amendments, standing alone, provided a federal cause of action against local governments. *See id*. While *Monell* might have been the clearest articulation by the U.S. Supreme Court of an aggrieved party's ability to bring such a takings

claim against a local government under § 1983, the legislative history of the statute demonstrates that this was always the vehicle Congress intended for parties to utilize in order to bring takings claims against local governments in federal court.

While after the passage of the Civil Rights Act of 1871 complaining parties had a vehicle for asserting their Fifth and Fourteenth Amendments rights against local governments, specifically § 1983, as detailed in Section I of this Brief of Appellee's Argument and Citation of Authority, prior to *Knick*, takings claims brought against local governments were routinely initiated in state courts, usually as inverse condemnation actions. This was true in *First English*, *Chicago, Burlington & Quincy R.R. v. Chicago*, 166 U.S. 226 (1897), *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104 (1978), and all of the Takings Clause cases cited by Appellant in Footnote 4 of his Brief. (Brief of Appellant, 18-19).[6]

In *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985), the U.S. Supreme Court held that an aggrieved party must exhaust his state remedies by seeking compensation under state law in state court, i.e. bring an action in inverse condemnation action, before he could he bring his claim in federal court. Then, in 2005, *in San Remo Hotel, L. P. v. City and*

---

[6] While the U.S. Supreme Court may have possessed appellate and certiorari jurisdiction over these action in inverse condemnation under 28 U.S.C. § 1257, this does not mean that the Fifth and Fourteenth Amendments provided a federal cause of action, independent of § 1983, that could be initiated in federal court.

*County of San Francisco*, 545 U.S. 323 (2005), the U.S. Supreme Court held that "a state court's resolution of a claim for just compensation under state law generally has preclusive effect in any subsequent federal suit." When *Williamson* and *San Remo* were read together, they led to the "*San Remo* preclusion trap" in which the complaining party "cannot go to federal court without going to state court first; but if he goes to state court and loses, his claim will be barred in federal court." *Knick*, 139 S. Ct. at 2167.

This issue was remedied in 2019, in *Knick*, when the U.S. Supreme Court overturned *Williamson*. *Knick*, 139 S. Ct. at 2179. The Court made clear that plaintiffs could bring Takings Clause claims directly in federal court against local governments under § 1983 without first going to state court. *Id.* This was because "the settled rule is that 'exhaustion of state remedies is not a prerequisite to an action under 42 U.S.C. § 1983.'" *Knick*, 139 S. Ct. at 2167 (quoting *Heck v. Humphrey*, 512 U.S. 477, 480 (1994)) (citation and punctuation omitted).

Under existing case law, it is clear that two distinct routes are available to a party who believes that he has had his property taken by a local government without just compensation. First, he may take the traditional route of bringing an inverse condemnation action in the appropriate state court. Alternatively, as *Knick* makes clear, he may initiate a Takings Clause claim in a federal district court under § 1983.

Nothing in the text, history, or tradition of the Takings Clause evidences a federal cause of action, that can be initiated in a federal district court, independent of § 1983.

The final case Appellant relies upon in support of his argument, *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156 (1997), (Brief of Appellant, 19-21), only reiterates the important distinction between a cause of action and federal question jurisdiction explored in Section II of this Brief of Appellee's Argument and Citation of Authority. In *City of Chicago v. Int'l Coll. of Surgeons*, "the federal constitutional claims were raised by way of a cause of action created by state law, namely, the Illinois Administrative Review Law." *Id.* at 164. The U.S. Supreme Court held that "[e]ven though state law creates [a party's] causes of action, its case might still 'arise under' the laws of the United States if a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law." *Id.* (quoting *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 13 (1983)).

Here, the problem for Appellant is that he has failed to state a cause of action. Appellant never brought an action in inverse condemnation. Moreover, there is no independent cause of action created exclusively by the Fifth and Fourteenth Amendments; the cause of action is created by § 1983, and Appellant failed to plead facts showing a policy or practice. Therefore, the District Court correctly concluded that Appellant had failed to state a claim and amendment would be futile.

**IV.    As § 1983 is the proper vehicle for Appellant to bring his Takings Clause claim in federal court, *Monell* bars Appellant's claim.**

In his final argument, Appellant asserts that the limitations *Monell* place on a plaintiff's ability to bring claims for constitutional violations by local governments are inapplicable to Appellant's present Takings Clause claim. (Brief of Appellant, 21-22). However, as shown *supra*, a Takings Clause claim against a local government, brought in federal court, should be brought pursuant to § 1983. As such, the requirements of *Monell*, including the need to show a policy, practice, or custom, are applicable to Appellant's claim. Accordingly, as Appellant concedes, "[t]he trial court was right that *Monell v. Department of Social Services*, 436 U.S. 658 (1978), bars Mr. Fulton's Takings Clause claim raised through § 1983 against Fulton County." (Brief of Appellant, 4).

