No. 22-12041

In the

# United States Court of Appeals
## for the Eleventh Circuit

Brandon Fulton,

*Plaintiff-Appellant*,

v.

Fulton County Board of Commissioners,

*Defendant-Appellee*.

On Appeal from the United States District Court for the Northern District of Georgia, Atlanta Division.
No. 1:20-cv-01936-SCJ — Hon. Steve C. Jones, *District Judge*

**BRIEF OF THE GEORGIA SOLICITOR GENERAL AS *AMICUS CURIAE* IN SUPPORT OF APPELLEE**

Christopher M. Carr
*Attorney General of Georgia*
Stephen J. Petrany
*Solicitor General*
Ross W. Bergethon
*Principal Deputy Solicitor General*
William D. Rodenberg
*Honors Fellow*
Office of the Georgia Attorney General
40 Capitol Square, SW
Atlanta, Georgia 30334
(404) 458-3408
spetrany@law.ga.gov
*Counsel for Amicus Curiae*

# TABLE OF CONTENTS

**Page**

Table of Authorities ........................................................... iii

Interest of Amicus Curiae ........................................................... viii

Statement of Issues ........................................................... viii

Introduction ........................................................... 9

Argument ........................................................... 14

I. There is no need to determine whether the Takings Clause contains an implied right of action because Congress has provided a right of action and remedial scheme. ............... 14

II. Assuming the Constitution impliedly creates a cause of action for takings, the statute of limitations would bar Plaintiff's claims. ........................................................... 27

Conclusion ........................................................... 36

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*74 Pinehurst LLC v. New York*,
59 F.4th 557 (2d Cir. 2023) ........................................ 25

*Bay Point Props., Inc. v. Miss. Trans. Comm.*,
937 F.3d 454 (5th Cir. 2019) ........................................ 25

*Bd. of Regents of Univ. of State of N.Y. v. Tomanio*,
446 U.S. 478 (1980) ........................................ 35

*Bieneman v. City of Chicago*,
864 F.2d 463 (7th Cir. 1988) ........................................ 25, 29, 30

*Bishop v. Tice*,
622 F.2d 349 (8th Cir. 1980) ........................................ 23

*Bivens v. Six Unknown Fed. Narcotics Agents*,
403 U.S. 388 (1971) ........................................ 9, 24

*Bush v. Lucas*,
462 U.S. 367 (1983) ........................................ 15, 16, 19, 20

*Cale v. City of Covington, Va.*,
586 F.2d 311 (4th Cir. 1978) ........................................ 12, 21, 22

*Cedar Point Nursery v. Hassid*,
594 U.S. 139 (2021) ........................................ 33

*Chappell v. Wallace*,
462 U.S. 296 (1983) ........................................ 15

*Chin v. Bowen*,
833 F.2d 21 (2d Cir. 1987) ........................................ 29

*Corr. Servs. Corp. v. Malesko*,
534 U.S. 61 (2001) ........................................ 9, 11, 16

*Dean v. Gladney*,
621 F.2d 1331 (5th Cir. 1980) .................................................. 21

*Devillier v. Texas*,
601 U.S. 285 (2024) .......................................................14, 24, 25

*Diversified Holdings, LLP v. City of Suwanee*,
302 Ga. 597 (2017)................................................................... 26

*DLX, Inc. v. Kentucky*,
381 F.3d 511 (6th Cir. 2004) ..................................................... 25

*Egbert v. Boule*,
596 U.S. 482 (2022) ............................ 9, 11, 13, 15–17, 20–22, 27

*Frein v. Pa. State Police*,
47 F.4th 247 (3d Cir. 2022) ....................................................... 33

*GeorgiaCarry.Org, Inc. v. Georgia*,
687 F.3d 1244 (11th Cir. 2012) ................................................. 10

*Harbert Intern., Inc. v. James*,
157 F.3d 1271 (11th Cir. 1998) ...........................................25, 26

*Hernandez v. Mesa*,
589 U.S. 93 (2020) ............................................................... 9, 15

*Hutto v. S.C. Ret. Sys.*,
773 F.3d 536 (4th Cir. 2014) ..................................................... 25

*John G. & Marie Stella Kenedy Memo'l Found. v. Mauro*,
21 F.3d 667 (5th Cir. 1994) ....................................................... 25

*Jones v. Fulton County*,
207 Ga. App. 397 (1993) ........................................................... 31

*Katzenbach v. Morgan*,
384 U.S. 641 (1966) .................................................................. 22

*Kelly v. Serna*,
87 F.3d 1235 (11th Cir. 1996) ............................................13, 29

*Knick v. Township of Scott*,
588 U.S. 180 (2019) ..........................................11, 17, 26, 32–33

*Kostka v. Hogg*,
560 F.2d 37 (1st Cir. 1977)..................................................12, 21

*Ladd v. Marchbanks*,
971 F.3d 574 (6th Cir. 2020) ..................................................... 25

*Lowther v. United States*,
480 F.2d 1031 (10th Cir. 1973) ................................................ 33

*Lynch v. Household Finance Corp.*,
405 U.S. 538 (1972) ................................................................... 28

*Mahone v. Waddle*,
564 F.2d 1018 (3d Cir. 1977)..................................................... 12

*Me. Comm. Health Options v. United States*,
590 U.S. 296 (2020) ...............................................................10, 24

*Minneci v. Pollard*,
565 U.S. 118 (2012) ................................................................... 15

