# In the United States Court of Appeals for the Eleventh Circuit

---

Mr. BRANDON FULTON,
APPELLANT

*v.*

FULTON COUNTY BOARD OF COMMISSIONERS,
APPELLEE

---

*ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
(CIV. NO. 1:20cv01936)
(THE HONORABLE STEVE C. JONES, J)*

---

## APPELLANT'S OPPOSITION TO PETITION FOR REHEARING EN BANC

---

KONRAD G.W. ZIEGLER
*Counsel of Record*
LEE & ZIEGLER, LLP
150 North Street
Suite M
Canton, Georgia 30114
(678) 871-0501
kziegler@leeandzieglerlaw.com

# CERTIFICATE OF INTERESTED PERSONS

Counsel for appellants certify that all parties to this appeal are natural persons or a municipality, and thus no entity owns 10% or more of the stock of any party. Pursuant to Eleventh Circuit Rule 26.1-1, Appellant certifies that the prior certificates of interested persons submitted by the parties and amici in this case are correct and complete.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ............................. i

TABLE OF AUTHORITIES........................................ ivv

INTRODUCTION............................................................ 1

ARGUMENT AND CITATION OF AUTHORITY.......................... 4

I.   The panel's decision faithfully and correctly applies both
     Supreme Court precedent and the text, history, and
     structure of the Takings Clause. ........................................... 4

     A.   What do we do with *De Villier*?...................................... 4

     B.   The panel's decision faithfully applies Supreme Court
          precedent and the text, history, and structure of the
          Constitution to fill in any insufficiency in *De Villier*. ... 5

     C.   *De Villier* does not prohibit the panel's decision. .......... 8

     D.   While available state law relief is not a prohibition to
          the panel's decision, Mr. Fulton would be able to state
          his Takings Clause claim under a Georgia cause of
          action........................................................................... 11

II.  The panel's decision creates no conflict that warrants this

Court's review. ....................................................... 13

CONCLUSION ............................................................ 15

CERTIFICATE OF COMPLIANCE.............................. 16

WITH TYPEFACE AND WORD-COUNT LIMITATIONS ......... 16

CERTIFICATE OF SERVICE ...................................... 17

# TABLE OF AUTHORITIES

## Federal Cases

*Azul-Pacifico, Inc. v. Los Angeles,*
    973 F.2d 704 (9th Cir. 1992)................................................... 14

*\* DeVillier v. Texas,*
    601 U.S. 285, 292 (2024).....................................2, 4–11, 13–16

*DeVillier v. Texas (DeVillier III),*
    63 F.4th 416 (5th Cir. 2023) ..................................................... 7

*\*First English Evangelical Lutheran Church v. County of L.A.,*
    482 U.S. 304 (1987) ........................................................ 1, 6, 14

*\*Fulton v. Fulton Cty. Bd. of Comm'rs,*
    148 F.4th 1224 (11th Cir. 2025) ......................................... 3, 11

*Jacobs v. United States,*
    290 U.S. 13 (1933) ............................................................ 1, 14

*\*Knick v. Township of Scott,*
    588 U.S. 180 (2019) ...............................................1, 4, 9, 10, 14

*\*Monell v. Department of Social Services,*
    436 U.S. 658 (1978) ......................................................... 2, 7–8

*Will v. Mich. Dep't of State Police,*
    491 U.S. 58 (1989) ..................................................................... 9

## Georgia Case

*Diversified Holdings, LLP v. City of Suwanee,*
    302 Ga. 597, 807 S.E.2d 876 (2017) ....................................... 12

