No. 22-12041

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

BRANDON FULTON,
*Plaintiff-Appellant*,

v.

FULTON COUNTY BOARD OF COMMISSIONERS,
*Defendant-Appellee,*

PAUL L. HOWARD, JR., Esq.; in his individual capacity, et al.,
*Defendants.*

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:21-cv-01936-SCJ

**BRIEF OF *AMICUS CURIAE* INSTITUTE FOR JUSTICE IN SUPPORT OF INTERESTED PARTIES-APPELLANTS AND IN SUPPORT OF REVERSAL**

Suranjan M. Sen (*Lead Counsel*)
Robert J. McNamara
Andrew Ward
INSTITUTE FOR JUSTICE
901 N. Glebe Road, Suite 900
Arlington, VA 22203
(703) 682-9320
ssen@ij.org

Christen Mason Hebert
INSTITUTE FOR JUSTICE
816 Congress Ave., Suite 970
Austin, TX 78701
(512) 480-5936
chebert@ij.org

Counsel for *Amicus Curiae*

## STATEMENT OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, the undersigned certifies that the following have an interest in the outcome of this appeal:

1. Bowman, Brad (Counsel for Appellee)
2. The Buckeye Institute (Amicus Curiae)
3. Consovoy McCarthy PLLC (Counsel for Appellee)
4. Cruser, Mitchell, Novitz, Sanchez, Gaston & Zimet, LLP (Counsel for Appellee)
5. Dickey, gilbert C. (Counsel for Appellee)
6. Edwards, John C. (Counsel for Appellant)
7. Ely Jr., James W. (Amicus Curiae)
8. Farag, Donna M. (Amicus Curiae)
9. Fulton, Brandon (Appellant)
10. Fulton County Board of Commissioners (Appellee)
11. Gates, Douglas W. (Counsel for Amici)
12. Georgia Department of Law, Solicitor General (Counsel for Amicus)
13. Hebert, Christen Mason (Counsel for Amicus)
14. Hoffer, Michael (Counsel for Appellee)
15. Institute for Justice (Amicus Curiae, prior Amicus Curiae by invitation of the Court)

16. John Edwards Law Group, LLC (Counsel for Appellant)
17. Jones, The Honorable Steve C. (United States District Judge)
18. Lee & Ziegler, LLP (Counsel for Appellant)
19. Mahoney, Julia D. (Amicus Curiae)
20. McNamara, Robert J. (Counsel for Amicus)
21. Norris, Cameron T. (Counsel for Appellee)
22. Office of the Fulton County Attorney (Counsel for Appellee)
23. Petrany, Stephen J. (Counsel for Amicus)
24. Plott, Mathew (Counsel for Appellee)
25. Rodenberg, William D. (Counsel for Appellee)
26. Rosenberg, Steven (Former Counsel for Appellee)
27. Saunders, Thomas G. (Counsel for Amici)
28. Sen, Suranjan M. (Counsel for Amicus)
29. Scalia Law School Supreme Court Clinic (Counsel for Appellee)
30. Solicitor General of the State of Georgia (Amicus Curiae)
31. Venable, Nicholas B. (Counsel for Appellee)
32. Ward, Andrew (Counsel for Amicus)
33. Williams, Brian M. (Counsel for Appellant)
34. Wilmar Cutler Pickering Hale and Dorr LLP (Counsel for Amici)
35. Woodward, Karen E. (Counsel for Appellee)
36. Ziegler, Konrad G. W. (Counsel for Appellant)

The undersigned further certifies under Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-3(b) that the Institute for Justice has no parent corporation and that no publicly held corporation owns 10 percent or more of its stock.

Dated: July 20, 2026

s/ Suranjan Sen
*Lead Counsel for Plaintiff-Appellant*

## TABLE OF CONTENTS


Page

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT .................................................C-1

TABLE OF CONTENTS ...................................................................................... i

TABLE OF CITATIONS .................................................................................... iii

IDENTITY AND INTEREST OF AMICUS CURIAE...........................................1

STATEMENT OF THE ISSUES..........................................................................2

SUMMARY OF THE ARGUMENT ....................................................................2

ARGUMENT .......................................................................................................4

I. The Constitution provides a federal cause of action for Just Compensation claims—independent of any statutory vehicle. ............4

A. Constitutional text suggests an enforceable right to just compensation. ...........................................................................4

B. History supports an enforceable right to just compensation, based directly on the Constitution. ...........................................6

II. The most sensible limitations period for these claims would be that for actions of replevin—but the question likely does not matter in this case. ...............................................................................11

III. Just-compensation claims based directly on the Constitution operate the same against federal, state, and local entities...................14

IV. The distinction between a just-compensation claim based on the Constitution itself, and one invoking Section 1983, is that Section 1983 allows for consequential damages and attorneys' fees. .............16

A. *Monell*'s concerns regarding vicarious liability do not apply to just-compensation claims (whether brought pursuant to Section 1983 or otherwise). ....................................................16

B. Section 1983 allows for consequential damages and attorneys' fees—in addition to just compensation...................19

V. Any overlap with Section 1983 or a state cause of action does not preclude these claims.....................................................................20

