**UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

---

No. 22-12041

---

BRANDON FULTON,
*Plaintiff-Appellant*,

v.

FULTON COUNTY BOARD OF COMMISSIONERS,
*Defendant-Appellee.*

---

Appeal from the United States District Court for the Northern District of Georgia, D.C. Docket No. 1:20-cv-01936-SCJ

---

# EN BANC BRIEF OF PACIFIC LEGAL FOUNDATION AS AMICUS CURIAE IN SUPPORT OF PLAINTIFF-APPELLANT AND REVERSAL

---

BRIDGET F. CONLAN
CHRISTINA M. MARTIN
DEBORAH J. LA FETRA
STEPHEN S. DAVIS
Pacific Legal Foundation
3100 Clarendon Blvd., Suite 1000
Arlington, Virginia 22201
Tel: (202) 888-6881
Fax: (916) 419-7747
BConlan@pacificlegal.org

*Counsel for Amicus Curiae*
*Pacific Legal Foundation*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, the undersigned counsel for Amicus Curiae certifies that Amicus Curiae Pacific Legal Foundation does not have a parent corporation nor does it issue stock. Accordingly, there are no publicly held corporations that own ten percent or more of Pacific Legal Foundation's stock.

Under Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 through 26.1-3 and 28-1(b), Amicus Curiae adopts the Certificate of Interested Persons submitted in Brief of Appellant (filed July 20, 2026). Amicus Curiae further adds the following persons that may have an interest in the outcome of this case:

1. Bridget F. Conlan – Counsel for Amicus Curiae Pacific Legal Foundation
2. Christina M. Martin – Counsel for Amicus Curiae Pacific Legal Foundation
3. Deborah J. La Fetra – Counsel for Amicus Curiae Pacific Legal Foundation
4. Stephen S. Davis – Counsel for Amicus Curiae Pacific Legal Foundation

5. Pacific Legal Foundation – proposed amicus curiae

*s/ Bridget F. Conlan*
BRIDGET F. CONLAN
*Counsel for Amicus Curiae*
*Pacific Legal Foundation*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... iv
STATEMENT OF THE ISSUE ..... 1
INTEREST OF AMICUS CURIAE ..... 1
INTRODUCTION AND SUMMARY OF ARGUMENT ..... 3
ARGUMENT ..... 5
I. THE FIFTH AMENDMENT'S UNEQUIVOCAL RIGHT TO JUST COMPENSATION REQUIRES A JUDICIAL REMEDY ..... 5
  A. The Takings Clause promises a Just Compensation remedy ..... 5
  B. Just compensation cannot be left to legislative grace ..... 10
II. A SELF-EXECUTING TAKINGS CLAUSE DOES NOT RISK OPENING THE FLOODGATES TO A DELUGE OF SELF-EXECUTING RIGHTS ..... 15
CONCLUSION ..... 17
CERTIFICATE OF SERVICE ..... 19
CERTICIATE OF COMPLIANCE ..... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alden v. Maine*,
527 U.S. 706 (1999) .......... 12

*Ariyan, Inc. v. Sewerage & Water Bd. of New Orleans*,
29 F.4th 226 (5th Cir. 2022) .......... 11

*Arkansas Game & Fish Comm'n v. United States*,
568 U.S. 23 (2012) .......... 17

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) .......... 16

*Blanchette v. Conn. Gen. Ins. Corps.*,
419 U.S. 102 (1974) .......... 12

*Buending v. Town of Redington Beach*,
Nos. 24-12896 & 24-12895 (11th Cir. 2025) .......... 2

*Cedar Point Nursery v. Hassid*,
594 U.S. 139 (2021) .......... 1, 3, 17

*Chicago, B. & Q. R. Co. v. City of Chicago*,
166 U.S. 226 (1897) .......... 14

*Chmielewski v. City of St. Pete Beach*,
890 F.3d 942 (11th Cir. 2018) .......... 2

*City of Monterey v. Del Monte Dunes at Monterey*,
526 U.S. 687 (1999) .......... 15

*DeVillier v. Texas*,
601 U.S. 285 (2024) .......... 2

*Diversified Holdings, LLP v. City of Suwanee*,
302 Ga. 597 (2017) .......... 7

*In re Financial Oversight and Mgmt. Bd.*,
41 F.4th 29 (1st Cir. 2022) .......... 16