Ultimately, Appellant failed to plead sufficient facts showing a policy or practice. Therefore, the District Court properly determined that Appellant failed to establish a claim against Appellee and correctly found that it would be futile to grant Appellant's Motion for Leave to Amend Complaint.

**V.    Assuming *arguendo* that this Court concludes that the Takings Clause does provide aggrieved parties an independent cause of action that can be brought in federal court, Appellant's claim fails because it was brought outside the relevant statute of limitations.**

Should this Court conclude that the Takings Clause, independent of § 1983, provides a cause of action against local governments that can be brought in federal court, Appellant's claim nonetheless fails because it was brought outside the relevant statute of limitations. While this was a central contention of both Fulton County and Fulton County Board of Commissioners, (Docs. 18, 18-1, 30, 31), this issue has not been addressed by Appellant in his Brief, nor was it addressed by the District Court (because the District Court found Appellant's failure to allege facts showing a policy or practice dispositive).

When this case was before the District Court, Appellee asserted, and Appellant conceded, that Appellant's claim would be governed by a two-year statute of limitations. (Doc. 25). If this is true, then Appellant's claim was brought outside the statute of limitations.

This Court has held that the statute of limitations begins to run "from the date 'the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights.'" *Brown v. Georgia Bd. of Pardons & Paroles*, 335 F.3d 1259, 1261 (11th Cir. 2003) (quoting *Rozar v. Mullis*, 85 F.3d 556, 561-62 (11th Cir. 1996)); *see also Reynolds v. Murray*, 170 F.

App'x 49, 51 (11th Cir. 2006) (the limitations period runs "from the date the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights."). Here, Appellant was aware of the deprivation of his horses when they were seized, which he alleges occurred on April 22, 2017. (Doc. 1, ¶¶ 10-11). As such, his claim accrued upon the seizure of the horses by FCAS on April 22, 2017. At the latest, Appellant's cause of action accrued when the charges against him were dismissed on April 5, 2018. (Doc. 1, ¶ 16). Regardless of which of these two dates are used, both events occurred more than two years before he filed this lawsuit on May 5, 2020. (Doc. 1) Therefore, Appellant's claim was brought outside the statute of limitations.

## CONCLUSION

The District Court did not err in denying Appellant's Motion for Leave to Amend Complaint and granting Appellee's Motion to Dismiss. The District Court correctly concluded that Appellant had failed to allege facts showing a policy or practice that led to a purported violation of Appellant's constitutional rights. As such, this Court should affirm the judgment of the District Court.

In the present appeal, Appellant urges this Court to reverse the judgment of the District Court by creating a federal cause of action under the Takings Clause independent of § 1983. In order to advocate for the creation of this cause of action,

Appellant misinterprets "self-executing" in the context of the Fifth Amendment, mistakenly conflates federal question jurisdiction with a cause of action, misconstrues the history, text, and tradition of the Takings Clause, and erroneously argues that *Monell*'s limitations on municipal liability are inapplicable to his purported claim. Even assuming *arguendo* that the Fifth and Fourteenth Amendments do create a cause of action against local governments, independent of § 1983, Appellant's specific claim must fail because it was brought outside the relevant statute of limitations. For all of the reasons detailed above, this Court should decline to grant Appellant the relief that he seeks.

Respectfully submitted, this 2nd day of November, 2022.

**OFFICE OF THE FULTON COUNTY ATTORNEY**

***/s/ Mathew Plott***
Mathew Plott
Assistant County Counsel
Georgia Bar No. 343501

*Attorney for Appellee Fulton County Board of Commissioners*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this document complies with the word limit of Fed. R. App. P. 32(a)(7)(B)(i) because this document contains 6908 words.

Further, I certify that this document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman, 14-point type.

Respectfully submitted, this 2nd day of November, 2022.

*/s/ Mathew Plott*
Mathew Plott
Assistant County Counsel
Georgia Bar No. 343501

*Attorney for Appellee Fulton County Board of Commissioners*

## <u>CERTIFICATE OF SERVICE</u>

I certify that I electronically filed the **Brief of Appellee** with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system on November 2, 2022, which will provide notice to and electronic service of the foregoing document upon the following:

KONRAD G.W. ZIEGLER
LEE & ZIEGLER, LLP
150 North Street
Suite M
Canton, Georgia 30114
(678) 871-0501
kziegler@leeandzieglerlaw.com

Respectfully submitted, this 2nd day of November, 2022.

*/s/ Mathew Plott*
Mathew Plott
Assistant County Counsel
Georgia Bar No. 343501

*Attorney for Appellee Fulton County Board of Commissioners*

**OFFICE OF THE FULTON COUNTY ATTORNEY**
141 Pryor Street, S.W.
Suite 4038
Atlanta, Georgia 30303
(404) 612-0246 (Telephone)
(404) 730-6324 (Facsimile)

25