*Molina v. Richardson*,
578 F.2d 846 (9th Cir. 1978) ................................................21, 22

*Monell v. Department of Social Services of City of New York*,
436 U.S. 658 (1978) ...............................................................12, 21

*Monroe v. Pape*,
365 U.S. 167 (1961) ................................................................... 23

*New Port Largo, Inc. v. Monroe County*,
985 F.2d 1488 (11th Cir. 1993) ................................................ 29

*Owens v. City of Independence, Mo.*,
589 F.2d 335 (8th Cir. 1978) ........................................................ 23

*Owens v. Okure*,
488 U.S. 488 U.S. 235, 240–41 (1989) ..................................... 29

*Puckett v. Gwinnett County*,
200 Ga. App. 53 (1991) ............................................................. 31

*Schweiker v. Chiliky*,
487 U.S. 412 (1988) ..........................................................11, 16, 20

*Seven Up Pete Venture v. Schweitzer*,
523 F.3d 948 (9th Cir. 2008) ........................................................ 25

*Stroud v. McIntosh*,
722 F.3d 1294 (11th Cir. 2013) .................................................... 19

*Thomas v. Shipka*,
818 F.2d 496 (6th Cir. 1987) ...................................................23, 30

*Turpin v. Mailet*,
591 F.2d 426 (2d. Cir. 1979)......................................................... 24

*United States v. Premises Known as 608 Taylor Ave., Apartment 302, Pittsburgh, Pa.*,
584 F.2d 1297 (3d Cir. 1978)........................................................ 33

*United States v. Stanley*,
483 U.S. 669 (1987) ..................................................................... 15

*Williams v. Bennett*,
689 F.2d 1370 (11th Cir. 1982) .....................................13, 17, 19

*Williams v. Utah Dep't of Corr.*,
928 F.3d 1209 (10th Cir. 2019) .................................................... 25

*Wilson v. Garcia*,
471 U.S. 261 (1985) ..................................................27–31, 34–36

*Wilson v. Hawaii*,
--- S. Ct. ----, 604 U.S. ----, 2024 WL 5036306 (2024)................ 31

*Ziglar v. Abbasi*,
582 U.S. 120 (2017) ................................................................ 19

**Constitutional and Statutory Provisions**

42 U.S.C. § 1983...............................................................10, 17

Ga. Const. art. I, § III, para. I ...................................................... 27

O.C.G.A. § 9-3-30 ......................................................................... 31

O.C.G.A. § 9-3-31 ......................................................................... 31

O.C.G.A. § 9-3-32 .......................................................................30, 31

O.C.G.A. § 9-3-33 ......................................................................... 27

U.S. Const. amend. xiv, § 5.....................................................15, 22

**Other Authorities**

Black's Law Dictionary (12th ed. 2024) ....................................... 28

Hon. Chief Justice Harold D. Melton, Supreme Court of Georgia, *Order Declaring Statewide Judicial Emergency* (March 14, 2020).................................................... 34

## INTEREST OF AMICUS CURIAE

The Solicitor General submits this brief in response to the Court's invitation for his views on the case. The State of Georgia has a substantial interest in the questions presented because they implicate when the State and its political subdivisions may be sued for alleged takings of property.

## STATEMENT OF ISSUES

1. Whether the Court should search for an implied cause of action in the Takings Clause despite the availability of a constitutionally sufficient cause of action and remedial scheme under § 1983.

2. Assuming the Constitution confers a direct cause of action for takings, which statute of limitations under Georgia law would likely apply to such a claim.

## INTRODUCTION

The Constitution generally confers rights, not remedies. For that reason, the ordinary rule is that private citizens cannot rely solely on the guarantees in the Bill of Rights to sue government officials for money damages in federal court. *See Egbert v. Boule*, 596 U.S. 482, 486 (2022). A plaintiff must instead point to some act of Congress that gives him the right to sue. *See Hernandez v. Mesa*, 589 U.S. 93, 101 (2020). This rule makes perfect sense because creating causes of action for constitutional torts is "a legislative endeavor." *Egbert*, 596 U.S. at 491. Only in the extremely rare situation where Congress has left citizens without any means at all for vindicating their constitutional rights need a court even begin to consider whether a direct cause of action under the Constitution exists. *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 70 (2001) (discussing *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971)). And even then, their "authority to do so at all is, at best, uncertain." *Egbert*, 596 U.S. 491.

Plaintiff-Appellant Brandon Fulton claims that Defendant-Appellee Fulton County, Georgia, failed to return his horses after it seized them in an animal-cruelty case but later dropped the charges. *See* Doc. 1 at 3–4. He initially sued the County's Board

of Commissioners and several Fulton County officials under 42 U.S.C. § 1983, Doc. 1, but after that claim was dismissed, he sought leave to add a takings claim against the County directly under the Takings Clause of the Fifth Amendment, Doc. 26. The district court denied the request, holding in part that through § 1983 Congress has created precisely the remedy that Plaintiff[1] is asking this Court to recognize directly under the Constitution: a right to sue local governments in federal court for just compensation. *See* Doc. 39 at 10 (citing *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1253 n.15 (11th Cir. 2012)). That was correct.

The Takings Clause of the Fifth Amendment does "not expressly create … a right of action" to seek money damages in federal court. *Me. Comm. Health Options v. United States*, 590 U.S. 296 n.12 (2020) (quotations omitted). That means any direct right of action under the clause would necessarily be implied. But apart from generally admonishing courts not to infer rights of action absent from the constitutional or statutory text, the Supreme Court has made clear that if Congress has created an

[1] Given that the parties share a name, this brief uses the term "Plaintiff" and "the County" to refer to Brandon Fulton and Fulton County, respectively.