iv

**Federal Statutes and Rules**

*42 U.S.C. § 1983 ............................................................. 2, 7, 9, 14

Federal Rule of Appellate Procedure 40(d)(3)(A) ........................... 6

**Georgia Statutes and Rules**

O.C.G.A. § 9-3-32 ............................................................. 12

O.C.G.A. § 36-11-1 ........................................................... 11

**Additional Authority**

Wes Dodson, *Forms and Fortitude: Judge Oldham's Dissental in*

   *DeVillier,* 29 Tex. Rev. L. & Pol. ___ (forthcoming) .............. 12

## INTRODUCTION

The Takings Clause of the Fifth Amendment to the United States Constitution guarantees "nor shall private property be taken for public use, without just compensation." In 1933, the United States Supreme Court determined that a Takings Clause claim "[R]ested upon the Fifth Amendment. Statutory recognition was not necessary." *Jacobs v. United States*, 290 U.S. 13, 16 (1933). Quoting *Jacobs*, the Supreme Court affirmed this principle fifty-four years later in *First English Evangelical Lutheran Church v. County of L.A.*, 482 U.S. 304, 315 (1987).

Moreover, in *First English*, the Supreme Court "refute[d] the argument of the United States that 'the Constitution does not, of its own force, furnish a basis for a court to award money damages against the government.'" *Id.*, 482 U.S. at 316 n.9.

And recently, the Supreme Court, citing *First English*, reiterated that it "reject[s] the view that 'the Constitution does not, of its own force, furnish a basis for a court to award money damages against the government[.]'" *Knick v. Twp. of Scott*, 588 U.S. 180, 193 (2019).

But a funny thing happened on the way to the panel's decision in this case. On April 16, 2024, after briefing and oral argument, the Supreme Court suddenly expressed agnosticism, announcing that "Our precedents do not cleanly answer the question whether a plaintiff has a cause of action arising directly under the Takings Clause." *DeVillier v. Texas*, 601 U.S. 285, 292 (2024).

The Supreme Court left the question open, reasoning only that "The cases that DeVillier cites do not directly confront whether the Takings Clause provides a cause of action for just compensation." *Id.*, 601 U.S. at 291.

The answer matters here because Mr. Fulton, at least at the motion to dismiss stage, does not have sufficient evidence to show that the retention of his horses by Fulton County was due to a "policy or custom." *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Thus, Mr. Fulton does not have a cause of action under 42 U.S.C. § 1983. *See id*.

The Supreme Court's reasoning in *DeVillier* is objectively sparse, deciding only that "The cases that DeVillier cites do not

directly confront whether the Takings Clause provides a cause of action for just compensation." *Id.*, 601 U.S. at 291.

The panel's reasoning here is anything but sparse. Starting with an analysis of the pre-ratification original public meaning of "just compensation" and journeying through the original public meaning at the time of the Fourteenth Amendment, a divided panel of this Court—Judges Rosenbaum, Abudu, and Chief Judge William Pryor—reversed the district court, concluding that "After reviewing the text, history, and structure of the Constitution, we hold that a litigant can [maintain a cause of action directly under the Takings Clause]. *Fulton v. Fulton Cty. Bd. of Comm'rs*, 148 F.4th 1224, 1238 (11th Cir. 2025). Chief Judge Pryor dissented, contending that "[N]either the Supreme Court nor this Court nor our predecessor circuit has ever held that the Takings Clause of the Fifth Amendment creates an implied right of action for damages against a government" and this Court should not do so now. *Fulton*, 148 F.4th at 1265. The County sought rehearing en banc, and the Court requested this response.

## ARGUMENT AND CITATION OF AUTHORITY

I. **The panel's decision faithfully and correctly applies both Supreme Court precedent and the text, history, and structure of the Takings Clause.**

### A. What do we do with *DeVillier*?

The first step in determining whether en banc review is warranted here is to understand what *DeVillier v. Texas*, 601 U.S. 285 (2024) does—and does not do.

The most essential point is that *DeVillier* makes no ruling on whether a cause of action arises solely from the Takings Clause. "Our precedents do not cleanly answer the question whether a plaintiff has a cause of action arising directly under the Takings Clause." *Id.*, 601 U.S. at 292.

Second, *DeVillier* affirms the substantive right to recovery under the Takings Clause. Quoting *Knick*, the Supreme Court reiterates "[T]hat 'a property owner acquires an irrevocable right to just compensation immediately upon a taking' '[b]ecause of 'the self-executing character' of the Takings Clause 'with respect to compensation.'" *Id.*, 601 U.S. at 291.