CONCLUSION .........................................................................................22

## TABLE OF CITATIONS

**Page(s)**

**Cases**

*Baker v. City of McKinney*,
601 F. Supp. 3d 124 (E.D. Tex. 2022), *rev'd on other grounds*,
84 F.4th 378 (5th Cir. 2023) .......... 10

*Barron ex rel. Tiernan v. Mayor of Baltimore*,
32 U.S. (7 Pet.) 243 (1833) .......... 8, 10, 15

*Benton v. Savannah Airport Comm'n*,
525 S.E.2d 383 (Ga. Ct. App. 1999) .......... 14

*Boise Cascade Corp. v. State ex rel. Or. State Bd. of Forestry*,
991 P.2d 563 (Or. Ct. App. 1999) .......... 10

*Brown v. Georgia Bd. of Pardons & Paroles*,
335 F.3d 1259 (11th Cir. 2003) .......... 12

*Chi., Burlington & Quincy R.R. Co. v. City of Chicago*,
166 U.S. 226 (1897) .......... 9, 15

*City of Monterey v. Del Monte Dunes at Monterey, Ltd.*,
526 U.S. 687 (1999) .......... 19

*Clayburgh v. City of Chicago*,
25 Ill. 535 (1861) .......... 9

*Darby Dev. Co. v. United States*,
112 F.4th 1017 (Fed. Cir. 2024) .......... 18

*DeVillier v. Texas*,
601 U.S. 285 (2024) .......... 1

*DeVillier v. Texas*,
63 F.4th 416 (5th Cir. 2023) .......... 4, 6, 21

*DLX, Inc. v. Kentucky*,
381 F.3d 511 (6th Cir. 2004) .......... 10

*Dobbs v. Jackson Women's Health Org.*,
597 U.S. 215 (2022) ....................................................................................10

*Donnelly v. United States*,
28 Fed. Cl. 62 (1993)......................................................................................10

*First Eng. Evangelical Church v. County of Los Angeles*.
482 U.S. 304 (1987) ............................................................................ 5, 10, 15

*GeorgiaCarry.Org, Inc. v. Georgia*,
687 F.3d 1244 (11th Cir. 2012) ......................................................................22

*Horne v. Dep't of Agric.*,
576 U.S. 350 (2015) ..........................................................................................6

*In re Chi., Milwaukee, St. Paul, & Pac. R.R. Co.*,
799 F.2d 317 (7th Cir. 1986) ..........................................................................18

*Jenkins v. United States*,
71 F.4th 1367 (Fed. Cir. 2023) ........................................................................19

*Kelo v. City of New London*,
545 U.S. 469 (2005) ..........................................................................................1

*Knick v. Township of Scott*,
588 U.S. 180 (2019) .................................................................. 5, 9, 15, 21, 22

*Langdon v. Swain*,
29 F. App'x 171 (4th Cir. 2002)......................................................................17

*Mann v. Haigh*,
120 F.3d 34 (4th Cir. 1997) ............................................................................10

*Manning v. Min. & Minerals Div.*,
144 P.3d 87 (N.M. 2006)................................................................................10

*McDonald v. Chicago*,
561 U.S. 742 (2010) ........................................................................................14

*Me. Cmty. Health Options v. United States*,
590 U.S. 296 (2020) ....................................................................................5–6

*Monell v. Dep't of Social Servs.*,
436 U.S. 658 (1978) ................................................................................ 17, 18

*Monroe v. Pape*,
365 U.S. 167 (1961) ........................................................................................16

*N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*,
597 U.S. 1 (2022) ...............................................................................................4

*New England Ests., LLC v. Town of Branford*,
294 Conn. 817 (2010).......................................................................................19

*O'Connor v. Eubanks*,
83 F.4th 1018 (6th Cir. 2023)...............................................................................6

*Omnia Com. Co. v. United States*,
261 U.S. 502 (1923) ........................................................................................19

*Owens v. Okure*,
488 U.S. 235 (1989) ........................................................................................13

*SDDS, Inc. v. State*,
650 N.W.2d 1 (S.D. 2002).................................................................................10

*Sheetz v. County of El Dorado*,
601 U.S. 267 (2024) ........................................................................... 7, 15, 18

*Speed v. Mills*,
919 F. Supp. 2d 122 (D.D.C. 2013) .................................................................10

*Timbs v. Indiana*,
586 U.S. 146 (2019) ................................................................................ 14, 15

*United States v. Causby*,
328 U.S. 256 (1946) ........................................................................................11

*United States v. Testan*,
424 U.S. 392 (1976) ....................................................................................11

*Whitehead Oil Co. v. City of Lincoln*,
515 N.W.2d 401(Neb. 1994) ........................................................................10

*Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*,
473 U.S. 172 (1985) ....................................................................................21

**Constitutional Provisions**

U.S. Const. amend. V.........................................................................................5

**Statutes, Regulations, and Codes**

28 U.S.C. § 1331 ...............................................................................................11

Ga. Code § 9-3-32 ..............................................................................................14

**Other Authorities**

Andrew S. Gold, *Regulatory Takings and Original Intent*, 49 Am. U. L. Rev. 181 (1999) ...........................................................................................................8