*First English Evangelical Lutheran Church v. Los Angeles Cnty.*, 482 U.S. 304 (1987) .......... 6–7, 9, 15

*Fletcher v. Peck*,
10 U.S. 87 (1810) .......... 8

*State of Louisiana ex rel. Folsom v. City of New Orleans*,
109 U.S. 285 (1883) .......... 11

*Fulton v. Fulton Cnty. Bd. of Commissioners*,
148 F.4th 1224 (11th Cir. 2025), *reh'g en banc granted, opinion vacated*, 174 F.4th 1350 (11th Cir. 2026) .......... 4, 16

*Glow In One Mini Golf, LLC v. Walz*,
37 F.4th 1365 (8th Cir. 2022) .......... 9

*Health & Hosp. Corp. of Marion Cnty. v. Talevski*,
599 U.S. 166 (2023) .......... 12

*Hill v. Jackson*,
336 Ga. App. 679 (2016) .......... 10

*Home Tel. & Tel. Co. v. City of Los Angeles*,
227 U.S. 278 (1913) .......... 13

*Horne v. Department of Agriculture*,
576 U.S. 350 (2015) .......... 8

*Howell v. Miller*,
91 F. 129 (6th Cir. 1898) .......... 9

*Jacobs v. United States*,
290 U.S. 13 (1933) .......... 6–7

*Jules v. Andre Balazs Properties*,
146 S. Ct. 1209 (May 14, 2026) .......... 17

*Knick v. Township of Scott*,
588 U.S. 180 (2019) .......... 1, 4, 5–6

*Langdon v. Swain*,
29 F. App'x 171 (4th Cir. 2002) .......... 9

*Manning v. N.M. Energy, Minerals, & Natural Res. Dep't*,
144 P.3d 87 (N.M. 2006) .......... 17

*Marbury v. Madison*,
5 U.S. 137 (1803) .......... 4, 5

*McDonald v. City of Chicago*,
561 U.S. 742 (2010) .......... 14

*Merritts v. Richards*,
62 F.4th 764 (3d Cir. 2023) .................... 9

*Mitchum v. Foster*,
407 U.S. 225 (1972) .................... 13

*Monongahela Navigation Co. v. United States*,
148 U.S. 312 (1893) .................... 5, 8

*O'Connor v. Eubanks*,
83 F.4th 1018 (6th Cir. 2023) .................... 9

*Pena v. City of Los Angeles*,
No. 25-1163 (U.S. Apr. 6, 2026) .................... 2

*Seaboard Air Line Railway Co. v. United States*,
261 U.S. 299 (1923) .................... 5, 14

*Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*,
535 U.S. 302 (2002) .................... 3

*The Saltpetre Case*, 12 Co. Rep. 13,
77 Eng. Rep. 1294 (K.B. 1606) .................... 8

*Tyler v. Hennepin Cnty.*,
598 U.S. 631 (2023) .................... 1

*United States v. Great Falls Mfg. Co.*,
112 U.S. 645 (1884) .................... 7

*United States v. Jones*,
109 U.S. 513 (1883) .................... 5

*Ex parte Virginia*,
100 U.S. 339 (1879) .................... 12

*Wilkins v. United States*,
598 U.S. 152 (2023) .................... 1

**Constitutional Provisions**

U.S. Const. amend. V .................... 3

U.S. Const. amend. XIV, § 1 .................... 3, 12

Ga. Const. art. I, § 2, ¶ IX .................... 10

**Statutes**

28 U.S.C. § 1491(a)(1) .......... 11

42 U.S.C. § 1983 .......... 11, 16

**Rule of Court**

Fed. R. App. P. 29(a)(4)(E) .......... 1

**Other Authorities**

Baude, William, *Is Qualified Immunity Unlawful?*, 106 Cal. L. Rev. 45 (2018) .......... 10

1 Blackstone, William, *Commentaries on the Laws of England* (1765) .......... 14–15

3 Blackstone, William, *Commentaries on the Laws of England* (1768) .......... 4

Cooley, Thomas, *General Principles of Constitutional Law in the United States of America* (1880) .......... 7

2 Kent, James, *Commentaries on American Law* (1827) .......... 8

2 Story, Joseph, *Commentaries on the Constitution* (1833) .......... 14

## STATEMENT OF THE ISSUE

Whether the district court's judgment in this case should be affirmed.