"alternative remedial structure" for the violation of a right, "that alone" is "enough to limit the power of the Judiciary to infer a new … cause of action." *Egbert,* 596 U.S. at 493 (quotations omitted). And there is no dispute that plaintiffs can assert takings claims under § 1983's well-established and comprehensive remedial scheme. *See Knick v. Township of Scott,* 588 U.S. 180, 194 (2019). "That alone" should resolve this appeal. *Egbert*, 596 U.S. at 493.

Plaintiff suggested during oral argument that the Court should infer a right of action anyway because § 1983 offers insufficient relief in his case, Oral Argument Recording ("OA") at 4:47–6:38, but that argument goes nowhere. The Supreme Court has made clear that the existence of a remedial scheme is what matters, and that questions of the remedy's adequacy are almost always for Congress to assess. *Egbert,* 596 U.S. at 496; *Malesko,* 534 U.S. at 72. So whether § 1983 offers "complete relief" to Plaintiff is not critical to the question whether to infer a direct right of action. *Schweiker v. Chiliky,* 487 U.S. 412, 425 (1988).

In any event, this is not a situation where Congress has provided property owners with *fewer* remedies than what the Constitution might (hypothetically) offer property owners. As even *amicus curiae* Institute for Justice acknowledges, § 1983 gives plaintiffs everything they need to obtain just compensation

for municipal takings, and then some. *See* IJ Br. at 16, 19. They can, for example, seek attorney fees and consequential damages for takings—none of which are remedies that the Constitution itself provides for takings. *See infra* at 14. Section 1983 is and has been the exclusive remedy for asserting takings claims against local governments.

Plaintiff vaguely suggests that because local governments cannot be held vicariously liable for the constitutional torts of their employees under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), a direct cause of action for takings may be necessary to fill in that remedial gap. OA at 4:47–6:38. But that is an argument courts have rejected many times over. The Constitution, for one, says nothing about whether local governments must be held accountable for every constitutional tort committed by their employees. *See, e.g.*, *Kostka v. Hogg*, 560 F.2d 37, 44 (1st Cir. 1977). And § 5 of the Fourteenth Amendment, which empowers Congress to enforce the Bill of Rights against the States, arguably "limit[s] the … power of the courts to create" such a rule of liability against local governments in the first place. *Mahone v. Waddle*, 564 F.2d 1018, 1023 (3d Cir. 1977). In any case, the question is not whether relief under § 1983 is "perfect," *Cale v. City of Covington, Va.*, 586 F.2d 311, 317 (4th

Cir. 1978), but whether it *exists*, *Egbert*, 596 U.S. at 498. And courts uniformly agree that it does. *See, e.g.*, *Williams v. Bennett*, 689 F.2d 1370, 1390 (11th Cir. 1982).

Other factors, too, counsel against the Court deciding the implied-right question. Doing so would require the Court to address many ancillary yet complicated questions that would necessarily arise from the creation of a new cause of action, including the scope of government liability and the defenses available to future defendants. There is no need for the Court to engage with any of those thorny, policy-infused questions when a robust body of law in the § 1983 context already answers these and other adjacent questions.

There is another, separate reason this Court need not reach the more difficult Takings Clause issue in this case: the statute of limitations. In both the *Bivens* and § 1983 contexts, this Court follows the well-settled rule that constitutional tort actions sound in personal injury and are therefore subject to the relevant state limitations period for such claims. *Kelly v. Serna*, 87 F.3d 1235, 1238 (11th Cir. 1996). Takings claims, whether under § 1983 or the Fifth Amendment, are therefore subject to Georgia's two-year statute of limitations period for personal-injury actions. There is

no legal or logical reason for applying a different limitations period to Plaintiff's proposed takings claim.

"Constitutional rights do not … come with built-in cause[s] of action." *Devillier v. Texas*, 601 U.S. 285, 291 (2024). To hold that the Fifth Amendment right to just compensation is somehow an exception would displace § 1983 as reliable statutory remedy for redressing takings. Rather than doing so, this Court can simply apply the statute of limitations or hold that Congress has already addressed this issue via § 1983. Respectfully, it should go no further.

## ARGUMENT

### I. There is no need to determine whether the Takings Clause contains an implied right of action because Congress has provided a right of action and remedial scheme.

The core issue in this appeal is whether the district court should have allowed Plaintiff to amend his complaint to assert a standalone claim under the Takings Clause. Pl. Opening Br. at 2. Following oral argument, the Court requested briefing on whether the Takings Clause provides an implied, direct cause of action against the federal or state governments. But the Court need not—and should not—address that issue here because § 1983 already provides a cause of action and remedial scheme for

takings claims against municipal entities such as Defendant Fulton County. So even if the Takings Clause includes an implied right of action, Congress's remedial scheme, flowing from its constitutional power to enforce the constitutional rights against state intrusion, governs. U.S. Const. amend. xiv, § 5.