Third, the Supreme Court cabins the holding in *DeVillier*, and thus *DeVillier*'s precedential effect: "This case presents only a question regarding the procedural vehicle by which a property owner may seek to vindicate that right." *DeVillier*, 601 U.S. at 291.

The thing that *DeVillier* does not do is foreclose a cause of action directly under the Takings Clause. "[T]he absence of a case relying on the Takings Clause for a cause of action does not by itself prove there is no cause of action." *Id.*, 601 U.S. at 292.

Indeed, *DeVillier* vacates the Fifth Circuit's holding that "[T]hat the Fifth Amendment Takings Clause as applied to the states through the Fourteenth Amendment does not provide a right of action for takings claims against a state…" *DeVillier v. Texas*, 53 F.4th 904, 904 (5th Cir. 2022).

**B.    The panel's decision faithfully applies Supreme Court precedent and the text, history, and structure of the Constitution to fill in any insufficiency in *DeVillier*.**

The Supreme Court's reason for not simply answering the question presented was that "The cases that DeVillier cites do not

directly confront whether the Takings Clause provides a cause of action for just compensation." *DeVillier*, 601 U.S. at 291-292 citing *First English* and cases awarding equitable relief.

Here, the panel's decision fills in the gap with extensive if not exhaustive authority that more than sufficiently shows cause of action arising directly under the Takings Clause.

While the 3,900-word limit imposed by FRAP 40(d)(3)(A) does not afford the space for a full play-by-play, the panel's decision is based on serious scholarship showing that the Takings Clause has supplied its own cause of action from its pre-ratification original public meaning through its incorporation against the States by the Fourteenth Amendment, its incorporation against municipalities, all the way through *DeVillier*.

The panel decision also effectively addresses the Dissent's counterexamples, showing in each instance how the counterexamples either prove the panel right or how they are not pertinent to determining the answer to the underlying question in this case.

The panel is not alone. Judge Oldham (joined by Judges Smith, Elrod, Engleharst, and Wilson), whose dissental from the denial of rehearing en banc the Supreme Court, if not vindicated, at least favored over the majority's opinion that the Takings Clause provided no direct cause of action, provides a masterclass fully supporting our panel's decision here. *See DeVillier v. Texas* (DeVillier III), 63 F.4th 416, 433 (5th Cir. 2023) (Oldham, J., dissental).

Of especial note is Judge Oldham's collection of takings cases litigated in federal court against municipalities after the 1871 creation of § 1983 both pre and post the incorporation of the Takings Clause in 1897. *See id.*, 63 F.4th 416, 435-36. None of these cases depended on § 1983. *Id.*, *see also* Wes Dodson, *Forms and Fortitude: Judge Oldham's Dissental in* DeVillier, 29 Tex. Rev. L. & Pol. (forthcoming).

Perhaps the most concise yet authoritative indication that Takings Clause claims do not depend on § 1983 comes from *Monell* itself. As Justice Rehnquist noted, "It has not been generally thought, before today, that § 1983 provided an avenue of relief from

unconstitutional takings." *Monell v. Dep't. Soc. Servs.*, 436 U.S. 658, 721 n.4 (1978) (Rehnquist, J. dissenting). Instead, "Those federal courts which have granted compensation against state and local governments have resorted to an implied right of action under the Fifth and Fourteenth Amendments." *Id.*, (collected cases omitted). Thus, the right of action under the Fifth and Fourteenth Amendments already exists and is not an invention of the panel's decision.

Contrary to the Dissent, the panel's decision is not "absurd" nor is its reasoning "a myth" nor does it leave "constitutional wreckage" in its wake. The panel's decision instead vindicates the text, history, and structure of the Constitution and does not warrant either vacatur or further review.