Douglas Laycock, *How Remedies Became a Field: A History*, 27 Rev. Litig. 161 (2008) ...........................................................................................................9

Cong. Globe, 39th Cong., 1st Session (1866) ....................................................10

Gordon S. Wood, *The Creation of the American Republic 1776–1787* (1969)...........7

James Madison, *Amendments to the Constitution* (June 8, 1789), Founders Online (Nat'l Archives), https://founders.archives.gov/documents/Madison/01-12-02-0126 ...............................................................................................................8

Magna Carta (1215)...............................................................................................6

Robert Brauneis, *The First Constitutional Tort: The Remedial Revolution in Nineteenth-Century State Just Compensation Law*,
52 Vand. L. Rev. 57 (1999) .........................................................................7, 9

William Baude, *Rethinking the Federal Eminent Domain Power*, 122 Yale L.J. 1738 (2013) ....................8

William Michael Treanor, *The Original Understanding of the Takings Clause and the Political Process*, 95 Colum. L. Rev. 782 (1995) ....................8–9

William Michael Treanor, *The Origins and Original Significance of the Just Compensation Clause of the Fifth Amendment*, 94 Yale L.J. 694 (1985) ....................7

William Sharp McKechnie, *Magna Carta: A Commentary on the Great Charter of King John* (2d ed. 1914) ....................6

## IDENTITY AND INTEREST OF AMICUS CURIAE[1]

Founded in 1991, the Institute for Justice (IJ) is a nonprofit, public-interest legal center dedicated to defending the essential foundations of a free society: private property rights, economic and educational liberty, and the free exchange of ideas. As part of that mission, IJ—at no cost to its clients—has litigated cases challenging various uses of eminent domain, such as *Kelo v. City of New London*, 545 U.S. 469 (2005), in which the Supreme Court held that the U.S. Constitution allows government to take private property and give it to others for purposes of "economic development." Just last January, IJ represented the petitioners in *DeVillier v. Texas*, 601 U.S. 285, 287–88 (2024), where the Supreme Court "granted certiorari to decide whether 'a person whose property is taken without compensation [may] seek redress under the self-executing Takings Clause even if the legislature has not affirmatively provided them with a cause of action.'" The Institute for Justice has a substantial interest in ensuring that property owners may meaningfully vindicate their constitutional rights in the courts.

[1] The Institute for Justice has agreed to file this brief, at the request of this Court. No party or party's counsel authored this brief in whole or in part, and no party or party's counsel contributed money intended to fund the preparation or submission of this brief. No person—other than Amicus—contributed money that was intended to fund the preparation or submission of this brief.

## STATEMENT OF THE ISSUES

1. Whether the Constitution of its own force provides a just-compensation remedy, cognizable in federal court, for claimants whose property is taken.

2. Whether Mr. Fulton's just-compensation claim falls within any applicable limitations period.

3. Whether just-compensation claims based directly on the Constitution operate differently against federal, state, and local entities.

4. Whether there are practical distinctions between a just-compensation claim based directly on the Constitution and one invoking Section 1983.

5. Whether overlap between just-compensation claims based directly on the Constitution and other causes of action (like Section 1983, or state causes of action) would preclude the plaintiff from presenting such a claim.

## SUMMARY OF THE ARGUMENT

Mr. Fulton has presented a claim, based directly on the U.S. Constitution, seeking just compensation for the permanent taking of his horses (seized by county officials pursuant to Mr. Fulton's arrest on charges that are now dismissed). This Court has requested that IJ provide guidance regarding various issues relating to the Constitution's self-executing just-compensation remedy for takings of property. Order, Doc. 32 (Nov. 11, 2024). Below, IJ addresses those issues and explains that

Mr. Fulton should be allowed to pursue his just-compensation claim before the district court.

First, IJ explains that the Constitution itself creates a judicially enforceable remedy for takings of property: just compensation. This flows from the Constitution's text and history, which the Supreme Court has already recognized mandate a just-compensation remedy.

Second, IJ explains that the most analogous limitations period for these claims, when pressed against a state (or local) entity, would be that for actions of replevin (here, four years)—but, in this case, the question is likely irrelevant, because Mr. Fulton almost certainly filed his complaint within the government's proffered two-year period.

Third, IJ explains that the incorporated just-compensation remedy—like any incorporated provision of the Bill of Rights—operates the same against federal, state, and local entities.

Fourth, IJ explains that there is no substantive pleading distinction between just-compensation claims based directly on the Constitution and those presented via Section 1983. The practical difference is that Section 1983 allows for consequential damages and attorneys' fees, in addition to just compensation.

Fifth, IJ explains that any overlap with other causes of action (like Section 1983 or actions under state law) does not preclude the availability of just-

compensation claims based directly on the Constitution—much like how a state cause of action for battery does not preclude a Fourth Amendment claim of excessive force.

## ARGUMENT

### I. The Constitution provides a federal cause of action for Just Compensation claims—independent of any statutory vehicle.

In determining the scope of a constitutional right, courts look to "constitutional text and history." *See N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 22 (2022). Below, IJ explains that both (A) constitutional text and (B) constitutional history support a judicially cognizable right to just compensation for property taken, based directly on the Constitution.