## INTEREST OF AMICUS CURIAE[1]

Pacific Legal Foundation (PLF) is a nonprofit corporation organized for the purpose of litigating matters affecting the public interest in private property rights, individual liberty, and economic freedom. PLF has argued and won many cases before the U.S. Supreme Court and other courts in defense of property rights. *See, e.g.*, *Tyler v. Hennepin Cnty.*, 598 U.S. 631 (2023) ("private property" in the Fifth Amendment is not entirely defined by state law); *Wilkins v. United States*, 598 U.S. 152 (2023) (Quiet Title Act's statute of limitations is not jurisdictional); *Cedar Point Nursery v. Hassid*, 594 U.S. 139 (2021) (state granting union representatives access to private property is a taking); *Knick v. Township of Scott*, 588 U.S. 180 (2019) (reopening federal courts to takings claimants). PLF has extensive experience with the issues involved in this

[1] Pursuant to Fed. R. App. P. 29(a)(4)(E), amicus curiae affirms that no party's counsel authored this brief in whole or in part, and no person—other than amicus curiae—contributed money that was intended to fund this brief.

case and also routinely participates as amicus curiae in important property rights cases, including in this Court. *See, e.g.*, *Buending v. Town of Redington Beach*, Nos. 24-12896 & 24-12895 (11th Cir. 2025); *Chmielewski v. City of St. Pete Beach*, 890 F.3d 942 (11th Cir. 2018); *DeVillier v. Texas*, 601 U.S. 285 (2024) (cert stage and merits stage amicus briefs); *Pena v. City of Los Angeles*, No. 25-1163 (U.S. Apr. 6, 2026) (in support of petition for writ of certiorari).

## INTRODUCTION AND SUMMARY OF ARGUMENT

The Fifth Amendment to the Constitution, applicable to the states via the Fourteenth Amendment, provides, "nor shall private property be taken for public use, without just compensation." Accordingly, when the government takes property, the Constitution "imposes a clear and categorical obligation to provide the landowner with just compensation." *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 147 (2021). The Takings Clause imposes "a simple, *per se* rule" when the government physically takes property: "The government must pay for what it takes." *Id*. (citing *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 535 U.S. 302, 322 (2002)).

Here the government violated the Takings Clause when it took Mr. Fulton's horses for public use without paying him just compensation. But the government refuses to honor its constitutional obligation to justly compensate Mr. Fulton and argues that the Takings Clause itself offers no remedy, despite its plain language. The Court should reject that argument.

The panel correctly held that, unlike other constitutional provisions, the self-executing Takings Clause promises a remedy—just

compensation—and thus *guarantees* a right to sue for just compensation. *Fulton v. Fulton Cnty. Bd. of Commissioners*, 148 F.4th 1224, 1238 (11th Cir. 2025), *reh'g en banc granted, opinion vacated*, 174 F.4th 1350 (11th Cir. 2026) (citing *Knick*, 588 U.S. at 194) (citation omitted). The uniqueness of the Takings Clause means that this decision will not open the floodgates to other types of claims as Fulton County fears.

Mr. Fulton's fundamental right to just compensation under the Fifth Amendment demands a remedy and the Constitution "doesn't taunt us by naming these remedies but then holding them out of reach, depending on the whims of the legislature." *Id*. at 1265; *see also Marbury v. Madison*, 5 U.S. 137, 147 (1803) ("It is a settled and invariable principle, that every right, when withheld, must have a remedy, and every injury its proper redress."). After all, "[w]here there is a right, there must be a remedy." 3 William Blackstone, *Commentaries on the Laws of England* 23 (1768).

This Court should hold, as the panel decision correctly held, that the Fifth Amendment Takings Clause's self-executing promise of compensation provides Mr. Fulton a direct cause of action to obtain that payment.