**A.** The Supreme Court has held that courts may not infer implied causes of action for constitutional violations "if Congress already has provided, or has authorized the Executive to provide, an alternative remedial structure" for injured parties. *Egbert,* 596 U.S. at 493 (quotation omitted). Applying this principle, the Court has declined to recognize implied rights of action in a wide variety of constitutional contexts. *See, e.g., Bush v. Lucas*, 462 U.S. 367, 390 (1983) (First Amendment suit against a federal employer); *Chappell v. Wallace*, 462 U.S. 296, 297, 304–05 (1983) (race-discrimination suit against military officers).[2] The analysis does not change even if a court deems the alternative remedy less effective. "[T]he question whether a given remedy is adequate is a

[2] *See also, e.g., United States v. Stanley*, 483 U.S. 669, 671–72, 683–84 (1987) (substantive and procedural due process claims against military officers); *Minneci v. Pollard,* 565 U.S. 118, 120–21 (2012) (Eighth Amendment claim against guards at a private prison); *Hernandez,* 589 U.S. at 103–05, 107–09 (Fourth and Fifth Amendment claims against border patrol agents).

legislative determination that must be left to Congress," and as long as Congress or the Executive finds the remedial process sufficient, "the courts cannot second-guess that calibration" through an implied remedy. *Egbert,* 596 U.S. at 498.

In other words, so long as Congress has provided the plaintiff "an avenue for *some* redress, bedrock principles of separation of powers foreclose[] judicial imposition" of a new remedy under the Constitution. *Malesko*, 534 U.S. at 69 (emphasis added). The Court has thus routinely rejected arguments that existing rights of action and remedial schemes do not offer "complete relief" and would leave a particular plaintiff's injuries "unredressed." *Schweiker*, 487 U.S. at 425; *see, e.g., Egbert*, 596 U.S. at 497–98 (no implied Fourth Amendment claim against federal officer for assault even though judicial review was unavailable under alternative grievance procedures); *Bush*, 462 U.S. at 372 n.8 (no implied First Amendment claim for wrongful termination even though jury trials and punitive damages were unavailable under alternative remedial scheme).[3]

[3] *See also Malesko,* 534 U.S. at 74 (implied action unavailable because prisoners could file grievances through an administrative remedy); *Schweiker*, 487 U.S. at 424–29 (1988) (no implied due process claim for disability benefits even though

Relevant here, § 1983 provides a cause of action and a comprehensive remedial scheme for takings claims against state and local officials. It authorizes monetary and injunctive relief to those whose constitutional rights have been violated by a person acting under the color of state law. 42 U.S.C. § 1983. This Court has held that § 1983 "provide[s] an adequate alternative remedial scheme" for redressing all constitutional violations, and therefore "precludes … direct constitutional action" under the Bill of Rights and the Fourteenth Amendment. *Williams*, 689 F.2d at 1390 (no implied right of action under Eighth Amendment against state prison officials because of § 1983). That holds true for alleged violations of the Takings Clause, as well. The Supreme Court has expressly held that "someone whose property has been taken by a local government has a claim under § 1983 … that he may bring upon the taking in federal court." *Knick,* 588 U.S. at 194.

And even though the analysis ordinarily does not call for examining the "sufficiency" of § 1983's remedies in the takings context, *see* Order, Doc. 32 at 3 (Nov. 11, 2024); *Egbert,* 596 U.S. at 498 (adequacy of the remedy is a legislative determination), § 1983 in fact provides property owners everything they need to

emotional damages were unavailable under alternative remedial scheme).

fully recover for uncompensated takings by local governments. The parties appeared to agree during oral argument that § 1983 claimants can recover exactly the same amount in just compensation against local governments as they would directly under a hypothetical Takings Clause direct cause of action. OA at 4:30–50, 14:55–15:40. Section 1983 is actually *more* effective at enforcing the right to just compensation because it goes beyond what the Fifth Amendment requires the government to pay. As *amicus* Institute for Justice has explained, "unlike claims directly based on the Just Compensation Clause," § 1983 claimants "can recover consequential damages, as well as attorneys' fees, *in addition* to just compensation" from defendants. IJ Br. at 16, 19 (emphasis added) (citations omitted).

In short, Congress has the primary authority to create remedial schemes for both statutory and constitutional violations, and by enacting § 1983, it specifically intended to govern the type of claim that Plaintiff asserts here. So not only is it unnecessary for the Court to consider Plaintiff's invitation to identify an implied cause of action in the Takings Clause, doing so would raise separation-of-powers concerns because "Congress is in a better position to decide whether or not the public interest would

be served" by a particular remedial scheme. *Bush,* 462 U.S. at 390.

**B.** The existence of an alternative remedial scheme is not the only reason for the Court to avoid the underlying question of whether the Takings Clause itself contains an implied right of action. Were the Court to hold that property owners have a cause of action directly under the Takings Clause, it would inevitably face a host of difficult, policy-infused follow-up questions.

Among many examples, the creation of a standalone cause of action would necessarily raise the question of what defenses a defendant could raise in opposition to the new claim.
Section 1983, for example, allows state officials to raise a good-faith defense. *Williams*, 689 F.2d at 1390 n.20. But one *amicus* has suggested that state or federal defendants could not raise this defense to a hypothetical takings claim filed directly under the Fifth Amendment. *See* Buckeye Institute Br. at 15, 29.

The applicability of these claims to the States would also raise a host of difficult questions. States traditionally enjoy sovereign immunity from suit and can waive it layer by layer—by, for example, consenting to suit in a federal forum but not to their liability "for particular claims." *Stroud v. McIntosh*, 722 F.3d 1294, 1302 (11th Cir. 2013). Would an action against the States

under the Takings Clause remove that distinction? And if so, how? And what would the *scope* of state liability look like under this new cause of action? Political subdivisions of the State are not necessarily liable for the constitutional torts of their employees under § 1983. *Infra* at 17. But would the States be liable for the constitutional torts of their political subdivisions? Or suppose the property owner seeks to recover the full value of his taken property even though the State has offered to return it. Would sovereignty concerns constitutionally require the court to treat the taking as a temporary one and limit damages to the rental value—or would that be left to the judge's discretion?