## C. *DeVillier* does not prohibit the panel's decision.

To read *DeVillier* as requiring the panel to leave the question of whether the Takings Clause supplies its own cause of action undecided is too broad a reading. The Supreme Court determined that "[*T*]*his case* does not require us to resolve that question." *Id.*, 601 U.S. at 292 (emphasis added)—and for good reason. Because

the *DeVillier* plaintiffs' claims were against the State of Texas, the claims inherently raised unique issues under § 1983 as well as federalism generally.

First, states are not subject to § 1983 liability because a state is not a "person" within the meaning of § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

Second, Texas tried to game its unique position, arguing that § 1983 was the plaintiffs' only option because the Takings Clause does not itself create a cause of action. Defendant's Motion to Dismiss at 7–8, *DeVillier I*, No. 3:20-CV-00223 (S.D. Tex. July 30, 2021), ECF No. 44.

What *DeVillier* does not engage with, either to affirm or overrule, is *Knick*'s clarification that "The availability of any particular compensation remedy, such as an inverse condemnation claim under state law, cannot infringe or restrict the property owner's federal constitutional claim—just as the existence of a state action for battery does not bar a Fourth Amendment claim of excessive force." *Knick*, 588 U.S. at 191.

The Supreme Court does not hide elephants in mouseholes, much less hide a Frankenstein-like resuscitation of the *San Remo* preclusion trap it explicitly overruled in *Knick*.

Moreover, in *Knick*, the Supreme Court rejected the state law exhaustion requirement that had previously required that "takings plaintiffs, unlike plaintiffs bringing any other constitutional claim, would still have been forced to pursue relief under state law before they could bring suit in federal court." *Id.*, 588 U.S. at 205.

Given the absence of any positive indication in *Devillier* that the Supreme Court intended to overturn its watershed elimination of the state law exhaustion requirement in *Knick* the Supreme Court put in place just five years before, the best reading of *DeVillier*'s decision to remand for pursuit of claims "under the Takings Clause through the cause of action available under Texas law" is best read as a "may" rather than a "must", especially in light of *DeVillier*'s unique procedural posture.

The best view of *DeVillier* is that of a punt (albeit a slightly wobbly one) whose trajectory was guided by the unique circumstances of *DeVillier* itself.

**D. While available state law relief is not a prohibition to the panel's decision, Mr. Fulton would be able to state his Takings Clause claim under a Georgia cause of action.**

It would be disingenuous and unethical not to inform this Court of the one potential issue in the panel's analysis. The panel was correct to point out that O.C.G.A. § 36-11-1 requires that "[a]ll claims against counties . . . be presented within 12 months after they accrue or become payable or the same are barred . . . ." *Fulton*, 148 F.4th at 1236.

While there is no ante litem notice in the record in this case, that is because Mr. Fulton has not yet alleged a cause of action under Georgia law. However, Mr. Fulton is confident that should this Court remand with instruction that Mr. Fulton, as in *DeVillier*, "should be permitted to pursue their claims under the Takings Clause through the cause of action available under [Georgia] law", that the ante litem notices previously presented to the County would satisfy the notice requirement of O.C.G.A. § 36-11-1.

As does Texas state law, Georgia law provides an identical vehicle for takings claims based on both the Georgia Constitution and the Takings Clause. As the Georgia Supreme Court explains: "[Georgia] Inverse condemnation claims draw their meaning and remedies from the eminent domain provisions in the Fifth Amendment of the United States Constitution and Article I, Section III, Paragraph I of the Georgia Constitution, each of which protects against uncompensated 'takings.'" *Diversified Holdings, LLP v. City of Suwanee*, 302 Ga. 597, 605, 807 S.E.2d 876, 884 (2017).

And as the panel correctly notes "any claim added to Mr. Fulton's complaint would relate back to its original filing date, as though he had brought it on that date, May 5, 2020", which is well within the four-year statute of limitations for Georgia property claims. *See* O.C.G.A. § 9-3-32 ("Actions for the recovery of personal property, or for damages for the conversion or destruction of the same, shall be brought within four years after the right of action accrues...").