#### A. Constitutional text suggests an enforceable right to just compensation.

The constitutional right to just compensation is express, not implied. The Constitution mentions exactly two remedies: habeas corpus and just compensation. Thus, whatever the merits of other constitutional causes of action (such as *Bivens*), this case presents a different question. *See DeVillier v. Texas*, 63 F.4th 416, 439 (5th Cir. 2023) (Oldham, J., dissental) ("[The Constitution] suggests these two rights—even if not all others in the Constitution—have special protections against congressional abrogation or dereliction.").

Put another way—while the Constitution does not expressly say what the remedy for, say, a completed Fourth Amendment violation should be, it *does* specify the remedy for a taking: just compensation. Specifically, "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. This provision "does not prohibit the taking of private property [for public use], but instead places a condition on the exercise of that power." *First Eng. Evangelical Church v. County of Los Angeles*. 482 U.S. 304, 314 (1987). A case like this, therefore, asserts not that the government wrongfully took property, but that it has taken property *without paying for it*.

This is a substantive right to compensation itself, not a right merely to a procedure that might result in compensation. *Knick v. Township of Scott*, 588 U.S. 180, 189–90 (2019). That observation flows from the very text of the Just Compensation Clause: "The Clause provides: 'Nor shall private property be taken for public use, without just compensation.' It does not say: 'Nor shall private property be taken for public use, without an available procedure that will result in compensation.'" *Id*. at 189.

As the Supreme Court recently reaffirmed in the statutory context, the creation of a legal "right to receive money" will "typically display an intent to provide a damages remedy" to collect the obligated funds. *Me. Cmty. Health*

*Options v. United States*, 590 U.S. 296, 323 n.12 (2020). Anything else would render the underlying legal obligation "meaningless." *Ibid.*

The Constitution's promise of "just compensation" is not meaningless. In the following section, IJ explains that constitutional history vindicates the Constitution's text—by demonstrating that the right to just compensation is enforceable in federal court.

### B. History supports an enforceable right to just compensation, based directly on the Constitution.

History vindicates the Constitution's text, demonstrating that it does create a judicially enforceable right to just compensation. *See DeVillier*, 63 F.4th at 434–37 (Oldham, J., dissental); *cf. O'Connor v. Eubanks*, 83 F.4th 1018, 1029 (6th Cir. 2023) (Thapar, J., concurring) (noting Judge Oldham's "thoughtful opinion . . . collecting over a century of Supreme Court cases suggesting plaintiffs have a cause of action directly under the Takings Clause[.]").

The right to prompt compensation for a taking of property dates at least to Magna Carta. *See Horne v. Dep't of Agric.*, 576 U.S. 350, 358 (2015) (citing Magna Carta, cl. 28 (1215), in William Sharp McKechnie, *Magna Carta: A Commentary on the Great Charter of King John* 329 (2d ed. 1914)).

In ratifying the Just Compensation Clause, our Constitution's framers recognized the need for judicial enforcement of this ancient right against the government. Before the Revolution, Americans had often assumed that

representative state legislatures—as opposed to executives, or Parliament—could be trusted with governmental authority. *See* Robert Brauneis, *The First Constitutional Tort: The Remedial Revolution in Nineteenth-Century State Just Compensation Law*, 52 Vand. L. Rev. 57, 104 (1999). However, it is well documented that Americans in the 1780s grew increasingly distrustful of legislatures. *See* Gordon S. Wood, *The Creation of the American Republic* 1776–1787, at 403–09 (1969). Therefore, the Framers (most specifically, Madison) proposed the Just Compensation Clause as a restriction on the legislature itself. *See* William Michael Treanor, *The Origins and Original Significance of the Just Compensation Clause of the Fifth Amendment*, 94 Yale L.J. 694, 701 (1985); Brauneis, *supra*, at 107 n.220 ("[T]he proliferation of just compensation clauses may have been due to a [] general loss of faith in legislatures."). *See also Sheetz v. County of El Dorado*, 601 U.S. 267, 279 (2024) ("[T]here is no basis for affording property rights less protection in the hands of legislators than administrators.").

Madison's essays explained to the public that this right would be enforced by the federal judiciary. Critics of the Bill of Rights observed that similar provisions in state constitutions had not prevented governments from sometimes violating those rights. True enough, Madison acknowledged, but that was why the federal Constitution created federal courts:

> If [these rights] are incorporated into the constitution, independent tribunals of justice will consider themselves in a peculiar manner the

> guardians of those rights; they will be an impenetrable bulwark against every assumption of power in the legislative or executive; they will be naturally led to resist every encroachment upon rights expressly stipulated for in the constitution by the declaration of rights.

James Madison, *Amendments to the Constitution* (June 8, 1789), Founders Online (Nat'l Archives), https://founders.archives.gov/documents/Madison/01-12-02-0126. *See also* Andrew S. Gold, *Regulatory Takings and Original Intent*, 49 Am. U. L. Rev. 181, 192 (1999) ("Many commentators consider James Madison's views on the Takings Clause to be the primary evidence of its meaning[.]").