# ARGUMENT

## I. THE FIFTH AMENDMENT'S UNEQUIVOCAL RIGHT TO JUST COMPENSATION REQUIRES A JUDICIAL REMEDY

The United States Supreme Court has long recognized that the existence of a right means there must be a remedy: "The government of the United States has been emphatically termed a government of laws, and not of men. It will certainly cease to deserve this high appellation, if the laws furnish no remedy for the violation of a vested legal right." *Marbury v. Madison*, 5 U.S. 137, 163 (1803). And the Fifth Amendment's right is unequivocal: "just compensation" is *required* when the government takes private property. *Seaboard Air Line Railway Co. v. United States*, 261 U.S. 299, 305 (1923) ("A *necessary* condition of the taking is the ascertainment and payment of just compensation.") (emphasis added) (citing *Monongahela Navigation Co. v. United States*, 148 U.S. 312, 337 (1893) ("The constitution has declared that just compensation *shall* be paid. . . .") (emphasis added); *United States v. Jones*, 109 U.S. 513, 518 (1883)).

### A. The Takings Clause promises a Just Compensation remedy

The Supreme Court has consistently held that the right to "just compensation" is "self-executing." *Knick*, 588 U.S. at 194. The taking

automatically triggers the right to the relief—just compensation—without the need to point to a statute, because of the "promise implied [by] the duty to pay imposed by the Amendment." *First English Evangelical Lutheran Church v. Los Angeles Cnty.*, 482 U.S. 304, 315 (1987) (quoting *Jacobs v. United States*, 290 U.S. 13, 16 (1933)). Indeed, *First English* expressly rejected the argument that the Takings Clause "itself is only a limitation on the power of the Government to act, not a remedial provision." *First English*, 482 U.S. at 316 n.9. *First English* held that the Supreme Court's takings "cases make clear that it is the Constitution that dictates the remedy for interference with property rights amounting to a taking." *Id.* Thus, even though the government sought to evade paying just compensation by invalidating the regulation that effected a taking, the Court held that this merely limited the damages owed by converting a permanent taking to a temporary one. *Id.* at 319. "The government's post-taking actions . . . cannot nullify the property owner's existing Fifth Amendment right[,]" and where it has taken property, "no subsequent action by the government can relieve it of the duty to provide compensation." *Knick*, 588 U.S. at 192 (quoting *First English*, 482 U.S. at 321). The Constitution "of its own force" . . .

"furnish[es] a basis for a court to award money damages against the government," notwithstanding sovereign immunity. *Id.* at 316 n.9 (quotation omitted).

The Takings Clause itself promises that remedy. The just compensation "remedy . . . . rested upon the Fifth Amendment. Statutory recognition was not necessary. A promise to pay was not necessary. Such a promise was implied because of the duty to pay imposed by the amendment." *Jacobs*, 290 U.S. at 16; *United States v. Great Falls Mfg. Co.*, 112 U.S. 645, 656 (1884) ("The law will imply a promise to make the required compensation, where property, to which the government asserts no title, is taken[.]"); Thomas Cooley, *General Principles of Constitutional Law in the United States of America* 342 (1880) (when payment doesn't precede appropriation, "the property owner is supposed to be fully protected, in the faith and the means of the State or municipality, so that eventual payment is certain"); *see also Diversified Holdings, LLP v. City of Suwanee*, 302 Ga. 597, 609 (2017) ("the text of the Takings Clause . . . mandates a *remedy* where the government takes private property for public use") (emphasis added). Prior to incorporation of the Takings Clause to the states, courts invoked other constitutional provisions to

ensure that the government remitted just compensation. *See, e.g.*, *Fletcher v. Peck*, 10 U.S. 87, 136 (1810) (uncompensated taking of title by state of Georgia treated as a violation of the federal Constitution's Contracts Clause).

The obligation to pay when taking property predates the Constitution. "The principle reflected in the [Takings] Clause goes back at least 800 years to Magna Carta. . . ." *Horne v. Department of Agriculture*, 576 U.S. 350, 358 (2015) ("Clause 28 of that charter forbade any 'constable or other bailiff' from taking 'corn or other provisions from any one without immediately tendering money therefor. . . .'"); *see also The Saltpetre Case*, 12 Co. Rep. 13, 77 Eng. Rep. 1294 (K.B. 1606) (even where national defense was at issue, officials "are bound to leave the Inheritance of the Subject in so good Plight as they found it"). English colonists brought the demand that government tender money for takings to the New World. *See, e.g.*, *Horne*, 576 U.S. at 358; *Monongahela Navigation Co.*, 148 U.S. at 327–28; 2 James Kent, *Commentaries on American Law* 144 (1827) ("compensation" is a "necessary attendant on the due and constitutional exercise of the power of the lawgiver to deprive an individual of his property without his consent.").