These sorts of complicated policy questions, which involve "a host of considerations that must be weighed and appraised," *Bush,* 462 U.S. at 380 (quotation omitted), including "inevitable compromises" between the various interests at stake, fall squarely within the purview of Congress, *Schweiker*, 487 U.S. at 429. Courts, by contrast, are at best "ill suited" for that task, *Egbert*, 596 U.S. at 495, and at worst their "congressionally uninvited intrusion" into the policy realm raises separation of powers concerns, *Ziglar v. Abbasi,* 582 U.S. 120, 142–43 (2017) (quotation omitted).

**C.** Plaintiff contends that § 1983 is an inadequate remedy for takings because the statute excludes local governments from strict or vicarious liability for the constitutional torts. OA at 4:47–6:38; *see Monell*, 436 U.S. at 691. That ignores the Supreme Court's frequent admonitions that the existence—rather the "adequacy"—of an alternative remedial scheme is what matters for an implied-right-of-action analysis. *See, e.g., Egbert,* 596 U.S. at 498. Regardless, this argument fails on its own terms.

Courts considering similar arguments have repeatedly declined to part ways with § 1983 and infer a broader rule of municipal liability directly under the Constitution.[4] As the Fourth Circuit explained in *Cale v. City of Covington*, deciding whether to hold local governments vicariously liable for constitutional torts would necessarily "involve[] the judiciary in policy decisions" that it has no business deciding, such as how to strike the right balance between conserving state and local resources on the one hand and compensating victims of constitutional misconduct on the other. 586 F.2d at 317. These are policy questions that Congress is "far more competent" to

[4] *See, e.g.*, *Dean v. Gladney*, 621 F.2d 1331, 1336–37 (5th Cir. 1980); *Cale*, 586 F.2d at 317–18; *Molina v. Richardson*, 578 F.2d 846, 850–52 (9th Cir. 1978); *Kostka*, 560 F.2d at 44–45.

answer than courts. *Egbert*, 596 U.S. at 491 (quotation omitted). And here, Congress answered them when it enacted § 1983 and "deliberately chose[] to exclude vicarious liability against municipalities" for constitutional torts that they do not cause. *Molina*, 578 F.2d at 851. Congress has stood by that policy determination for the 150-plus years since § 1983 became law, and no court appears to have deviated from Congress's judgment call on this point. Plaintiff does not offer the Court any reason to "second-guess" that policy determination here. *Egbert*, 596 U.S. at 498.

To the contrary, the Constitution mandates that courts defer to Congress in this context. The Fourteenth Amendment expressly delegates to Congress, "rather than the judiciary," *Katzenbach v. Morgan*, 384 U.S. 641, 648 n.7 (1966), the "power to enforce … the provisions" of the Fourteenth Amendment against the states, U.S. Const. amend. xiv, § 5. That includes deciding remedial questions about the scope of liability for local governments for constitutional violations. *See Cale*, 586 F.2d at 317. Given § 5's express grant of decision-making authority to Congress, courts have concluded that a judge-made rule creating vicarious liability for local governments would violate the Fourteenth Amendment because it would "take away" Congress's

"constitutionally entrusted power" to decide the scope of municipal liability under § 5. *Id.*

Contrary to Plaintiff's argument, relief against local governments is more than adequate under § 1983. It is telling, for example, that many circuits that rejected § 1983 as an adequate alternative in other contexts did so only because *Monell* had not yet "reinterpreted section 1983 to permit direct suit against municipalities for officially approved unconstitutional conduct." *Bishop v. Tice*, 622 F.2d 349, 356 n.12 (8th Cir. 1980). Prior to *Monell* these circuits implied *Bivens*-type actions against local governments because courts did not consider local governments subject to suit under § 1983 at all. *See Thomas v. Shipka*, 818 F.2d 496, 501 (6th Cir. 1987) (citing *Monroe v. Pape*, 365 U.S. 167 (1961), *overruled by Monell*, 436 U.S. at 663)). But that changed once *Monell* clarified that § 1983 does in fact provide an avenue for redress against local governments under the right circumstances. *E.g.*, *Bishop*, 622 F.2d at 356 n.12. Following *Monell*, there was no longer any practical or legal reason to infer a right of action against local governments, and that remains true today. *See Owens v. City of Independence, Mo.*, 589 F.2d 335, 337 (8th Cir. 1978) ("A post-*Monell* interpretation of section 1983 permits Owen to sue the City of Independence directly …

Consequently, no reason exists to imply a direct cause of action."), *reversed on other grounds*, 445 U.S. 622 (1980); *Turpin v. Mailet*, 591 F.2d 426, 426 (2d. Cir. 1979) ("*Monell* held that § 1983 suits may be brought against municipalities … [T]here is no place for a cause of action against a municipality directly under the 14th Amendment.").

**D.** *Amicus* Institute for Justice argues that the existence of alternative remedies is relevant only in the specific context of *Bivens* claims. IJ Br. at 22. The Supreme Court held in *Bivens* that the Fourth Amendment authorized a damages action against federal officials for Fourth Amendment violations arising out of an unlawful search or seizure. 403 U.S. at 395–96.