The County seems to acknowledge the same: "And today, property owners like Fulton have many ways to get just

compensation under state and federal law: Congress passed §1983, and Georgia law has inverse-condemnation actions and several common-law actions." Pet. at 14.

If the County, as Texas did in *DeVillier*, "assure[s] the Court that it would not oppose any attempt by [Mr. Fulton] to seek [an amendment to the complaint]", then Mr. Fulton would be able to be justly compensated in a manner consistent with, if not required by, *DeVillier*. *Id*., 601 U.S. at 293.

To the extent that this Court determines that it is precluded from deciding whether the Takings Clause supplies its own cause of action, this Court should rule, as did the Supreme Court in *DeVillier*, that Mr. Fulton "be permitted to pursue [his] claims under the Takings Clause through the cause of action available under [Georgia] law." *Id*., 601 U.S. at 293.

## II. The panel's decision creates no conflict that warrants this Court's review.

The singular direct conflict with the panel's decision is a Ninth Circuit case holding that, for takings claims, there is "no cause of action directly under the United States Constitution" and

that "a litigant complaining of a violation of a constitutional right must utilize 42 U.S.C. § 1983." *Azul-Pacifico, Inc. v. Los Angeles*, 973 F.2d 704, 705 (9th Cir. 1992).

But that decision makes no mention of *Jacobs* or *First English*. *See generally*, *id*. Moreover, it conflicts with the "may" rather than must designation of § 1983 as an available cause of action in *Knick*. But to the extent that *Azul-Pacifico* carried any persuasive authority outside the Ninth Circuit, that persuasiveness ended when the Supreme Court in *DeVillier* vacated the Fifth Circuit's opinion relying, at least in part, on *Azul-Pacifico*.

The County nonetheless urges this Court to grant en banc review and embrace a standard that would relieve the County and any other municipality of any meaningful burden to provide just compensation for takings outside the narrower and more limited scope of § 1983. The core problem with such a proposition is that it subverts the supremacy of the Constitution and makes the promises of the Fifth and Fourteenth Amendments subservient to the later beneficence of mere congressional legislation.

In the end, while the County attempts to portray the panel's decision as an outlier, the panel's decision is a thorough and authoritative examination of the text, history, and structure of the Takings Clause and Fourteenth Amendment. The practical effect of suggesting otherwise would reduce the Takings Clause and Fourteenth Amendment to novelties that could only be taken out of the display case when a later Congress chose to and on that later Congress's terms. The panel's decision rejecting that view and vindicating the Constitution was entirely correct and does not merit either vacatur or further review.

## CONCLUSION

For the foregoing reasons, the Court should deny the petition for rehearing en banc.

(Signature following)

Respectfully submitted,

/s/ Konrad G.W. Ziegler
Konrad G.W. Ziegler
*Counsel of Record*
LEE & ZIEGLER, LLP
150 North Street
Suite M
Canton, Georgia 30114
(678) 871-0501
kziegler@leeandzieglerlaw.com
*Counsel for Plaintiff-Appellant*

November 19, 2025

## CERTIFICATE OF COMPLIANCE

## WITH TYPEFACE AND WORD-COUNT LIMITATIONS

I, Konrad G.W. Ziegler, counsel for appellant and a member of the Bar of this Court, certify, pursuant to Federal Rule of Appellate Procedure 32(a)(7)(B), that the attached Appellant's Opposition to Petition for Rehearing En Banc is in proportionately spaced Century font, has a typeface of 14 points or more, and contains 3,215 words.

**CERTIFICATE OF SERVICE**

I, Konrad G.W. Ziegler, counsel for appellant and a member of the Bar of this Court, certify that, on November 19, 2025, I electronically filed the foregoing document with the United States Court of Appeals for the Eleventh Circuit by using the appellate NextGen System. I certify that all participants in the case are registered NexGen users and that service will be accomplished by the appellate NextGen system.

/s/ Konrad Ziegler
Konrad G.W. Ziegler