To be sure, there are very few early federal cases that apply the Just Compensation Clause. One reason is that the Clause did not apply to the states.[2] Another reason is that the federal government did not exercise its eminent-domain authority for the first century of its existence.[3] Yet another reason is that there was no general federal-question jurisdiction until 1875 (and no Tucker Act jurisdiction until 1887). Instead, early just-compensation claims against the federal government were resolved directly by Congress. This, however, did not mean compensation was discretionary—instead, Congress acted as a kind of adjudicative body. "While Congress was the forum for takings claims, it did not have discretion to deny takings claims mandated by the Takings Clause." William Michael Treanor, *The*

[2] *See Barron ex rel. Tiernan v. Mayor of Baltimore*, 32 U.S. (7 Pet.) 243 (1833).
[3] *See* William Baude, *Rethinking the Federal Eminent Domain Power*, 122 Yale L.J. 1738, 1762 (2013).

*Original Understanding of the Takings Clause and the Political Process*, 95 Colum. L. Rev. 782, 794–95 n.69 (1995); *see also ibid.* (acknowledging that the early preference for legislative rather than judicial resolution of takings claims may not reflect the original understanding of the Fifth Amendment).

Early state courts, however, began recognizing "implied rights of action for damages under the state equivalents of the Takings Clause." *Knick*, 588 U.S. at 200. At the beginning of the nineteenth century, claimants generally could vindicate a state takings claim only through common-law forms of action (usually trespass) against individual officers. *See id*. at 199. However, states soon abolished the forms of action. *Cf*. Douglas Laycock, *How Remedies Became a Field: A History*, 27 Rev. Litig. 161, 171 (2008) (noting that the abolition of the forms began in 1848). As a result, state courts by the late nineteenth century allowed inverse-condemnation claims to proceed against governmental entities without any suggestion "that their holding was novel." Brauneis, *supra*, at 110. *See, e.g.*, *Clayburgh v. City of Chicago*, 25 Ill. 535 (1861).

Amidst this backdrop, the Fourteenth Amendment incorporates the "right to compensation." *Chi., Burlington & Quincy R.R. Co. v. City of Chicago*, 166 U.S. 226, 238 (1897). John Bingham, who drafted the relevant section of that Amendment, explained the importance of adding substantive rights protections by citing the Supreme Court's decision in *Barron ex rel. Tiernan v. Mayor of*

*Baltimore*, 32 U.S. (7 Pet.) 243 (1833), which had held the Fifth Amendment's Takings Clause did not bind the States. Cong. Globe, 39th Cong., 1st Session 1089–90 (1866); *see also id.* at 1090 ("By the decisions read, the people are without remedy. . . . [T]he State Legislatures may by the direct violations of their duty and oaths avoid the requirements of the Constitution."). Thus, with the adoption of the Fourteenth Amendment, *Barron* is no longer good law. *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 237 (2022) (discussing *Barron*).

Post-incorporation, the Supreme Court has repeatedly explained that the right to just compensation is "self-executing," to where "[s]tatutory recognition [is] not necessary." *First English*, 482 U.S. at 315. Accordingly, a variety of state[4] and federal[5] courts have held that the incorporated Just Compensation Clause itself provides claimants a cause of action.

This same understanding is manifest in the Tucker Act. Just-compensation claims against the federal government proceed under the Tucker Act, but the Tucker Act is "only a jurisdictional statute; it does not create any substantive right

---

[4] *See, e.g.*, *Whitehead Oil Co. v. City of Lincoln*, 515 N.W.2d 401, 405 (Neb. 1994); *Manning v. Min. & Minerals Div.*, 144 P.3d 87, 91 (N.M. 2006); *SDDS, Inc. v. State*, 650 N.W.2d 1, 9 (S.D. 2002); *Boise Cascade Corp. v. State ex rel. Or. State Bd. of Forestry*, 991 P.2d 563, 567 (Or. Ct. App. 1999).

[5] *See, e.g.*, *DLX, Inc. v. Kentucky*, 381 F.3d 511, 527 (6th Cir. 2004); *Mann v. Haigh*, 120 F.3d 34, 37 (4th Cir. 1997); *Donnelly v. United States*, 28 Fed. Cl. 62, 65 n.2 (1993); *Baker v. City of McKinney*, 601 F. Supp. 3d 124, 145 (E.D. Tex. 2022), *rev'd on other grounds*, 84 F.4th 378 (5th Cir. 2023); *Speed v. Mills*, 919 F. Supp. 2d 122, 128 (D.D.C. 2013).

enforceable against the United States for money damages." *United States v. Testan*, 424 U.S. 392, 398 (1976). Instead, the "right of action" that federal takings claimants invoke under the Tucker Act *is* the self-executing Fifth Amendment recognized by the Supreme Court. *United States v. Causby*, 328 U.S. 256, 267 (1946) ("If there is a taking, the claim is 'founded upon the Constitution' and within the jurisdiction of the Court of Claims to hear and determine.").

In this case, Mr. Fulton has everything a Tucker Act plaintiff has: (1) the absence of sovereign immunity,[6] (2) a grant of federal-court jurisdiction (under 28 U.S.C. § 1331), and (3) exactly as much of a cause of action as any just-compensation plaintiff who invokes the Tucker Act—that is, the incorporated Just Compensation Clause, as understood for more than a century. There is no reason why this Court should not have the power to grant relief, pursuant to that cause of action.