And while the norm under the Fifth Amendment in this country prior to the Fourteenth Amendment was to either obtain injunctive relief (inadequate in cases like this and subsequently rejected in *First English*, 482 U.S. at 316) or to sue the official personally who violated the Takings Clause, the modern obstacles to such suits render those past, once-readily available remedies out of reach far more often.[2] In this case, Georgia's Constitution bars traditional remedies against employees of the government unless they're brought via Georgia's Tort Claims Act. Ga. Const. art. I, § 2, ¶ IX. And qualified immunity "protects individual public agents from personal liability for discretionary actions taken within the

[2] *See, e.g.*, *Langdon v. Swain*, 29 F. App'x 171, 172 (4th Cir. 2002) (dismissing a takings claim against state officials in their individual capacities after concluding that "takings actions sound against governmental entities rather than individual state employees in their individual capacities"); *O'Connor v. Eubanks*, 83 F.4th 1018, 1022 n.2 (6th Cir. 2023) (dismissing takings claim against state officials in their personal capacity because that court has adopted a "clear rule" that "bars individual liability for takings claims under 42 U.S.C. § 1983."). Other circuit courts leave the door cracked, but remain skeptical that individual capacity takings claims are viable. *See, e.g.*, *Merritts v. Richards*, 62 F.4th 764, 769, 776 n.7 (3d Cir. 2023); *Glow In One Mini Golf, LLC v. Walz*, 37 F.4th 1365, 1373–75 (8th Cir. 2022). *Cf. Howell v. Miller*, 91 F. 129, 136 (6th Cir. 1898) ("A state cannot authorize its agents to violate a citizen's right of property, and then invoke the constitution of the United States to protect those agents against suit instituted by the owner for the protection of his rights against injury by such agents.").

scope of their official authority, and done without wilfulness, malice, or corruption." *Hill v. Jackson*, 336 Ga. App. 679, 684 (2016) (internal quote omitted); *cf.* William Baude, *Is Qualified Immunity Unlawful?*, 106 Cal. L. Rev. 45, 55 (2018) ("[L]awsuits against officials for constitutional violations did not generally permit a good-faith defense during the early years of the Republic.")

Thus while federal courts once rendered unconstitutional takings void, and property owners could successfully seek remedies under trespass and conversion, today courts provide broad immunity for officials and normally deny equitable relief in favor of just compensation. Under modern legal doctrines and laws just compensation is the only remedy left.

### B. Just compensation cannot be left to legislative grace

The government must pay for what it takes. But the Constitution's command to provide just compensation is a hollow one if all it demands is that, in return for surrendering property to the public, the owner nonetheless must rely on the legislative or executive branches to agree to provide compensation. *See Ariyan, Inc. v. Sewerage & Water Bd. of New Orleans*, 29 F.4th 226, 232 (5th Cir. 2022) ("Without any judicial means

to recover, they are compelled 'to rely exclusively upon the generosity of the judgment debtor.'") (quoting *State of Louisiana ex rel. Folsom v. City of New Orleans*, 109 U.S. 285, 295 (1883) (Harlan, J., dissenting)).

That Congress created a general civil cause of action for "persons" claiming deprivations of "rights, privileges, or immunities secured by the Constitution and laws"—Civil Rights Act of 1871, 42 U.S.C. § 1983—is of no moment here. For example, Congress has never legislatively established a cause of action for just compensation against the federal government, and owners whose property is alleged to have been taken seek compensation directly under the Constitution. The Tucker Act does not create a cause of action for compensation or money damages; it only assigns jurisdiction over constitutionally-based takings claims to the Court of Federal Claims and the Federal Circuit. *See* 28 U.S.C. § 1491(a)(1) ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded . . . upon the Constitution"). In federal takings, the self-executing Just Compensation Clause recognizes the right and provides the remedy. *Blanchette v. Conn. Gen. Ins. Corps.*, 419 U.S. 102, 126 (1974). If the lack of a statutory cause of action does not stand in the way of holding the

federal government to the Just Compensation Clause's requirements, it similarly does not stand in the way of the same claim against a state. Our constitutional order cannot countenance neutering a right and remedy expressly recognized by the text of the Constitution, on the grounds that Congress has not acted.