But the distinction the Institute for Justice tries to draw does not hold up to scrutiny. Just like the Fourth Amendment in *Bivens,* the Takings Clause does "not expressly create … a right of action" in federal court. *Me. Comm. Health Options*, 590 U.S. at 296 n.12 (quotation omitted); *see also Devillier*, 601 U.S. at 291 ("Constitutional rights do not typically come with a built-in cause of action."). In other words, Plaintiff can proceed with his claim only if the Court is willing to infer this cause of action against Fulton County directly under the Fifth Amendment. That is simply *Bivens* with a local government standing in as the

defendant. *See Bieneman v. City of Chicago*, 864 F.2d 463, 469 (7th Cir. 1988). *Amicus* might believe the textual argument for an implied cause of action is *stronger* for the Takings Clause than for the Fourth Amendment, but the strength of the textual argument is not the point. The point is that Congress has used its authority to set out the rules governing these claims.

Contrary to Institute for Justice's argument, circuits have routinely refused to infer takings actions under the Constitution precisely *because* the property owner had some other way of asserting his takings claim than through a direct action. *See, e.g.*, *Devillier*, 601 U.S. at 292–93; *Harbert Intern., Inc. v. James*, 157 F.3d 1271, 1279 (11th Cir. 1998) ("Because Alabama state courts provide Harbert with an avenue of relief for its takings claim, we need not decide whether there is a … suit[] against a state in federal court.").[5]

---

[5] *See also 74 Pinehurst LLC v. New York*, 59 F.4th 557, 569–70 (2d Cir. 2023); *Ladd v. Marchbanks*, 971 F.3d 574, 579 (6th Cir. 2020); *Bay Point Props., Inc. v. Miss. Trans. Comm.*, 937 F.3d 454, 456 (5th Cir. 2019); *Williams v. Utah Dep't of Corr.*, 928 F.3d 1209, 1213–14 (10th Cir. 2019); *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 551–52 (4th Cir. 2014); *DLX, Inc. v. Kentucky*, 381 F.3d 511, 527 (6th Cir. 2004); *Seven Up Pete Venture v. Schweitzer*, 523 F.3d 948, 954–55 (9th Cir. 2008); *John G. & Marie Stella Kenedy Memo'l Found. v. Mauro*, 21 F.3d 667, 674 (5th Cir. 1994).

To be sure, these cases relied on state procedures, rather than § 1983, as a sufficient reason not to infer a freestanding federal takings claim. *See, e.g.*, *Harbert Intern., Inc.*, 157 F.3d at 1279. But this demonstrates only that property owners often have *multiple* alternative avenues (§ 1983 *and* state procedures) for vindicating their right to just compensation other than through an implied constitutional cause of action. As the Buckeye Institute has pointed out, Br. at 27, "nearly all state governments provide just compensation remedies to property owners," *Knick*, 588 U.S. at 201, and Georgia is one of those states. Under Georgia law, plaintiffs injured by takings can recover money damages against the state government or its political subdivisions via an inverse condemnation claim under Georgia's Takings Clause, which is broader in its substantive protections than the Fifth Amendment. *See Diversified Holdings, LLP v. City of Suwanee*, 302 Ga. 597, 615 (2017) (Peterson, J., concurring); Ga. Const. art. I, § III, para. I ("[P]rivate property shall not be taken *or damaged* for public purposes without just and adequate compensation being first paid.") (emphasis added). That property owners have two well-established avenues of judicial relief—a § 1983 claim under federal law or a state-law takings claim—only emphasizes that there are ample "alternative remedial structure[s]" available to

plaintiffs. *See Egbert*, 596 U.S. at 493 (quotation omitted). Against this backdrop, there is no legal or practical justification for the Court to infer yet another cause of action from the text of Takings Clause.

## II. Assuming the Constitution impliedly creates a cause of action for takings, the statute of limitations would bar Plaintiff's claims.

The Court also invited briefing on the question of "[w]hich statute of limitations under Georgia law would likely apply to claims brought directly under the Takings Clause." Order, Doc. 33 (Nov. 12, 2024). This question too, appears dispositive, as Georgia's limitations period for personal injury actions (the statute of limitations federal courts would import here) is two years, O.C.G.A. § 9-3-33, and Plaintiff filed his claim more than two years after the injury occurred. So the Court could simply decide the case on this basis.

When Congress has not provided a statute of limitations for a federal claim, courts must characterize the nature of the claim and borrow the analogous state limitations rule. Applying this framework to § 1983 claims, the Supreme Court held in *Wilson v. Garcia* that constitutional tort actions based on violations of the Fourteenth Amendment "are best characterized as personal injury

actions" because the rights guaranteed under the Fourteenth Amendment are "personal rights." 471 U.S. 261, 278, 280 (1985). When the state violates any of these guarantees it "is an injury to the individuals rights of the person," and federal courts therefore borrow the state limitations period for personal injury claims. *Id.* at 277, 280.