## II. The most sensible limitations period for these claims would be that for actions of replevin—but the question likely does not matter in this case.

This Court has asked for guidance regarding the likely limitations period applicable to a just-compensation claim based directly on the Constitution. Order,

[6] To be clear, the Institute for Justice does not concede that a state's sovereign immunity could ever trump the superior constitutional obligation to pay just compensation. Regardless, the question of sovereign immunity does not apply to Fulton County.

Doc. 32 (Nov. 11, 2024). Below, IJ explains that the most sensible period would be that for actions in replevin (which, in Georgia, carry a limitations period of four years). However, as a preliminary matter, IJ first explains that the question is likely irrelevant in this case—because, even under the government's asserted period (two years), Mr. Fulton almost certainly filed a timely complaint.

Mr. Fulton has brought a claim seeking just compensation for the permanent taking of his horses, which were first seized at the time of his arrest. The government asserts that Mr. Fulton's cause of action accrued either at the time of the initial seizure (April 22, 2017) or when his criminal charges were dismissed (April 5, 2018). Appellee Br., Doc. 17, at 22. There is a major problem with that assertion: How could Mr. Fulton possibly have known, on either of those dates, that the government was never going to return his horses?

Any limitations period for Mr. Fulton's claim must have started later. A limitations period begins to run "from the date the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." *Brown v. Ga. Bd. of Pardons & Paroles*, 335 F.3d 1259, 1261 (11th Cir. 2003) (cleaned up). At the time of his arrest or the dismissal of his charges, perhaps Mr. Fulton would have had a claim accrue for the temporary taking of his horses—that is, for their rental value during the period that he was charged—but there is no reason, under this record, why he should have

known then that his horses would never be returned. Indeed, it is surely reasonable for anyone in Mr. Fulton's position to assume that, upon the charges being dropped, he would receive his horses in short order.

Mr. Fulton's complaint does not indicate when he realized, or should have realized, that the government was not going to return his horses notwithstanding the dismissal of his criminal charges. However, he does allege that he engaged in "repeated post-dismissal efforts and requests to return the horses or their equivalent value, [yet] Fulton County Animal Services has refused to return the horses or their equivalent value." Complaint (Dist. Ct. Doc. 1) at 4 (¶ 17). Under such circumstances, it is reasonable to infer that it would take at least a few weeks for Mr. Fulton to gather that his "repeated post-dismissal efforts" were in vain—and, even if his claim accrued a mere one month after the dismissal of charges against him, that would place his complaint (filed May 5, 2020) squarely within a two-year limitations period.

Even so, the likely limitations period for Mr. Fulton's claim is four years—the period for replevin actions in Georgia. Federal courts, when faced with the need to identify a limitations period for a federal constitutional remedy that carries no explicit limitation, look to analogous private common law causes of action. *See Owens v. Okure*, 488 U.S. 235, 239–50 (1989) (the most analogous limitations period for Section 1983 claims is the period for the state's residual personal injury

tort). The most analogous private cause of action for a just-compensation claim would be replevin—*i.e.*, the remedy seeking recovery of taken property or damages reflecting conversion or destruction. Ga. Code § 9-3-32. That is the action that would be available to Mr. Fulton, if a private individual took his horses. In fact—likely reflecting similar concerns that government should not be afforded more favorable treatment than private wrongdoers—Georgia's limitations period for state inverse-condemnation claims is also four years.[7] Accordingly, a four-year limitations period should apply here.

## III. Just-compensation claims based directly on the Constitution operate the same against federal, state, and local entities.

This Court has asked whether the constitutionally mandated just-compensation remedy might operate against the federal government, but not states (or not against local government). Order, Doc. 32 (Nov. 11, 2024). The answer is no: The Constitution demands the same incorporated just-compensation remedy against all levels of government.

"[W]hen a Bill of Rights protection is incorporated, the protection applies 'identically to both the Federal Government and the States.'" *Timbs v. Indiana*, 586 U.S. 146, 154 (2019) (quoting *McDonald v. Chicago*, 561 U.S. 742, 766 n.14

---

[7] *See Benton v. Savannah Airport Comm'n*, 525 S.E.2d 383, 387 (Ga. Ct. App. 1999).

(2010)).[8] The Constitution's right to just compensation has been incorporated against the states for more than a century. *See Chi., Burlington & Quincy R.R. Co.*, 166 U.S. 226 (1897). Accordingly, that right applies in "identical[]" fashion to both states and the federal government. *Timbs*, 586 U.S. at 154. *Accord Knick*, 588 U.S. at 191 ("Although *Jacobs* concerned a taking by the Federal Government, the same reasoning applies to takings by the States.").

Likewise, it is well-settled that the incorporated Just Compensation Clause does not distinguish between state government and its subdivisions. In accordance with the Fourteenth Amendment generally, the Clause "constrains the power of each 'State' as an undivided whole." *Sheetz*, 601 U.S. at 276. Indeed, in *First English*—when the Supreme Court explicitly stated that just-compensation claims are "grounded in the Constitution itself" and that "[s]tatutory recognition [is] not necessary"—the governmental defendant was neither the federal government nor the state of California, but Los Angeles County. *First English*, 482 U.S. at 315.