The Fourteenth Amendment's Due Process Clause holds states—in their capacity as states—to the same standards as the federal government. *See* U.S. Const. amend. XIV, § 1. The Amendment "'fundamentally altered the balance of state and federal power'" by "requir[ing] the States to surrender a portion of the sovereignty that had been preserved to them by the original Constitution." *Alden v. Maine*, 527 U.S. 706, 756 (1999) (citation omitted). Its provisions "were intended to be, what they really are, limitations of the power of the States[.]" *Ex parte Virginia*, 100 U.S. 339, 345 (1879). The Fourteenth Amendment worked a "sea change" enhancing "federal protections for individual rights against state infringements." *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 176 (2023). Ratification of the Fourteenth Amendment thus inherently limited state power over individual rights. *Mitchum v. Foster*, 407 U.S. 225, 238–39 (1972) (recognizing the role of

the Amendment in elevating "the Federal Government as a guarantor of basic federal rights against state power"); *Home Tel. & Tel. Co. v. City of Los Angeles*, 227 U.S. 278, 287 (1913) (adopting as the "theory of the Amendment" that "the Federal judicial power is competent to afford redress for [a] wrong" that violates the Fourteenth Amendment).

In the very first case "incorporating" a right acknowledged in the Bill of Rights against a state under the Fourteenth Amendment's Due Process Clause—the Just Compensation Clause—this Court recognized that the Fourteenth Amendment limits the states, not just its officials, instrumentalities, and agencies:

> [T]he prohibitions of the [Fourteenth] amendment refer to *all the instrumentalities of the state*,—to its legislative, executive, and judicial authorities,—and, therefore, whoever by virtue of public position under a state government deprives another of any right protected by that amendment against deprivation by the state, 'violates the constitutional inhibition'. . . . This must be so, or, as we have often said, the constitutional prohibition has no meaning[.]

*Chicago, B. & Q. R. Co. v. City of Chicago*, 166 U.S. 226, 233–34 (1897) (emphasis added). *Chicago, B. & Q.* understood that property rights established the foundation of the Constitution as a whole:

> The requirement that the property shall not be taken for public use without just compensation is but "an affirmance of a great doctrine established by the common law for the

> protection of private property. It is founded in natural equity, and is laid down as a principle of universal law. Indeed, in a free government, almost all other rights would become worthless if the government possessed an uncontrollable power over the private fortune of every citizen."

*Id.* at 236 (citing 2 Story, Const. § 1790; 1 William Blackstone, Commentaries 138, 139 (1765)).

Neither the federal government, nor a state or local government, may escape its "categorical duty" to compensate landowners. *See McDonald v. City of Chicago*, 561 U.S. 742, 765 (2010) (abandoning "'the notion that the Fourteenth Amendment applies to the States only a watered-down, subjective version of the individual guarantees of the Bill of Rights,' stating that it would be 'incongruous' to apply different standards 'depending on whether the claim was asserted in a state or federal court.'") (citation omitted); *Seaboard Air Line Railway*, 261 U.S. at 304 ("Just compensation is provided for by the Constitution and the right to it cannot be taken away by statute."). In short, the Fifth Amendment guarantee of compensation does not depend on the good graces of Congress; landowners are "entitled to bring an action in inverse condemnation as a result of the 'self-executing character of the constitutional provision with respect to compensation'. . . ." *First English*,

482 U.S. at 315; *City of Monterey v. Del Monte Dunes at Monterey*, 526 U.S. 687, 714–17 (1999) (citations omitted) (When the government violates its duty under the takings clause, "either by denying just compensation in fact or by refusing to provide procedures through which compensation may be sought, it violates the Constitution."). Because the Takings Clause mandates that a cause of action be available and effectual, regardless of whether it is expressly provided by Congress, the Takings Clause itself is authority to bring a claim for relief.