*Wilson* dealt with constitutional tort actions filed under § 1983, but its reasoning would apply to takings claims pursued directly under the Fourteenth Amendment, as well. A takings claim is a takings claim—regardless of whether the plaintiff asserts it under § 1983 or under the Constitution itself. And because the right to just compensation for public takings, like any constitutional right guaranteed under the Fourteenth Amendment, is a "personal right," *Lynch v. Household Finance Corp.*, 405 U.S. 538, 552 (1972), a claim for damages against the state for a taking is a "personal injury" claim under *Wilson*, 471 U.S. at 277; *see also Personal Injury*, Black's Law Dictionary (12th ed. 2024) ("2. Any invasion of a personal right."). How a plaintiff precisely pleads this claim should not matter. Whether he asserts his claim under § 1983 or directly under the Fourteenth Amendment, his cause of action is "best characterized as [a] personal injury action[]" and Georgia's two-year "personal injury

statute of limitations should be applied." *Owens v. Okure*, 488 U.S. 488 U.S. 235, 240–41 (1989) (quoting *Wilson*, 471 U.S. at 280).

Indeed, because there is no meaningful difference between § 1983 and direct constitutional tort claims, courts have extended *Wilson*'s holding to claims asserted directly under the Constitution in the *Bivens* context, *Kelly*, 87 F.3d at 1238, including to takings claims raised directly under the Fifth Amendment against federal officials, *see New Port Largo, Inc. v. Monroe County*, 985 F.2d 1488, 1492 n.9 (11th Cir. 1993) (citing *Bieneman*, 864 F.2d at 469, 467–70 as an example). As the Seventh Circuit has explained, § 1983 and direct litigation under the Constitution via *Bivens* are "identical save for the replacement of a state actor (§ 1983) by a federal actor (*Bivens*)." *Bieneman*, 864 F.2d at 469. In all meaningful respects—"the interests being protected, the relief which may be granted, and the defenses which may be asserted"—claims filed directly under the Constitution or via § 1983 are the same. *Chin v. Bowen*, 833 F.2d 21, 23 (2d Cir. 1987) (quotation omitted) (applying *Wilson* to due process *Bivens* claim). Accordingly, these courts correctly apply the state's personal injury statute of limitations to implied causes of action under the Bill of Rights. The same rule would logically apply to takings

claims asserted against state officials and local governments under the Fourteenth Amendment.

"There is no reason to have a different period of limitations" for takings claims based on the Fourteenth Amendment, and there are "strong reason[s] not to." *Bieneman*, 864 F.2d at 469. Most obviously, a non-uniform limitations period for such claims would mean that—depending on which procedural vehicle the plaintiff chooses (§ 1983, *Bivens*, or the Fourteenth Amendment)—he would have more or less time to assert the *same* substantive cause of action based on the *same* facts and the *same* constitutional provision. *See Thomas*, 818 F.2d at 500. That of course would make no sense, and it "would give … plaintiff[s] an incentive to pick whichever jurisdiction provided the longer period." *Bieneman*, 864 F.2d at 469.

The Institute for Justice mistakenly argues that Georgia's four-year statute of limitations for replevin actions should apply here because that is how a *Georgia court* might characterize Plaintiff's claim. IJ Br. at 14 (citing O.C.G.A. § 9-3-32). But "the matter of characteriz[ing]" a federal claim for statute of limitations purposes is "a *federal* question." *Wilson*, 471 U.S. at 268–69 (emphasis added). And as explained, federal courts uniformly agree that constitutional tort claims, including takings

claims, are "best characterized" as personal injury claims. *Id.* at 280. Whether a Georgia court would interpret Plaintiff's claim the same way is irrelevant because only *after* courts characterize a federal claim do they consult state law, and only for the limited purpose of determining "the length of the limitations period" for the claim. *Id.* at 269.

Moreover, the Institute for Justice is incorrect that a Georgia court would apply the four-year statute of limitations for replevin actions to Plaintiff's claim. Although that is the general limitations period for claims based on the deprivation of property, *see* O.C.G.A. §§ 9-3-30, 9-3-31, 9-3-32, Georgia law requires that "[a]ll claims against *counties* … be presented within 12 months after they accrue … or [they] are barred." O.C.G.A. § 36-11-1 (emphasis added). That includes claims "for compensation for the taking of" property. *Jones v. Fulton County*, 207 Ga. App. 397, 398 (1993) (citing *Puckett v. Gwinnett County*, 200 Ga. App. 53 (1991)). Here, Plaintiff has made clear that his "takings claim is against Fulton County" only. Doc. 26 at 3. So if the question were what a Georgia court would do (though it is not), a Georgia court would apply § 36-11-1's one-year limitations period to his claim, which is, of course, shorter than the correct two-year limitations period under *Wilson*.

The Institute for Justice argues in the alternative that Plaintiff's takings claim did not accrue under the (correct) two-year statute of limitations until he "kn[ew] … that the government was never going to return" his property that the County had seized as evidence in criminal proceedings against him. IJ Br. at 12. And according to the Institute, that did not happen until a "few weeks" to "one month" after April 5, 2018—when the County dismissed Plaintiff' criminal charges and his "post-dismissal efforts and requests" to recover his property failed. *Id.* at 12–13. In the Institute's view, that arguably puts Plaintiff's "complaint (filed May 5, 2020) … within [the] two-year limitations period." *Id.* at 13.

This misstates the law on when federal takings claims accrue. A property owner has an actionable takings claim "as soon as a government takes his property … without paying for it" because *that* is when the Fifth Amendment violation occurs. *Knick*, 588 U.S. at 189. Alleged "post-taking actions," *id.* at 192 (here, the County's purported decision "never … to return" Plaintiff's *already taken* property, IJ Br. at 12), do not change the fact that a taking has already occurred. Plaintiff's taking claim thus would have "accrue[d] … 'at the time of the [alleged] taking,'" not later. *Wilson v. Hawaii*, --- S. Ct. ----, 604 U.S. ----, 2024 WL 5036306, at

*2 (2024) (separate opinion of Thomas, J.) (quoting *Knick*, 588 U.S. at 194).