The district court relied on *Barron v. Baltimore* for the notion that "while a takings claim can be brought directly under the Fifth Amendment, such a claim may only be brought against *federal* officers." Order (Dist. Ct. Doc. 39), at 10 (emphasis in original). That was error: As explained above, *Barron* reflects a pre-

[8] The Institute for Justice represented Petitioner Tyson Timbs.

Fourteenth Amendment understanding of the Constitution and is no longer good law. *Supra* pt. I(B).

## IV. The distinction between a just-compensation claim based on the Constitution itself, and one invoking Section 1983, is that Section 1983 allows for consequential damages and attorneys' fees.

This Court has previously asked questions regarding what, in practical terms, is the difference between a just-compensation claim based directly on the Constitution and one invoking Section 1983. Below, IJ explains that (A) *Monell*'s concerns regarding vicarious liability do not apply in either instance, but (B) Section 1983, unlike claims directly based on the Just Compensation Clause, allows recovery of consequential damages and attorneys' fees.

### A. *Monell*'s concerns regarding vicarious liability do not apply to just-compensation claims (whether brought pursuant to Section 1983 or otherwise).

There is no substantive pleading distinction between claims based directly on the Just Compensation Clause and claims seeking just compensation via Section 1983: *Monell*'s concerns regarding vicarious liability do not apply in either instance.

For a brief period before *Monell*, the Supreme Court had held that "persons" subject to suit under Section 1983 did not include municipal entities. *Monroe v. Pape*, 365 U.S. 167 (1961). *Monell* overruled *Monroe*, finding "that Congress *did* intend municipalities . . . to be included among those persons to whom § 1983

applies." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978) (emphasis in original). At the same time, the Court clarified that a municipality cannot be held liable under Section 1983 "*solely* because it employs a [constitutional] tortfeasor—or, in other words, . . . on a *respondeat superior* theory." *Id*. at 691 (emphasis in original). Thus, to avoid holding municipalities vicariously liable for the misdeeds of an employee, "the action that is alleged to be unconstitutional [must] implement[]or execute[] a policy statement, ordinance, regulation, [] decision . . . [or] custom" fairly attributable to the municipality. *Id*. at 690–91.

There is no way, however, that a municipality could be held vicariously liable for a taking. A just-compensation claim necessarily sounds against governmental entities. *Monell*, 436 U.S. at 687 ("[I]t beggars reason to suppose that Congress would have exempted municipalities from suit, insisting instead that compensation for a taking come from an officer in his individual capacity rather than from the government unit that had the benefit of the property taken."); *see also Langdon v. Swain*, 29 F. App'x 171, 172 (4th Cir. 2002) (per curiam) ("[T]akings actions sound against governmental entities rather than individual state employees in their individual capacities."). *Monell*'s concerns regarding vicarious liability cannot apply here.

Indeed, because of the very nature of a just-compensation claim, *Monell* is necessarily satisfied. In a typical *Monell* case, the claimant is seeking monetary

damages representing a constitutional violation that occurred in the past (such as, say, excessive force used against him by law enforcement officers). In the just-compensation context, however, the violation is itself an ongoing failure to provide money (just compensation). *Supra* pt. I. The government could rectify that failure at any time—by paying the claimant.

That does not mean, however, that government is strictly liable anytime a governmental employee interferes with someone's property. The agents who performed the taking must have been "acting within the general scope of their duties." *Darby Dev. Co. v. United States*, 112 F.4th 1017, 1025 (Fed. Cir. 2024) (cleaned up). And "[a]ccidental, unintended injuries inflicted by governmental actors are treated as torts, not takings." *In re Chi., Milwaukee, St. Paul, & Pac. R.R. Co.*, 799 F.2d 317, 326 (7th Cir. 1986). But where the act is deliberate and undertaken for official purposes, it is enough that the agent's "actions were not 'wholly unauthorized'"—even if they "may have been mistaken, imprudent, or wrongful." *Darby Dev. Co.*, 112 F.4th at 1025. This makes sense; the "Takings Clause . . . speaks in the passive voice," requiring that government pay just compensation whenever property has been "taken" for its benefit, regardless of who precisely committed the taking. *Sheetz*, 601 U.S. at 276; *Monell*, 436 U.S. at 687 ("[C]ompensation for a taking . . . [is due] from the government unit that had the benefit of the property taken.").

Fulton County officers, acting within their official capacity, deliberately took Mr. Fulton's horses. Having failed to return those horses, Fulton County must pay Mr. Fulton just compensation. *See Jenkins v. United States*, 71 F.4th 1367, 1373 (Fed. Cir. 2023).

### B. Section 1983 allows for consequential damages and attorneys' fees—in addition to just compensation.

There is still reason for a claimant to invoke Section 1983 instead of (or in addition to) the Just Compensation Clause itself. Just compensation does not include consequential damages. *See Omnia Com. Co. v. United States*, 261 U.S. 502 (1923) (government not liable for a contractor's losses resulting from the taking of property from a third party). However, a just-compensation claimant who invokes Section 1983 can recover consequential damages, as well as attorneys' fees, in addition to just compensation.