## II. A SELF-EXECUTING TAKINGS CLAUSE DOES NOT RISK OPENING THE FLOODGATES TO A DELUGE OF SELF-EXECUTING RIGHTS

The Takings Clause is one of only two constitutional provisions that mandate a remedy. The "sacred and inviolable" rights associated with these special remedies are so important that they are deserving of special protection against unjust deprivations, via remedies that are in a league of their own. *See* 1 Blackstone, 134–35 ("the law of the land . . . post-pone[s] even public necessity to the sacred and inviolable rights of private property."). And as the panel here noted, the Takings Clause is the only self-executing constitutional provision that "guarantees a legal damages-type remedy." *Fulton*, 148 F.4th at 1240. Thus, holding that a party can

bring a claim directly under the Takings Clause for just compensation will not open the floodgates to other constitutional claims raised directly via the Fourteenth Amendment. As the First Circuit aptly explained,

> a claim under the Takings Clause is different in kind from actions under *Bivens*[3] and section 1983. Neither *Bivens* nor section 1983 rest on a provision of the Constitution that mandates a specific remedy in the same way the Takings Clause mandates just compensation; nor do *Bivens* or section 1983 prescribe the quantum of compensation required in the event of a violation.

*In re Financial Oversight and Mgmt. Bd.*, 41 F.4th 29, 46 (1st Cir. 2022). The Takings Clause mandates a very specific remedy unlike other constitutional provisions.

Certainly such cases have not overwhelmed state courts that waive sovereign immunity for takings claims,[4] and there is no reason to expect a more dire result in federal courts. *See Jules v. Andre Balazs Properties*, 146 S. Ct. 1209, 1221 & n.4 (May 14, 2026) (rejecting floodgates argument where many circuits already employ the rule sought by petitioner and

---

[3] *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), created a narrow remedy against federal officers, acting under color of federal law, analogous to Section 1983 actions against state officials.

[4] *See, e.g.*, *Manning v. N.M. Energy, Minerals, & Natural Res. Dep't*, 144 P.3d 87, 90 (N.M. 2006).

suffer "no epidemic of useless filings clogging up federal courts"). "Time and again in Takings Clause cases, the Court has heard the prophecy that recognizing a just compensation claim would unduly impede the government's ability to act in the public interest." *Arkansas Game & Fish Comm'n v. United States*, 568 U.S. 23, 36–37 (2012). "The sky did not fall" in those cases, *id.*, and it will not fall in this case by holding the government accountable to the Constitution.

The legitimate exercise of government power is to protect people and their property; individual liberty cannot exist if the government can evade its obligation to justly compensate its citizens when it takes their private property. *See Cedar Point*, 594 U.S. at 147 ("the protection of private property is indispensable to the promotion of individual freedom. As John Adams tersely put it, '[p]roperty must be secured, or liberty cannot exist.'").

## CONCLUSION

This Court should reverse the District Court's order denying Mr. Fulton's motion to amend his complaint and hold, as the panel did, that Mr. Fulton can state a takings claim based directly on the Fifth Amendment.

DATED: July 20, 2026.

Respectfully submitted,

s/ *Bridget F. Conlan*
BRIDGET F. CONLAN
CHRISTINA M. MARTIN
DEBORAH J. LA FETRA
STEPHEN S. DAVIS
Pacific Legal Foundation
3100 Clarendon Blvd., Suite 1000
Arlington, Virginia 22201
Telephone: (202) 888-6881
Fax: (916) 419-7747
BConlan@pacificlegal.org

*Counsel for Amicus Curiae*
*Pacific Legal Foundation*

## CERTIFICATE OF SERVICE

I hereby certify that on July 20, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

s/ *Bridget F. Conlan*
BRIDGET F. CONLAN
*Counsel for Amicus Curiae*
*Pacific Legal Foundation*

## CERTIFICATE OF COMPLIANCE

This document complies with the word limit of Federal Rule of Appellate Procedure 29(a)(5) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f) and 11th Cir. R. 32-4, this document contains 3,182 words.

This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6).

DATED: July 20, 2026.

s/ *Bridget F. Conlan*
BRIDGET F. CONLAN
*Counsel for Amicus Curiae*
*Pacific Legal Foundation*