Based solely on the allegations in Plaintiff's complaint, the alleged taking in this case occurred (at the latest) on April 5, 2018, which is when County officials dismissed the criminal charges against him but retained possession over his property that they had seized as evidence almost one year earlier. Doc. 1 at 3–4; *see United States v. Premises Known as 608 Taylor Ave., Apartment 302, Pittsburgh, Pa.*, 584 F.2d 1297, 1302 (3d Cir. 1978) ("[C]ontinued retention of evidence" in a terminated criminal proceeding is a taking) (citing *Lowther v. United States*, 480 F.2d 1031 (10th Cir. 1973)).

At least one circuit has implicitly held that when the government unlawfully retains property seized as evidence, the taking occurs at the moment of seizure (here, April 22, 2017) because that is the point at which the government "physically takes possession of [the] property without acquiring title to it." *See Frein v. Pa. State Police*, 47 F.4th 247, 252 (3d Cir. 2022) (citing, e.g., *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 147 (2021)); *id.* at 252 ("[P]olice do not gain title to 'mere evidence.'") (quotations omitted). *Amicus* takes no position as to whether the County's alleged seizure or subsequent dismissal of Plaintiff's

charges marked the date for when the alleged taking in this case officially occurred. Either way, the alleged taking would have occurred more than two years before Plaintiff filed the present lawsuit (May 5, 2020), which means that it is untimely.

One final point: the County represented during oral argument that, depending on when the alleged taking took place, Plaintiff's claim may be subject to the tolling provision of the Georgia Supreme Court's March 14, 2020, Emergency Order. OA at 24:44–25:15; *See* Hon. Chief Justice Harold D. Melton, Supreme Court of Georgia, *Order Declaring Statewide Judicial Emergency*, https://tinyurl.com/yc6tsycc. That order (now long expired) declared a statewide judicial emergency during the COVID-19 pandemic and among other things temporarily tolled the statute of limitations for all civil actions in *Georgia court*. *Id.* at 2. The County suggested that if the alleged taking in this case occurred on April 5, 2018, (when Plaintiffs' criminal charges were dismissed), Plaintiff's claim was likely tolled under the March 14 order. OA at 24:57–25:15.

The County's tentative view on this point should not be well-taken. It is true that questions "closely related" to the length of the limitations period for a claim, such as tolling, are "governed by state law." *Wilson*, 471 U.S. at 269 & n.17. But "state law" in this

context means *rules* like state statutes or published court decisions interpreting and applying those statutes. *See, e.g.*, *Bd. of Regents of Univ. of State of N.Y. v. Tomanio*, 446 U.S. 478, 486–87 (1980) (applying New York statute's exhaustive list of tolling requirements to plaintiff's untimely § 1983 claim). In other words, generally applicable *principles* that apply to the state statute of limitations might also apply in federal court. But *discretionary* state decisions that merely suspend ordinary legal rules in state court do not control federal courts.

In their supplemental briefs, neither Plaintiff, *amici*, nor the County address whether the emergency order would have tolled Plaintiff's takings claim, which further underscores that it is not relevant to the statute of limitations question in this case. In any event, the Solicitor General has not found any example of a federal court applying a discretionary executive (or judicial) decision on tolling to federal courts. That is unsurprising because although the state limitations period is something federal courts borrow from states, it is ultimately a *federal question* as to whether a plaintiff has satisfied the statute of limitations. *See Wilson*, 471 U.S. at 269. It does not make sense to look to discretionary state decisions about state court claims to address federal statutes' of limitations periods, even if the underlying

rules are borrowed from states. That would lead to potentially extraordinary conflicts. Suppose a federal executive order lawfully tolled certain claims by six months, while a simultaneous state order tolled claims indefinitely. Would the federal court have to apply the *state* discretionary order? There appears to be no authority to support that bizarre outcome.

If the Georgia legislature were to amend its two-year limitations period by including a tolling provision, that might provide legal principles this Court would then apply to determine whether Plaintiff's claim was tolled under *Wilson*. But a discretionary, blanket emergency declaration that suspends state filing requirements for all *state court* claims does not fit the bill.

## CONCLUSION

The Court should affirm the judgment of the district court below.

Respectfully submitted.

/s/ *Stephen J. Petrany*
Christopher M. Carr
*Attorney General of Georgia*
Stephen J. Petrany
*Solicitor General*
Ross W. Bergethon
*Principal Deputy Solicitor General*

William D. Rodenberg
*Honors Fellow*

Office of the Georgia
Attorney General
40 Capitol Square, SW
Atlanta, Georgia 30334
(404) 458-3408
spetranylaw.ga.gov

*Counsel for Amicus Curiae*

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limitations of Rules 29(a)(5) and 32(a)(7)(B) of the Federal Rules of Appellate Procedure because it contains 6,078 words as counted by the word-processing system used to prepare the document.

/s/ *Stephen J. Petrany*
Counsel for Amicus Curiae

## CERTIFICATE OF SERVICE

I hereby certify that on January 31, 2025, I served this brief by electronically filing it with this Court's ECF system, which constitutes service on all attorneys who have appeared in this case and are registered to use the ECF system.

/s/ *William D. Rodenberg*
Counsel for Amicus Curiae