When government fails to pay just compensation, that failure is "not only unconstitutional but unlawful and tortious as well." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 717 (1999). Because a Section 1983 suit to enforce the Just Compensation Clause sounds in tort, *id.* at 709, ordinary tort remedies like consequential damages are available. *See, e.g.*, *New England Ests., LLC v. Town of Branford*, 294 Conn. 817, 841 (2010) (awarding consequential tort damages as compensation for a taking in violation of the Public Use Clause, where

plaintiff had already been awarded just compensation). And, of course, it is uncontroversial that Section 1983 allows for attorneys' fees.

By abandoning his Section 1983 claim, Mr. Fulton has abandoned consequential damages and attorneys' fees. Suppose, hypothetically, that Mr. Fulton experienced business losses that he would not otherwise have experienced, had Fulton County promptly paid for his horses (say, without the money, he is unable to purchase new horses and he cannot complete a contract). Those losses would not be part of the "just compensation" he is owed for the taking itself, but they would be consequential damages flowing from the County's ongoing failure to pay for the taking. Mr. Fulton can no longer recover such damages, nor can he recover attorneys' fees—but he can still pursue his claim, founded upon the Constitution, for just compensation itself (*i.e.*, for the value of the taken horses).

### V. Any overlap with Section 1983 or a state cause of action does not preclude these claims.

This Court has asked "whether an existing inverse condemnation action under state law or the cause of action under Section 1983 is a constitutionally sufficient remedy to fully vindicate the right to just compensation" against local governments. Order, Doc. 32 (Nov. 11, 2024), at 3. IJ understands the Court to be asking whether the availability of alternative causes of action precludes a claim directly invoking the Just Compensation Clause—even if the Clause would otherwise provide a cause of action. The answer is no: Claimants can invoke solely

the incorporated Just Compensation Clause, even if alternative causes of action are also available to them.

The Just Compensation Clause is a right to compensation, not a right to a procedure that might result in compensation. In the latter half of the twentieth century, courts (mistakenly) began viewing just compensation as, essentially, a procedural right: Federal courts would not hear these claims unless there was no state procedural avenue available for the claimant. *See Knick*, 588 U.S. at 188 (discussing *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985)). Only five years ago, however, the Supreme Court overruled those cases—and clarified that the Just Compensation Clause mandates a right to compensation itself, not a right to "an available procedure that will result in compensation." *Knick*, 588 U.S. at 189. Therefore, "no matter what sort of procedures the government puts in place to remedy a taking, a property owner has a Fifth Amendment entitlement to compensation as soon as the government takes his property without paying for it." *Id*. at 190.

Thus, federal courts may hear just-compensation claims regardless of what other causes of action might be available to the plaintiff. "Post-incorporation, federal courts adjudicated these claims under the Constitution directly, and plaintiffs did not need to (nor did they) invoke § 1983." *DeVillier*, 63 F.4th at 435–36 (Oldham, J., dissental) (listing cases). Neither is there anything unusual about

the co-existence of federal causes of action with state causes of action: "The availability of any particular compensation remedy, such as an inverse condemnation claim under state law, cannot infringe or restrict the property owner's federal constitutional claim—just as the existence of a state action for battery does not bar a Fourth Amendment claim of excessive force." *Knick*, 588 U.S. at 191.

The district court in this case did not heed *Knick*, but instead relied on a non-takings case for the proposition that "[w]here a statute provides an adequate remedy, [a court] will not imply a judicially created cause of action directly under the Constitution." Order (Dist. Ct. Doc. 39), at 10 (quoting *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1253 n.15 (11th Cir. 2012)). However, as explained above, the Fifth Amendment's just-compensation remedy is expressly in the text of the Just Compensation Clause, making these claims distinct from "implied" causes of action like *Bivens*. *Supra* pt. I(A).

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's dismissal of Mr. Fulton's complaint and remand for further proceedings.

Dated: July 20, 2026

Respectfully submitted,

By: /s/ Suranjan M. Sen
Suranjan M. Sen (*Lead Counsel*)
Robert McNamara
Andrew Ward
INSTITUTE FOR JUSTICE
901 N. Glebe Rd., Suite 900
Arlington, VA 22203
(703) 682-9320
ssen@ij.org
rmcnamara@ij.org
andrew.ward@ij.org

Christen Mason Hebert
INSTITUTE FOR JUSTICE
816 Congress Ave., Suite 970
Austin, TX 78701
(512) 480-5936
chebert@ij.org

*Counsel for Amicus Curiae*

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the word limit prescribed in this Court's November 12, 2024, Order (Doc. No. 32) and the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and Fed. R. App. P. 29(a)(5) because the brief contains 5,071 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 11th Cir. R. 32-4.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated: July 20, 2026

/s/ Suranjan M. Sen
*Counsel for Amicus Curiae*

## CERTIFICATE OF SERVICE

I certify that on July 20, 2026, I caused the foregoing to be filed electronically with the Clerk of Court using the CM/ECF system, which automatically sends notice of such filing to all parties and counsel of record.

/s/ Suranjan M. Sen
*Counsel for Amicus Curiae*