No. 22-12041

**UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT**

BRANDON FULTON,
*Plaintiff-Appellant*,
v.

BOARD OF COMMISSIONERS, FULTON COUNTY,
*Defendant-Appellee*.

Appeal from the U.S. District Court for the Northern District of Georgia, No. 1:20-cv-1936-SCJ

# EN BANC BRIEF FOR APPELLEE

Michael D. Hoffer
Karen Woodward
CRUSER, MITCHELL, NOVITZ,
SANCHEZ, GASTON & ZIMET, LLP
275 Scientific Dr., Ste. 2000
Peachtree Corners, GA 30092
(404) 881-2622

Cameron T. Norris
Gilbert C. Dickey
Nicholas B. Venable*
CONSOVOY MCCARTHY PLLC
ANTONIN SCALIA LAW SCHOOL
SUPREME COURT CLINIC
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
(703) 243-9423
cam@consovoymccarthy.com

*Supervised by principals of the firm admitted to practice in Virginia

*Counsel for Defendant-Appellee*

August 19, 2026

## CERTIFICATE OF INTERESTED PERSONS

Per Rule 26.1 and Circuit Rule 26.1, Defendant-Appellee certifies that the following have an interest in the outcome of this appeal:

1. Alabama, State of (Amicus Curiae)
2. Arnold & Porter Kaye Scholer LLP (Counsel for Appellant)
3. Bowman, Brad (Counsel for Appellee)
4. The Buckeye Institute (Amicus Curiae)
5. Conlan, Bridget F. (Counsel for Amicus Curiae)
6. Consovoy McCarthy PLLC (Counsel for Appellee)
7. Cruser, Mitchell, Novitz, Sanchez, Gaston & Zimet, LLP (Counsel for Appellee)
8. Davis, Stephen S. (Counsel for Amicus Curiae)
9. Dickey, Gilbert C. (Counsel for Appellee)
10. Edwards, John C. (Counsel for Appellant)
11. Ely Jr., James W. (Amicus Curiae)
12. Farag, Donna M. (Counsel for Amici)
13. Florida, State of (Amicus Curiae)
14. Fulton, Brandon (Appellant)
15. Fulton County Board of Commissioners (Appellee)
16. Gates, Douglas W. (Counsel for Amici)
17. Georgia, State of (Amicus Curiae)
18. Georgia Department of Law, Solicitor General (Counsel for Amicus)
19. Hebert, Christen Mason (Counsel for Amicus)

20. Hoffer, Michael (Counsel for Appellee)
21. Institute for Justice, a 501(c)(3) nonprofit corporation (Amicus Curiae)
22. John Edwards Law Group, LLC (Counsel for Appellant)
23. Jones, The Honorable Steve C. (United States District Judge)
24. Kedem, Allon (Counsel for Appellant)
25. La Fetra, Deborah J. (Counsel for Amicus Curiae)
26. Lee & Ziegler, LLP (Counsel for Appellant)
27. Mahoney, Julia D. (Amicus Curiae)
28. Martin, Christina M. (Counsel for Amicus Curiae)
29. Morgan, Connor J. (Counsel for Appellant)
30. McNamara, Robert J. (Counsel for Amicus)
31. Norris, Cameron T. (Counsel for Appellee)
32. Office of the Fulton County Attorney (Counsel for Appellee)
33. O'Kelley, Elijah J. (Counsel for Amici)
34. Pacific Legal Foundation (Amicus Curiae)
35. Plott, Mathew (Counsel for Appellee)
36. Rodenberg, William D. (Counsel for Amicus)
37. Rosenberg, Steven (Former Counsel for Appellee)
38. Saunder, Clare A. (Counsel for Appellant)
39. Saunders, Thomas G. (Counsel for Amici)
40. Scalia Law School Supreme Court Clinic (Counsel for Appellee)
41. Sen, Suranjan M. (Counsel for Amicus)

42. Smeltzer, John L. (Counsel for Amicus)

43. Thompson, John Henry (Counsel for Amici)

44. United States (Amicus Curiae)

45. Venable, Nicholas B. (Counsel for Appellee)

46. Ward, Andrew (Counsel for Amicus)

47. Williams, Brian M. (Counsel for Appellant)

48. Wilmer Cutler Pickering Hale and Dorr LLP (Counsel for Amici)

49. Woodward, Karen E. (Counsel for Appellee)

50. Ziegler, Konrad G.W. (Counsel for Appellant)

Dated: August 19, 2026

/s/ *Cameron T. Norris*
Counsel for Defendant-Appellee

## STATEMENT REGARDING ORAL ARGUMENT

This Court has scheduled oral argument for October 2026.

## TABLE OF CONTENTS


Statement Regarding Oral Argument .......... i

Table of Citations .......... iii

Introduction .......... 1

Statement of the Case .......... 3

Standard of Review .......... 9

Summary of Argument .......... 9

Argument .......... 12

I. The district court correctly held that Fulton's amendment was futile because he lacks a cause of action directly under the Takings Clause .......... 12

A. The Takings Clause does not have an express cause of action. .......... 13

B. Federal courts cannot create an implied cause of action for Fulton .......... 26

II. Fulton's new takings claim is also untimely. .......... 33

III. The district court did not abuse its discretion by not considering other amendments that Fulton never proposed. .......... 41

Conclusion .......... 45

Certificate of Compliance .......... 46

Certificate of Service .......... 46

## TABLE OF CITATIONS

**Page(s)**

**Cases:**

*Armstrong v. Exceptional Child Ctr.*,
575 U.S. 320 (2015) ........ 14, 25

*Azul-Pacifico, Inc. v. City of L.A.*,
973 F.2d 704 (9th Cir. 1992) ........ 28, 37

*Barron ex rel. Tiernan v. Mayor of Baltimore*,
32 U.S. 243 (1833) ........ 16

*Barron v. Fed. Rsrv. Bank of Atlanta*,
129 F. App'x 512 (11th Cir. 2005) ........ 36

*Beekman v. Saratoga & Schenectady R.R.*,
3 Paige Ch. 45 (N.Y. Ch. 1831) ........ 16

*Bieneman v. Chicago*,
864 F.2d 463 (7th Cir. 1988) ........ 37

*Blodgett v. United States*,
792 F. App'x 921 (Fed. Cir. 2019) ........ 40

*Bush v. Lucas*,
462 U.S. 367 (1983) ........ 28

*Carrin v. Strong*,
2026 WL 2122909 (11th Cir. July 23) ........ 11, 29, 32

*Cisco Sys. v. Doe I*,
146 S.Ct. 1882 (2026) ........ 30

*Cita Tr. Co. AG v. Fifth Third Bank*,
879 F.3d 1151 (11th Cir. 2018) ........ 36

*City of Boerne v. Flores*,
521 U.S. 507 (1997) ........ 15

*City of Canton v. Harris*,
489 U.S. 378 (1989) ........ 32, 33

*City of Monterey v. Del Monte Dunes at Monterey*,
526 U.S. 687 (1999) ........ 14

*Civil Rights Cases*,
109 U.S. 3 (1883) ........ 15

*Cohens v. Virginia*,
19 U.S. 264 (1821) ....................20

*Coventry First v. McCarty*,
605 F.3d 865 (11th Cir. 2010) .................... 9, 42

*Davis v. Passman*,
442 U.S. 228 (1979) .................... 12, 14

*Dean v. Gladney*,
621 F.2d 1331 (5th Cir. 1980) ....................32

*DeVillier v. State*,
63 F.4th 416 (5th Cir. 2023) .................... 1, 20, 21, 23, 24, 25, 30

*DeVillier v. Texas*,
601 U.S. 285 (2024) .................... 1, 2, 7, 10, 14, 15, 23, 24, 27, 28

*DeVillier v. Texas*,
2026 WL 21512 (S.D. Tex. Jan. 5), *adopted*, 2026 WL 967637 (S.D. Tex. Apr. 9) ....................25

*Diversified Holdings v. City of Suwanee*,
302 Ga. 597 (2017) ....................28

*Dobbs v. Jackson Women's Health Org.*,
597 U.S. 215 (2022) ....................21

*Doe v. Samford Univ.*,
29 F.4th 675 (11th Cir. 2022) ....................43

*Edwards v. Grubbs*,
179 F.4th 909 (11th Cir. 2026) ....................26

*Egbert v. Boule*,
596 U.S. 482 (2022) .................... 10, 30, 31, 32

*Ex parte Bollman*,
8 U.S. 75 (1807) ....................15

*Felker v. Turpin*,
518 U.S. 651 (1996) ....................15

*First Eng. Evangelical Lutheran Church of Glendale v. L.A. Cnty.*,
482 U.S. 304 (1987) ....................15

*FS Credit Opportunities Corp. v. Saba Cap. Master Fund*,
146 S.Ct. 1546 (2026) .................... 14, 30

*GeorgiaCarry.Org v. Georgia*,
687 F.3d 1244 (11th Cir. 2012)....................6, 27, 28

*Glidden Co. v. Zdanok*,
370 U.S. 530 (1962)....................20

*Gould v. Interface, Inc.*,
153 F.4th 1346 (11th Cir. 2025)....................36

*Grech v. Clayton County*,
335 F.3d 1326 (11th Cir. 2003)....................32

*Hall v. United Ins. Co. of Am.*,
367 F.3d 1255 (11th Cir. 2004)....................9

*Harbert Int'l v. James*,
157 F.3d 1271 (11th Cir. 1998)....................27, 33

*Hatahley v. United States*,
351 U.S. 173 (1956)....................37

*Hernandez v. Mesa*,
589 U.S. 93 (2020)....................21, 32

*Hooe v. United States*,
218 U.S. 322 (1910)....................19

*Infinium Builders LLC v. Metro. Gov't of Nashville & Davidson Cnty.*,
2024 WL 4009874 (M.D. Tenn. Aug. 30)....................39-40

*Johnson v. Terry*,
119 F.4th 840 (11th Cir. 2024)....................10, 12, 29

*Kelly v. Serna*,
87 F.3d 1235 (11th Cir. 1996)....................37

*Knick v. Township of Scott*,
588 U.S. 180 (2019)....................5, 16, 17, 18, 21, 26, 34, 38

*L.S. ex rel. Hernandez v. Peterson*,
982 F.3d 1323 (11th Cir. 2020)....................9

*Langford v. United States*,
101 U.S. 341 (1879)....................17

*Lavina v. Prepaid Coll. Bd.*,
174 F.4th 49 (11th Cir. 2026)....................25

*Libr. of Cong. v. Shaw*,
478 U.S. 310 (1986) ........ 16-17

*Link v. Wabash R. Co.*,
370 U.S. 626 (1962) ........ 43

*Littlejohn v. Sch. Bd. of Leon Cnty.*,
132 F.4th 1232 (11th Cir. 2025) ........ 23

*Livingston v. Mayor of N.Y.*,
8 Wend. 85 (N.Y. 1831) ........ 16

*Loeb v. Cnty. of Suffolk*,
2023 WL 4163117 (E.D.N.Y. June 23) ........ 41

*Lynch v. Household Fin. Corp.*,
405 U.S. 538 (1972) ........ 36

*Maron v. Chief Fin. Officer of Fla.*,
136 F.4th 1322 (11th Cir. 2025) ........ 25

*McCullough v. Bd. of Regents of the Univ. Sys. of Ga.*,
623 F. App'x 980 (11th Cir. 2015) ........ 43

*McDonald v. City of Chicago*,
561 U.S. 742 (2010) ........ 20

*McGroarty v. Swearingen*,
977 F.3d 1302 (11th Cir. 2020) ........ 39

*Me. Cmty. Health Options v. United States*,
590 U.S. 296 (2020) ........ 2, 19, 22, 23

*Monell v. Dep't of Soc. Servs. of N.Y.C.*,
436 U.S. 658 (1978) ........ 32, 33

*N.Y. Rifle & Pistol Ass'n v. Bruen*,
597 U.S. 1 (2022) ........ 21

*Null v. White Water Valley Canal Co.*,
4 Ind. 431 (1853) ........ 27

*Odebrecht Const. v. Sec'y, Fla. Dep't of Transp.*,
715 F.3d 1268 (11th Cir. 2013) ........ 39

*Osterneck v. E.T. Barwick Indus.*,
825 F.2d 1521 (11th Cir. 1987) ........ 44

*Perez v. Florida*,
519 F. App'x 995 (11th Cir. 2013) ....................40

*Peters v. Zhang*,
803 F. App'x 957 (7th Cir. 2020) ....................39

*Pierson v. Ray*,
386 U.S. 547 (1967) ....................29

*Pinson v. JPMorgan Chase Bank*,
942 F.3d 1200 (11th Cir. 2019) ....................34

*Printz v. United States*,
521 U.S. 898 (1997) ....................16

*Rhodes v. Dep't of Veterans Affs.*,
828 F. App'x 685 (11th Cir. 2020) ....................36

*Rollins v. Home Depot USA*,
8 F.4th 393 (5th Cir. 2021) ....................40

*Rotella v. Wood*,
528 U.S. 549 (2000) ....................38-39

*San Diego Gas & Electric Co. v. City of San Diego*,
450 U.S. 621 (1981) ....................16

*Schillinger v. United States*,
155 U.S. 163 (1894) ....................14

*Seminole Tribe of Fla. v. Fla. Dep't of Rev.*,
750 F.3d 1238 (11th Cir. 2014) ....................25

*Spelta v. Bakker*,
2020 WL 2732070 (D. Md. May 26) ....................41

*Staley v. Sex. Offender Registr'n Rev. Bd.*,
2023 WL 1797018 (11th Cir. Feb. 7). ....................39

*Stevens v. Proprietors of Middlesex Canal*,
12 Mass. 466 (1815) ....................27

*Thacher v. Dartmouth Bridge Co.*,
35 Mass. 501 (1836) ....................17

*Touko v. United States*,
2021 WL 2685328 (D. Md. June 29) ....................41

*Trump v. Anderson*,
601 U.S. 100 (2024) ....................17

*Trump v. CASA*,
606 U.S. 831 (2025) ....................29

*U.S. ex rel. 84Partners v. Nuflo*,
79 F.4th 1353 (11th Cir. 2023) ....................42

*United States v. Campbell*,
26 F.4th 860 (11th Cir. 2022)....................34

*United States v. Classified Parking Sys.*,
213 F.2d 631 (5th Cir. 1954) ....................41-42

*United States v. Dickinson*,
331 U.S. 745 (1947) ....................16, 19, 23

*United States v. Linville*,
228 F.3d 1330 (11th Cir. 2000)....................26-27

*United States v. Mitchell*,
463 U.S. 206 (1983) ....................17

*Wakefield v. Cordis Corp.*,
304 F. App'x 804 (11th Cir. 2008) ....................40

*Williams v. Bennett*,
689 F.2d 1370 (11th Cir. 1982)....................27, 29

*Williams v. Shapiro*,
161 F.4th 1313 (11th Cir. 2025) ....................23

*Williams v. United States*,
289 U.S. 553 (1933) ....................20

*Wilson v. Garcia*,
471 U.S. 261 (1985) ....................36, 37

**Statutes & Other Authorities:**

U.S. Const., amend. I....................27

U.S. Const., amend. III....................13

U.S. Const., amend. IV....................13

U.S. Const., amend. V ....................10, 13, 14, 15, 20, 21

U.S. Const., amend. VIII ....................27

U.S. Const., amend. XIV .................... 13, 16, 20, 21, 22, 27,

28 U.S.C. §1331 ....................12

42 U.S.C. §1983 .................... 5, 6, 8, 9, 10, 11, 22, 24, 26, 28, 31, 32, 33, 35, 36, 41, 43

Cong. Globe, 42d Cong., 1st Sess. App. 85 (1871) ....................22

Fed. R. Civ. P. 2 ....................22

Fed. R. Civ. P. 5.1 ....................33

Fed. R. Civ. P. 11 ....................43

OCGA §9-3-33 ....................36

OCGA §17-5-54 ....................6, 7, 34, 35

OCGA §36-11-1 ....................8, 40, 43

OCGA §51-10-1 .................... 28, 37

2 Cowen et al., *The United States Court of Claims: A History* (1978) ....................20

24 Stat. 505 (Mar. 3, 1887) ....................19

Act of Mar. 3, 1809, 2 Stat. 539 ....................17

Baude, *Rethinking the Federal Eminent Domain Power*, 122 Yale L.J. 1738 (2013) ....................17

*Biography*, *Brannu: The Urban Horseman*, perma.cc/LD5L-PZWT (archived Aug. 10, 2026) ....................3

Brauneis, *The First Constitutional Tort: Remedial Revolution in Nineteenth-Century Just Compensation Law*, 52 Vand. L. Rev. 57 (1999) .................... 21, 38

Carr, *DA Drops Felony Animal Cruelty Case Against 'Urban Cowboy'*, WSB-TV (Apr. 12, 2018), perma.cc/A6BW-BY3C ....................5

Dixon, *Group Attempts 'For Months' to Have Local Horses Rescued,* 11Alive (July 21, 2016), rb.gy/fx81rl ....................4

Fallon & Meltzer, *New Law, Non-Retroactivity, and Constitutional Remedies*, 104 Harv. L. Rev. 1731 (1991) ....................18

*Hart and Wechsler's The Federal Courts and the Federal System* (8th ed. 2025) .................... 15, 18

Hon. Melton, *Order Declaring Statewide Judicial Emergency*, S.Ct. Ga. (Mar. 14, 2020), perma.cc/YA8V-BDS7 ....................41

Johnson, *Man Accused of Horse Abuse Arrested Again in Fulton*, Patch (Apr. 24, 2017), perma.cc/L7MY-XCEV ....................4

Laycock, *How Remedies Became a Field: A History*, 27 Rev. Litig. 161 (2008) ....................21, 22

Lindley & West, *The Takings Clause Cause of Action*, 79 Stan. L. Rev. (forthcoming 2027), ssrn.com/abstract=6790158 ....................17, 18, 20, 21, 22, 29, 33

Madison, *Amendments to the Constitution* (June 8, 1789), Founders Online, perma.cc/3VQW-6DXG ....................18

*N.D. Ga. General Order 20-01* (Mar. 16, 2020), perma.cc/34NW-CCSW ....................41

PETA, *Will Accused Horse-Neglecter Face Ban on Animal Ownership?* (Mar. 8, 2017), perma.cc/JAX2-Q8KR ....................4

Ross, *'Urban Cowboy' Still Free Despite Numerous Animal Abuse Claims*, 11Alive (Mar. 22, 2019), rb.gy/u7yreg ....................4

Sax, *Takings and the Police Power*, 74 Yale L.J. 36 (1964) ....................18

Treanor, *The Original Understanding of the Takings Clause and the Political Process*, 95 Colum. L. Rev. 782 (1995) ....................17

## INTRODUCTION

Whether litigants can sue the government under the Takings Clause is an important question—one that's divided several jurists. The Supreme Court granted certiorari to resolve it in *DeVillier v. Texas*, but the Court remanded so the plaintiff could amend his complaint to add a "state-law inverse-condemnation cause of action." 601 U.S. 285, 290, 293 (2024). The argument for a federal cause of action directly under the Constitution goes like this: The Takings Clause says the government must pay "just compensation." So when the government takes property, there must be some adequate way for the owner to get just compensation. If the owner has no adequate remedy, then the government is violating the Constitution; and to remedy that violation, federal courts should recognize a cause of action that lets the owner sue the government for damages. *See DeVillier v. State*, 63 F.4th 416, 436 (5th Cir. 2023) (Oldham, J., dissental).

But as Fulton County understands this theory, its proponents think courts can *imply* or *create* a cause of action under the Takings Clause; they do not think the Constitution *already* has a cause of action, as if spelled out expressly in the text. If the Takings Clause already had an express cause of action, then plaintiffs could just sue under it; all this talk about the adequacy of other remedies would be irrelevant. And the Supreme Court's decision in *DeVillier* would make no sense. Why tell that plaintiff to add a cause of action under state law (a claim he did not plead), if he had a cause of action under the Takings Clause (a claim he did plead)? The Court ordered that relief because the

state-law cause of action meant the plaintiff had an adequate way to get just compensation, which avoided the "constitutional concerns" that might justify recognizing a cause of action under the Takings Clause. 601 U.S. at 292.

Yet on rehearing en banc, Brandon Fulton is pressing the *worst* version of this theory. Abandoning the jurists on his side, Fulton says the Takings Clause has an express cause of action that lets private litigants sue the government for damages in federal court, "full stop." EB-Br. (CA11-Doc.93) at 5. This cause of action is "available *regardless* of any alternative remedies" that property owners have under state or federal law. EB-Br.4-5. Fulton faults "[b]oth the panel majority and the dissent" for "devot[ing] significant attention" to the adequacy of other remedies, insisting that the panel's debate rested on the "mistaken premise" that adequacy matters. EB-Br.4. If the Supreme Court worked from this "premise" in *DeVillier*, it messed up too, according to Fulton. EB-Br.50-51.

Points to Fulton for intellectual bravery, but sometimes there's wisdom in crowds. This Court cannot accept his new theory without contradicting the Supreme Court, mangling the constitutional text, and ignoring clear historical practice. The Supreme Court already said "the Constitution did not expressly create a right of action when it mandated 'just compensation' for Government takings." *Me. Cmty. Health Options v. United States*, 590 U.S. 296, 323 n.12 (2020) (cleaned up). Nothing in the text of the Takings Clause comes close to creating a cause of action to sue the government for damages in federal court. If that cause of action was always lurking in the text, then no

one noticed, ever tried to use it, or complained when Congress effectively deleted it by not giving federal courts jurisdiction to hear it for over 100 years.

Now that Fulton is fighting even the panel opinion in his favor, this Court has more paths to affirm the district court's judgment. This Court can reject Fulton's argument that the Constitution contains an express cause of action and then refuse to create or imply a cause of action for him—either because his existing remedies are adequate, or because Fulton is not willing to argue that they're inadequate. Even if Fulton had a cause of action, his takings claim would be untimely. Though the district court did not address timeliness, Fulton asks this Court to do so; but then he presses all new theories that this Court can easily reject as forfeited. Nor should Fulton get to amend his complaint in *new* ways that he never proposed below.

This litigation was filed six years ago based on events that occurred ten years ago. The district court was right to end it, after giving Fulton three shots to plead a viable claim. Its judgment should be affirmed.

## STATEMENT OF THE CASE

Known locally as the "Urban Cowboy," Brandon Fulton portrays himself (on the webpage for his documentary) as a horse lover who is battling the government to vindicate his property rights. *Biography*, *Brannu: The Urban Horseman*, perma.cc/LD5L-PZWT (archived Aug. 10, 2026). In reality, Fulton is a serial animal abuser whose "ranch" is a constant nuisance to his community. "[S]ince 2011, [Fulton] has been cited

numerous times for failing to provide horses in his custody with food, water, and humane care." PETA, *Will Accused Horse-Neglecter Face Ban on Animal Ownership?* (Mar. 8, 2017), perma.cc/JAX2-Q8KR. Neighbors have complained about finding his horses in the road. Dixon, *Group Attempts 'For Months' to Have Local Horses Rescued*, 11Alive (July 21, 2016), rb.gy/fx81rl. And authorities have been called to his property for all sorts of issues at least twenty times—so much so that Fulton reportedly posted a sign threatening to shoot any unwanted visitors in the head. Ross, *'Urban Cowboy' Still Free Despite Numerous Animal Abuse Claims*, 11Alive (Mar. 22, 2019), rb.gy/u7yreg; Dixon, *supra*.

In July 2016, officers entered Fulton's property and found several "emaciated" horses, as well as four dead ones—including a corpse that had been "partially burned," presumably in a failed attempt to get rid of the body. Dixon, *supra*. Fulton was charged with felony animal cruelty. But the 2016 charges were dropped after the district attorney said the biological testing on the corpses was inconclusive. Ross, *supra*.

In April 2017, officers found more abused horses on Fulton's property, as well as an abused donkey and calf. The horses were emaciated again, with one tethered so it could not access water and with barbed wire wrapped around its leg. Johnson, *Man Accused of Horse Abuse Arrested Again in Fulton*, Patch (Apr. 24, 2017), perma.cc/L7MY-XCEV. According to documents attached to Fulton's sovereign-citizen-style complaint in another case, the calf was "severely emaciated, covered in diarrhea, with unsanitary water." Doc.7 at 30-34, *Fulton v. Fulton Cnty. Police Dep't*, No. 1:17-cv-2912 (N.D. Ga.

Sept. 8, 2017). Fulton was convicted of one count of animal cruelty based on this 2017 incident. *Id.* at 59.

According to his complaint below, seven of Fulton's horses were taken into the county's custody and not returned. R.1 at 3-4 ¶¶11-18. Though the complaint appears to connect these horses to the incident in 2017, R.1 at 3 ¶10, Fulton now admits that the horses concern the incident in 2016 (the one where officers also found the dead horses), EB-Br.6 n.2. Fulton's complaint says these seven horses were taken "[o]n June 20, 2016," and that the criminal charges against him were dismissed "[o]n April 5, 2018." R.1 at 4 ¶13, ¶15. A week after the dismissal, Fulton was already telling the press that his horses were "missing" and that he was "considering civil action against the county." Carr, *DA Drops Felony Animal Cruelty Case Against 'Urban Cowboy'*, WSB-TV (Apr. 12, 2018), perma.cc/A6BW-BY3C. Yet he did not file this suit until May 5, 2020—more than two years after the dismissal. R.1.

In his complaint, Fulton sued the county, the county's district attorney in his individual capacity, and the CEO of a nonprofit that helps the county care for abused animals. R.1. The only claim against the county was a takings claim "under 42 U.S.C. §1983." R.1 at 5 ¶19-21. The county moved to dismiss, stressing that Fulton failed to allege an "official policy or custom" under *Monell* and that his claims were untimely under §1983's two-year statute of limitations. R.18-1 at 11-15. On timeliness, Fulton responded that his clock started either in June 2019 (the day the Supreme Court decided *Knick v. Township of Scott*, 588 U.S. 180 (2019)) or in May 2018 (30 days after the dismissal

of his criminal charges, *see* OCGA §17-5-54(c)(2)). R.25 at 9-14. Yet Fulton conceded defeat on *Monell*. Doc.13 at 12; *see* Panel-Op.55 n.19. He tried to avoid *Monell* by amending his complaint—and not by adding allegations to plead a policy or custom under §1983, but by adding a takings claim directly under the Constitution. R.26 at 5. After the county opposed his motion to amend as futile, R.30, Fulton filed no reply.

The district court granted the county's motion to dismiss and denied Fulton's amendment as futile. Fulton could not sue the county under §1983 because he did not allege a policy or custom under *Monell*. R.39 at 8-9. And Fulton could not sue directly under the Takings Clause because Congress already provided a cause of action under §1983. R.39 at 10. "'Where a statute provides an adequate remedy,'" courts in this circuit "'will not imply a judicially created cause of action directly under the Constitution.'" R.39 at 10 (quoting *GeorgiaCarry.Org v. Georgia*, 687 F.3d 1244, 1253 n.15 (11th Cir. 2012)). Because Fulton's failure to plead *Monell* and his lack of a cause of action were sufficient reasons to dismiss his complaint and deny leave to amend, the district court did "not address whether" Fulton's suit was also "time-barred." R.39 at 11 n.5.

Fulton never brought, or tried to bring, a takings claim against any individual defendant. Panel-Op.5 n.1. Though he named two individual defendants, he sued them only under procedural due process. R.1 at 5-7 ¶¶22-33. He then voluntarily dismissed the nonprofit CEO. R.35. After the district attorney filed his own motion to dismiss, R.47, Fulton filed an opposition and a second motion to amend, seeking leave to add more caselaw to his procedural-due-process claim against the district attorney. R.50;

R.51. In another opinion, the district court granted the district attorney's motion to dismiss and denied Fulton's second proposed amendment as futile. Among other grounds, the court ruled that Fulton failed to state a procedural-due-process claim because the statute he cited, OCGA §17-5-54(c)(2), requires the return of property "only" after a defendant is "found guilty of a crime"—a fact pattern that "does not apply" to Fulton because his charges were dismissed with no trial. R.55 at 15. Fulton's proposed amendment was also futile because it "adds only case citations." R.55 at 15. So the district court entered a final judgment dismissing Fulton's case with prejudice. R.56.

Fulton filed a partial notice of appeal. He appealed only the district court's "February 24, 2021 Order" addressing the county's motion to dismiss and its opposition to Fulton's motion for leave to amend. R.57 at 1. Though Fulton also appealed the district court's "Final Judgment," he did so "only as to Defendant Fulton County Board of Commissioners." R.57 at 1-2. His notice specified that "[t]his appeal is taken against only Defendant Fulton County Board of Commissioners" and that "[n]o other Defendant is a party to this appeal." R.57 at 2.

A divided panel reversed. The majority held that Fulton's attempt to sue the county directly under the Takings Clause was not futile. Panel-Op.73. Recognizing such a cause of action for the first time, the majority stressed that it could not avoid this question, like the Supreme Court did in *DeVillier*, because "Fulton cannot amend his complaint to bring a state-law action." Panel-Op.7, 10-12, 61-65. All state-law claims would fail because Fulton did not comply with Georgia's "special rule for suits against

counties" that requires presentment of claims within 12 months. Panel.Op.12, 63 (citing OCGA §36-11-1). And Fulton had no "substitute remedy" under federal law. Panel-Op.53. He cannot sue the county under §1983 because of *Monell*. Panel-Op.54-55. And he cannot sue individual officers for damages because *Ex parte Young* is limited to equitable relief, Panel-Op.61, and §1983 lets defendants invoke qualified immunity, Panel-Op.64-65. "Because no other constitutionally adequate remedy for takings of personal property by local governments exists here," the panel held "that the Takings Clause directly provides for judicial relief." Panel-Op.66. The panel also held that this new cause of action borrows Georgia's four-year statute of limitations for inverse-condemnation actions, not Georgia's two-year statute of limitations for personal-injury torts. Panel-Op.12-15.

Chief Judge Pryor dissented. He thought the majority's recognition of a cause of action directly under the Constitution was wrong as an original matter, contradicted Supreme Court precedent, and "usurp[ed]" legislative power. Panel-Dis.1. The majority found this new cause of action for the first time, he noted, even though property owners "enjoy more remedies for takings than ever before." Panel-Dis.27. And along the way, the majority's analysis left "constitutional wreckage" in its wake. Panel-Dis.35.

The full Court granted rehearing and vacated the panel's opinion. CA11-Doc.84. It asked the parties to brief "[w]hether the district court's judgment in this case should be affirmed, and why or why not that is so." CA11-Doc.86.

## STANDARD OF REVIEW

This Court reviews denials of motions for leave to amend for abuse of discretion. *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262 (11th Cir. 2004). It decides "futility" de novo. *L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323, 1328 (11th Cir. 2020). Leave is futile if the amended complaint would still be dismissed. *Id.* at 1332. In considering leave to amend, courts consider the specific amendments that the plaintiff actually proposed. *Coventry First v. McCarty*, 605 F.3d 865, 870 & n.3 (11th Cir. 2010).

## SUMMARY OF ARGUMENT

After his horses were allegedly not returned in April 2018, Fulton had three chances to plead a viable claim. His original complaint sued the county under §1983, but it failed to plead a policy or custom under *Monell*. His first proposed amendment tried to sue the county under the Takings Clause itself, but no such cause of action exists—either expressly in the text, or by judicial implication given Fulton's many adequate ways to get just compensation. Even if that cause of action existed, it remains futile under the correct, two-year statute of limitations. And though Fulton tried to amend his complaint one more time, none of his proposed amendments included any of the changes he proposes for the first time on rehearing en banc. The district court did not err in rejecting the amendments that Fulton did propose, let alone abuse its discretion by not accepting amendments that Fulton never proposed.

**I.** Fulton's amendment against the county was futile because the Takings Clause has no cause of action that lets private plaintiffs sue the government for damages in federal court. "Constitutional rights do not typically come with a built-in cause of action

to allow for private enforcement in courts." *DeVillier*, 601 U.S. at 291. They are "generally invoked defensively in cases arising under other sources of law, or asserted offensively pursuant to an independent cause of action designed for that purpose," like "§1983." *Id.* The Takings Clause is not the Constitution's lone outlier. These twelve words in the Fifth Amendment create a right and even reference a remedy, but nothing in the text empowers anyone to sue any defendant in any court. Holding otherwise would contradict the Supreme Court. And it would contradict what Justice Barrett called "a mountain of historical evidence," including that Congress "didn't provide for federal question jurisdiction until 1875," didn't waive sovereign immunity until 1887, and spent 100 years handling just compensation outside of court through "private bills." O.A.-Tr. 8, *DeVillier*, 601 U.S. 285 (No. 22-913).

Though some believe courts should imply or create a cause of action under the Takings Clause when property owners have no adequate way to get just compensation, Fulton affirmatively refuses to advance that theory here. He agrees that he has other adequate ways to get just compensation, including a §1983 claim against individual defendants and multiple claims under Georgia law. Though the panel disagreed, it mistakenly assessed adequacy using a "micro focus" on Fulton rather than a "macro focus" on the remedies available to all property owners in his position. *Johnson v. Terry*, 119 F.4th 840, 860 (11th Cir. 2024) (citing *Egbert v. Boule*, 596 U.S. 482, 497 (2022)). And the panel's proposed solution—creating a new cause of action, shorn of all the proce-

dural requirements that Fulton violated—is itself unconstitutional. The power to "determine the appropriate vehicle for remedying constitutional wrongs" belongs to "the coequal legislative and executive branches, not the courts." *Carrin v. Strong*, 2026 WL 2122909, at *7 (11th Cir. July 23).

**II.** Even if this Court agrees that Fulton has a cause of action under the Takings Clause, it should affirm because that cause of action would be untimely. Takings claims brought under §1983 and *Bivens* borrow the statute of limitations for personal-injury torts, which is two years in Georgia. Any takings claim brought directly under the Constitution should do the same. Yet Fulton waited longer than two years to sue. And though he presses new theories for why his takings claim would be timely, those arguments were not preserved below. Plus they are wrong.

**III.** If Fulton lacks a timely cause of action under the Takings Clause, he certainly shouldn't get to amend his complaint to add other claims or defendants that he never tried to add below. Throughout this case, Fulton has been represented by counsel. He could have made the amendments he's proposing now; but despite two bites at the apple, he never proposed them to the district court. That court did not abuse its discretion by considering only the amendments Fulton sought leave to make. And the amendments he belatedly raises now have plausibility and jurisdictional problems of their own.

The district court's judgment should be affirmed.

## ARGUMENT

The district court correctly denied Fulton leave to add a claim against the county directly under the Takings Clause. Criticizing the panel opinion in his favor, Fulton says this cause of action is already in the Constitution, ready to use regardless of whether he has alternative ways to seek just compensation. He also asks this Court to hold that his claim is timely, though he raises all new arguments that he did not preserve below. And if all else fails, Fulton asks this Court to make the district court let him amend in brand-new ways. Because these arguments reveal no error or abuse of discretion, "the district court's judgment in this case should be affirmed." CA11-Doc.86.

### I. The district court correctly held that Fulton's amendment was futile because he lacks a cause of action directly under the Takings Clause.

A cause of action lets a class of plaintiffs enforce a right in court. *Davis v. Passman*, 442 U.S. 228, 239 n.18 (1979). To make his proposed amended complaint not futile, Fulton needs the Takings Clause to give him a *federal* cause of action to sue *the government* for *damages*. "Federal" because his amendment sought to proceed in federal court, where jurisdiction could exist only under 28 U.S.C. §1331. EB-Br.59 n.13. "The government" because his amendment sought to sue the county, not any individual defendant. R.26 at 5. And "damages" because his amendment sought just compensation for an alleged taking in the past, not any forward-looking relief. Panel-Op.61; Panel-Dis.7. Causes of action can be express or implied, though the latter are disfavored to the point of near extinction. *Johnson*, 119 F.4th at 848 & n.2. Fulton has neither kind.

### A. The Takings Clause does not have an express cause of action.

Fulton says the "text" of the Takings Clause creates a cause of action to sue the government for just compensation in federal court. EB-Br.18-19. In other words, the Fifth Amendment has an express cause of action (and the Fourteenth Amendment incorporated an express cause of action against the States) that plaintiffs can use regardless of the adequacy of their other remedies. EB-Br.4-5, 19, 51. That position is refuted by constitutional text, history, and precedent.

**1.** The Takings Clause says "nor shall private property be taken for public use, without just compensation." U.S. Const., amend. V. The text states an individual right: a broad rule (no takings) followed by an exception (payment of just compensation). This phrasing—rule, followed by exception—is used throughout the Bill of Rights. *See, e.g.*, U.S. Const., amend. V ("No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment"); *id.* ("nor be deprived of life, liberty, or property, without due process of law"); amend. III ("No Soldier shall, in time of peace be quartered in any house, without the consent of the Owner"); amend. IV ("no Warrants shall issue, but upon probable cause"). Each time, the exception just qualifies the right: The government *can* charge someone with a capital offense if it uses an indictment, *can* deprive someone of life if it provides due process, *can* quarter troops if the homeowner consents, and so on. *Contra* EB-Br.19, 21. For the Takings Clause,

too, the government does not violate the Constitution if it pays just compensation before taking private property for a public use. *City of Monterey v. Del Monte Dunes at Monterey*, 526 U.S. 687, 710 (1999).

Nothing in the twelve words of the Takings Clause remotely creates a cause of action. No court is mentioned, no permission to sue is given, no classes of litigants are identified, nothing. As the Supreme Court said about the Supremacy Clause, the Takings Clause "does not create a cause of action" because its text "is silent regarding who may enforce [its requirements] in court, and in what circumstances they may do so." *Armstrong v. Exceptional Child Ctr.*, 575 U.S. 320, 325 (2015). The other "[c]onstitutional rights" in the Bill of Rights likewise have no "built-in cause of action." *DeVillier*, 601 U.S. at 291. And contra Fulton, the Fifth Amendment's "prohibition of the taking of private property for public use without compensation is no more sacred than" those other rights. *Schillinger v. United States*, 155 U.S. 163, 168 (1894).

True, "just compensation" has been described as a "remedy." EB-Br.18. But "the question whether a litigant has a 'cause of action' is analytically distinct and prior to the question of … relief." *Davis*, 442 U.S. at 239 & n.18. A "remedy" is something that can be obtained once a plaintiff has a cause of action, "not a cause of action" itself. *FS Credit Opportunities Corp. v. Saba Cap. Master Fund*, 146 S.Ct. 1546, 1554 (2026); *see* Panel-Dis.9 ("A constitutional reference to a remedy, without more, does not mean that the Constitution creates a right of action for that remedy."). Unlike the panel majority, Fulton does not try to analogize "just compensation" to "the other textually guaranteed remedy

in the Constitution: the writ of habeas corpus." Panel-Op.67. That analogy only disproves his theory. The Supreme Court has "long recognized that 'the power to award the writ by any of the courts of the United States, *must be given by written law*.'" *Felker v. Turpin*, 518 U.S. 651, 664 (1996) (emphasis added; quoting *Ex parte Bollman*, 8 U.S. 75, 94 (1807) (Marshall, C.J.)).

Also true, the right to just compensation has been described as "self-executing." EB-Br.34. But most rights in the Constitution are "self-executing," meaning they *bind* state and federal governments of their own force, "without" the need for authorizing "legislation." *Civil Rights Cases*, 109 U.S. 3, 20 (1883); *accord City of Boerne v. Flores*, 521 U.S. 507, 524-25 (1997). If Congress takes property without paying, then it has violated the Takings Clause, regardless of whether anyone can sue. *First Eng. Evangelical Lutheran Church of Glendale v. L.A. Cnty.*, 482 U.S. 304, 315 & n.9 (1987). Even when a constitutional right is "self-executing," "legislation" is still needed "to prescribe proper modes of redress for its violation." *Civil Rights Cases*, 109 U.S. at 20. The Takings Clause is no different. Statements about the "'self-executing'" nature of the right "do not directly confront whether the Takings Clause provides a cause of action," since "the substantive right to just compensation" is different from "the procedural vehicle by which a property owner may seek to vindicate that right." *DeVillier*, 601 U.S. at 291; *accord Hart and Wechsler's The Federal Courts and the Federal System* 912 (8th ed. 2025).

In short, the text of the Fifth Amendment bans takings without just compensation, but it does not "prescrib[e] any mode in which the amount of compensation

should be ascertained." *Beekman v. Saratoga & Schenectady R.R.*, 3 Paige Ch. 45, 75 (N.Y. Ch. 1831). Justice Brennan—in the "dissent" that was later "adopted" by the Supreme Court in "*First English*," *Knick*, 588 U.S. at 192-93—put it this way: The Takings Clause "does not embody any specific procedure or form of remedy" or "'enshrin[e] old or new niceties regarding "causes of action."'" *San Diego Gas & Electric Co. v. City of San Diego*, 450 U.S. 621, 660 (1981) (Brennan, J., dissenting) (quoting *United States v. Dickinson*, 331 U.S. 745, 748 (1947)). As with all questions on which the Constitution is silent, the founding generation never voted to take this question away from the people. They "intended to leave that subject to be regulated by law, as it had been before that time; or in such other manner as the legislature, in their discretion, might deem best." *Beekman*, 3 Paige Ch. at 75; *accord Livingston v. Mayor of N.Y.*, 8 Wend. 85, 102 (N.Y. 1831).

**2.** History confirms that the Takings Clause contains no express cause of action. From the founding until the ratification of the Fourteenth Amendment, the Takings Clause applied only to the federal government. *Barron ex rel. Tiernan v. Mayor of Baltimore*, 32 U.S. 243, 250-51 (1833). The Constitution didn't guarantee lower federal courts would even exist, let alone create a constitutional cause of action to be filed in those courts. *Printz v. United States*, 521 U.S. 898, 907 (1997). When Congress did create the lower federal courts, it did not grant them general federal question jurisdiction until 1875. Panel-Op.31-32. Nor did Congress waive the government's sovereign immunity until 1887. Panel-Op.32. To get just compensation from the government, property owners had to convince Congress to pass a private bill. *Libr. of Cong. v. Shaw*, 478 U.S.

310, 316 n.3 (1986); *United States v. Mitchell*, 463 U.S. 206, 212-13 (1983). So for the nation's first century, "Congress retained sole responsibility for paying takings claims against the federal government." Treanor, *The Original Understanding of the Takings Clause and the Political Process*, 95 Colum. L. Rev. 782, 794 n.69 (1995). There was there was no general cause of action to sue the government for just compensation in federal court. *Knick*, 588 U.S. at 199; *Langford v. United States*, 101 U.S. 341, 343 (1879). "Such a lack of historical precedent" for a judicial remedy supposedly mandated by the Constitution is "telling." *Trump v. Anderson*, 601 U.S. 100, 113-14 (2024) (cleaned up).

When takings were litigated in federal court, they were always litigated under some *other* cause of action—not the Takings Clause itself. Sometimes Congress would pass a statute creating a procedure for getting just compensation. Baude, *Rethinking the Federal Eminent Domain Power*, 122 Yale L.J. 1738, 1765 (2013) (citing, *e.g.*, Act of Mar. 3, 1809, 2 Stat. 539). But the "typical" path to court was a "common law trespass action" against a corporation or "government official." *Knick*, 588 U.S. at 199. The plaintiff would bring a common-law action, the defendant would say his conduct was authorized by law, and the plaintiff would use the Takings Clause to nullify that defense. *Id.*; *e.g.*, *Thacher v. Dartmouth Bridge Co.*, 35 Mass. 501, 501-03 (1836). When the conditions for diversity jurisdiction were met, these cases could be heard in federal court; but the source of the plaintiff's cause of action was the common law, not the Takings Clause. *Knick*, 588 U.S. at 199; Lindley & West, *The Takings Clause Cause of Action*, at 11, 42, 79 Stan. L. Rev. (forthcoming 2027), ssrn.com/abstract=6790158. These common-law

forms of action were notoriously rigid. Lindley & West 12. And they did not let the plaintiff recover just compensation per se; the plaintiff could get only "retrospective damages" and injunctive relief. *Knick*, 588 U.S. at 199. Why accept these limits if the Takings Clause had its own, broader cause of action against the deeper-pocketed government that plaintiffs could freely use instead? Fulton has no answer.

That courts confronted with common-law actions could enforce the Takings Clause defensively explains why Fulton's scattered quotations from history don't support him. When Madison said constitutional rights would be guarded by "independent tribunals of justice," he was not talking about the Takings Clause specifically. Madison, *Amendments to the Constitution* (June 8, 1789), Founders Online, perma.cc/3VQW-6DXG. Like the rest of the Bill of Rights, he meant that courts would enforce the Takings Clause *defensively* when plaintiffs sued individual defendants under common-law actions. Far from rendering the Takings Clause an "empty promise," EB-Br.34, the founders would have deemed "constitutional remedies" "unnecessary" ""because the Constitution presupposed a going legal system, with ample remedial mechanisms, in which constitutional guarantees would be implemented,"' *Hart & Weschler* 911 (quoting Fallon & Meltzer, *New Law, Non-Retroactivity, and Constitutional Remedies*, 104 Harv. L. Rev. 1731, 1779 (1991)). If the founders meant for the Takings Clause to create some new cause of action that superseded the established regime, someone would have mentioned that innovation somewhere. *But cf.* Sax, *Takings and the Police Power*, 74 Yale L.J. 36, 58 (1964) ("contemporaneous commentary" concerning the Takings Clause "is in

very short supply"). Yet Fulton cites nothing like that, just generic quotes about the importance of just compensation. *See* EB-Br.23-28.

And again, the common-law actions were filed against individual defendants, not the federal government itself. The latter could not be sued until the Tucker Act waived sovereign immunity in 1887. 24 Stat. 505 (Mar. 3, 1887). After the Tucker Act, plaintiffs could bring certain takings claims against the United States. But the cause of action came from the "common law" (under a theory of "implied contract"), not from the Takings Clause. *Me. Cmty.*, 590 U.S. at 333 n.3 (Alito, J., dissenting). When an "ingenious" litigant argued that no contract was needed because the Takings Clause itself was the cause of action, the Supreme Court rejected that argument as "unsound." *Hooe v. United States*, 218 U.S. 322, 335 (1910). "It cannot be said that *any* claim for a specific amount of money against the United States is founded on the Constitution, unless such claim be either expressly or by necessary implication authorized by some valid enactment of Congress." *Id.* (emphasis added). *Contra* Panel-Op.69-70. "The Constitution is 'intended to preserve practical and substantial rights, not to maintain theories,'" least of all the "old or new niceties regarding 'causes of action.'" *Dickinson*, 331 U.S. at 748.

Fulton admits that, for at least a century, plaintiffs could not sue the federal government for just compensation, and that they had to ask Congress for a private bill. EB-Br.28. Fulton says Congress had no '"discretion to deny takings claims mandated by the Takings Clause.'" EB-Br.28. But the question is not whether the Takings Clause binds Congress, but whether it creates a cause of action to sue the government for damages

in court; and the nation answered that question "no" by leaving just compensation to Congress alone. Panel-Dis.20-23; *see* 2 Cowen et al., *The United States Court of Claims: A History* 45 (1978) ("Congress was neither compelled to act, nor to act favorably"). Fulton says the unavailability of a judicial remedy "simply reflected uncertainty at the time about the federal government's sovereign immunity." EB-Br.28-29. There was no uncertainty: Sovereign immunity was "universally" accepted and "'well settled.'" *Cohens v. Virginia*, 19 U.S. 264, 411-12 (1821) (Marshall, C.J.); *Glidden Co. v. Zdanok*, 370 U.S. 530, 562-64 (1962) (plurality) (quoting *Williams v. United States*, 289 U.S. 553, 573 (1933)). More to the point, Fulton cannot explain why sovereign immunity—a constitutional background principle—could justify denying a cause of action that is supposedly mandated by the Takings Clause. Sovereign immunity carried the day precisely because the Fifth Amendment has no express cause of action. Lindley & West 27; Panel-Dis.15.

Because the Fifth Amendment has no cause of action to sue the government for just compensation in federal court, Fulton cannot claim that the *Fourteenth* Amendment created that cause of action through incorporation. *Cf.* EB-Br.29-34. Incorporation does not work that way. Either the "incorporated" Takings Clause must "apply identically to the States and the Federal Government," *McDonald v. City of Chicago*, 561 U.S. 742, 766 n.14 (2010), meaning the lack of a cause of action under the Fifth Amendment also defeats one under the Fourteenth Amendment, *see DeVillier*, 63 F.4th at 421 (Higginson, J., concurral). Or the lack of any historical precedent for a cause of action under

the Fifth Amendment means it is not the kind of "'deeply rooted'" right that the Fourteenth Amendment could incorporate. *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 238 (2022); *see DeVillier*, 63 F.4th at 421-22 & nn.2-3 (Higginson, J., concurral).

Even if changes in original public meaning could make an incorporated right differ from the original right, nothing about the legal regime for takings meaningfully changed between the ratification of the Bill of Rights in 1791 and the Fourteenth Amendment in 1868. *Cf. N.Y. Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 82 (2022) (Barrett, J. concurring). As with federal law, States applying their own takings clauses allowed plaintiffs to bring common-law actions against individual defendants (where the state constitutional right was invoked defensively), and disallowed damages actions against the government itself (due to sovereign immunity). Brauneis, *The First Constitutional Tort: Remedial Revolution in Nineteenth-Century Just Compensation Law*, 52 Vand. L. Rev. 57, 67-73 (1999); Panel-Dis.24-26, 15. Even when States "began" letting property owners sue them for damages "in the 1870s," those causes of action were "implied," not express in the state constitutions. *Knick*, 588 U.S. at 200. And that practice sheds little light on the existence of a federal cause of action under the Fourteenth Amendment both because it arose "long after ratification," Lindley & West 27, and because state "'common-law courts'" can imply causes of action in ways that "'federal tribunals'" with limited and separated powers cannot, *Hernandez v. Mesa*, 589 U.S. 93, 100-01 (2020).

The same goes for Fulton's focus on the "gradual abolition of the forms of action" that occurred "'from 1848 … to 1937.'" EB-Br.31, 29 (quoting Laycock, *How*

*Remedies Became a Field: A History*, 27 Rev. Litig. 161, 171 (2008)). That "slo[w]" process did not culminate in federal court until the Federal Rules of Civil Procedure were adopted in 1937, Laycock 171, which is too long after the Fourteenth Amendment to count, Lindley & West 12-13. And even after the Federal Rules merged law and equity into "one form of action," Fed. R. Civ. P. 2, plaintiffs' causes of action still arose *outside* the Takings Clause itself, Lindley & West 12-13.

Fulton also ignores the most significant cause-of-action development in this era: the passage of §1983. True, Representative Bingham thought the Fourteenth Amendment should extend the Takings Clause to the States. EB-Br.32-33. But after extending the Bill of Rights to the States in section 1 of the Fourteenth Amendment, section 5 gave Congress the power to enforce those rights through legislation. The "remedy" to the problem of States "t[aking] property without compensation," Bingham said, was for Congress to "*by law* provide against all such abuses and denials of right" via §1983. Cong. Globe, 42d Cong., 1st Sess. App. 85 (1871) (emphasis added). That the Reconstruction Congress created a federal cause of action for takings further proves that, contra Fulton, the cause of action wasn't already in the constitutional text.

**3.** Under the caselaw, this Court is not free to hold that the Takings Clause has an express cause of action. In *Maine Community Health Options v. United States*, eight Justices opined that "[t]he Constitution did not expressly create a right of action when it mandated 'just compensation' for Government takings." 590 U.S. at 323 n.12 (cleaned up). This statement in footnote 12 of *Maine Community* was unanimous. (Justice Alito

dissented, but he agreed on this point. *See id.* at 334 n.3.) Though Fulton now claims the Takings Clause contains a cause of action in its "text," EB-Br.18-19, his brief never even cites *Maine Community*'s unanimous rejection of that theory.

*Maine Community*'s rejection of an express cause of action cannot be dismissed as "dicta." *Cf.* Panel-Op.69. To paraphrase a recent decision of this Court, "Justice [Sotomayor] offered footnote [12]" of *Maine Community* "as a direct response to Justice [Alito's dissent]." *Littlejohn v. Sch. Bd. of Leon Cnty.*, 132 F.4th 1232, 1241 (11th Cir. 2025); *see Me. Cmty.*, 590 U.S. at 323 n.12. "So the Court's reasoning … was necessary to the opinion's central rationale" and thus is "binding." *Littlejohn*, 132 F.4th at 1241. "[E]ven if it were dicta," this Court has "long distinguished between 'dicta' and 'Supreme Court dicta.'" *Id.* Near-unanimous "'dicta from the Supreme Court is not something to be lightly cast aside,'" *Williams v. Shapiro*, 161 F.4th 1313, 1319 (11th Cir. 2025); and it should be followed here, given its confirmation in the text, history, and precedent, *e.g.*, *Dickinson*, 331 U.S. at 748.

*DeVillier* confirms that *Maine Community*'s rejection of an express cause of action is correct. In *DeVillier*, the Supreme Court granted certiorari to decide whether a plaintiff can sue directly under the Takings Clause when he "no" other cause of action for just compensation. 601 U.S. at 287-88, 292-93. That premise—that the plaintiff had no alternative remedy—was part of the question presented for a reason. Whether the Takings Clause creates a cause of action when a property owner *has* an alternate remedy is not hard, as at least eight Justices had just opined in *Maine Community*. But *DeVillier*

divided the Fifth Circuit because those judges assumed that the plaintiff had no other way to get just compensation. States cannot be sued under §1983; and when that plaintiff sued Texas in state court under the Takings Clause itself, Texas removed to federal court and got the takings claim dismissed on the merits because the plaintiff lacked a cause of action. 63 F.4th at 426-30 (Oldham, J., dissental). As Judge Oldham stressed at least nine times in his dissent, that result left the plaintiff unable to assert "any federal takings claim against any State in federal *or state* court." *Id.* at 426; *accord id.* ("state or federal court"); *id.* at 430, 439, 440, 441 ("any forum, state or federal"); *id.* at 432, 438, 439 ("any court at any time").

After it became clear that the plaintiff in *DeVillier* had an alternate remedy, the courts' disposition of the case was telling. At oral argument in the Supreme Court, Texas agreed it "would not oppose" an amended complaint that added a claim against the State under a "state-law inverse-condemnation cause of action." 601 U.S. at 293. That concession meant the case did "not require [the Court] to resolve" whether "a plaintiff has a cause of action arising directly under the Takings Clause," since "constitutional concerns *do not arise* when property owners have other ways to seek just compensation." *Id.* at 292 (emphasis added). The Court remanded for the plaintiff to "proceed under Texas' state-law cause of action." *Id.* at 288; *accord id.* at 293 (remanding for the plaintiff to proceed "through the cause of action available under Texas law"). If Fulton were right that plaintiffs can always sue under the Takings Clause irrespective of their other remedies, then *DeVillier* could not have instructed the plaintiff to proceed only under a

state-law cause of action. The plaintiff in *DeVillier* preferred to stay in federal court and, on remand, tried to maintain his federal cause of action directly under the Takings Clause. But the district court rejected that cause of action as "'clearly foreclosed'" by the Supreme Court's decision in the case. 2026 WL 21512, at *3-4 (S.D. Tex. Jan. 5), *adopted*, 2026 WL 967637 (S.D. Tex. Apr. 9).

Fulton has no precedent on his side. His analogy to *Ex parte Young* doesn't work. *Cf.* EB-Br.19-22. *Ex parte Young* is a modern, "judge-made" cause of action in equity that lets plaintiffs sue to enjoin unconstitutional actions by individual officers; it is "not" an "implied right of action" under the Constitution itself. *Armstrong*, 575 U.S. at 327. The Supreme Court made this point in *DeVillier* about takings specifically, distinguishing the very same cases that Fulton cites here. *Compare* EB-Br.33*, with* 601 U.S. at 292. These "equitable" cases do not support a cause of action for just compensation, the Court explained, because just compensation is a "damages" remedy that "is legal, not equitable, in nature." 601 U.S. at 292; *see Seminole Tribe of Fla. v. Fla. Dep't of Rev.*, 750 F.3d 1238, 1245 (11th Cir. 2014) ("When … prospective relief is the 'functional equivalent of money damages,' *Ex parte Young* does not apply."). This Court's decision in "*Maron* is distinguishable" for the same reason, since the plaintiffs there "sought only prospective relief." *Lavina v. Prepaid Coll. Bd.*, 174 F.4th 49, 53 (11th Cir. 2026); *see Maron v. Chief Fin. Officer of Fla.*, 136 F.4th 1322, 1334 (11th Cir. 2025) (stressing that "the Marons' taking claim sought not damages but prospective relief"). *Contra* EB-Br.20-21. For similar reasons, Fulton could not proceed in equity under basic equitable principles.

His ability to get just compensation through other causes of action would *defeat* his right to equitable relief, since injunctions are not available when the plaintiff has an "adequate remedy at law." *Knick*, 588 U.S. at 200-01. Today, a property owner who wants to bring a takings claim in federal court against his local government must sue "under §1983." *Id.* at 206, 185, 189, 191, 194, 202.

### B. Federal courts cannot create an implied cause of action for Fulton.

Because the Takings Clause does not have an express cause of action, this Court can end its analysis there. As explained, jurists debate whether courts can create or imply a cause of action under the Takings Clause when a property owner has no adequate alternative way to get just compensation. But Fulton refuses to join that debate. *See* EB-Br.48-51. He *concedes* that he "has other viable claims" that could "remedy the County's unconstitutional taking," EB-Br.47 n.10, including a §1983 claim against the county, a §1983 claim against individual officials, and two claims under Georgia law, EB-Br.59-60, 54. Under the "'principle of party presentation," this Court should honor Fulton's "all-or-nothing approach." *Edwards v. Grubbs*, 179 F.4th 909, 936 (11th Cir. 2026). It should hold that, at least when a property owner has adequate alternative ways to get just compensation, he has no cause of action under the Takings Clause; and because all agree that Fulton has adequate alternatives, he cannot sue under the Constitution.

The county appreciates, though, that this Court might want to go further. As Fulton notes, this Court is "'not required to accept a concession when the law and record do not justify it.'" EB-Br.60 n.14 (quoting *United States v. Linville*, 228 F.3d 1330,

1331 n.2 (11th Cir. 2000)). The panel ignored a similar concession by Fulton and assessed at length whether he had adequate alternative remedies. *See* Panel-Op.10-12. And after this Court spends the time and resources going en banc, it might prefer not to leave this important, recurring question about the Takings Clause partially unanswered. For the sake of completeness, then, the county will address whether courts can create or imply a cause of action under the Takings Clause for Fulton. They cannot.

**1.** If federal courts can ever imply a cause of action directly under the Takings Clause, they cannot do so when property owners have at least one adequate alternative way to get just compensation. *E.g.*, *Stevens v. Proprietors of Middlesex Canal*, 12 Mass. 466, 468 (1815) (State can provide one "mode of redress" for takings and withdraw all others); *Null v. White Water Valley Canal Co.*, 4 Ind. 431, 435 (1853) (similar). Under *DeVillier*, the "constitutional concerns" that might trigger a cause of action "do not arise when property owners have other ways to seek just compensation." 601 U.S. at 292. The panel majority agreed. Panel-Op.10-11. As do this Court's precedents. "Where a statute provides an adequate remedy," this Court "will not imply a judicially created cause of action directly under the Constitution." *GeorgiaCarry.Org*, 687 F.3d at 1253 n.15 (First Amendment); *accord Williams v. Bennett*, 689 F.2d 1370, 1390 (11th Cir. 1982) (same for Eighth and Fourteenth Amendments). For the Takings Clause, too, no "substantial constitutional question" arises when the plaintiff has at least one "avenue of redress." *Harbert Int'l v. James*, 157 F.3d 1271, 1278 (11th Cir. 1998).

**2.** Property owners like Fulton have many adequate ways to get just compensation. If the county takes property under an official policy or custom, then owners can sue the county for damages under §1983; and if owners cannot prove an official policy or custom, then they can sue individual officials for damages under §1983. Panel-Dis.3. Fulton agrees. EB-Br.59-60. Section 1983 is certainly an adequate remedy. *See GeorgiaCarry.Org*, 687 F.3d at 1253 n.15; *Azul-Pacifico, Inc. v. City of L.A.*, 973 F.2d 704, 705 (9th Cir. 1992). That direct cause of action is far better for property owners than the rigid, common-law remedies that let them raise the Takings Clause defensively at the founding. Common-law remedies are available today too, including state-law damages claims like conversion. OCGA §51-10-1; *see* Panel.Dis.4-5, 32. And owners also have the more modern remedy of a state-law inverse-condemnation claim, *Diversified Holdings v. City of Suwanee*, 302 Ga. 597, 605 (2017); Panel-Dis.5—the same remedy that *DeVillier* deemed constitutionally adequate. Once again, Fulton agrees. EB-Br.54.

The panel majority disagreed, but only by asking the wrong question. The majority marched through Fulton's alternate remedies and explained why, in its view, the county had winning procedural defenses to each one. Panel-Op.10-11, 54-66. But the constitutional question is whether federal courts should create or imply a cause of action under the Takings Clause because the existing "system" for awarding just compensation is constitutionally inadequate. *Bush v. Lucas*, 462 U.S. 367, 388 (1983). "That question obviously cannot be answered simply by noting that existing remedies do not provide complete relief for [this] plaintiff." *Id.* "The alternative remedy question is a general one,

not a specific one," so courts "can't look at the adequacy or efficacy of the alternative remedy … in relation to a specific plaintiff." *Johnson*, 119 F.4th at 860; *accord Carrin*, 2026 WL 2122909, at *8 ("whether the [alternate remedy] is accessible or otherwise adequate to redress [the plaintiff's] grievances is … irrelevant"). Claims against individual officers, for example, are constitutionally adequate even though these defendants have "immunity" defenses. *Williams*, 689 F.2d at 1390 & n.20. Most immunity defenses are not absolute, and these defenses also existed under the founding-era regime when plaintiffs were limited to common-law torts. *See Pierson v. Ray*, 386 U.S. 547, 555-57 (1967). That regime is "the baseline against which a state or federal remedial regime" must be "assessed for adequacy." Lindley & West 35.

**3.** Even if Fulton had no adequate alternative remedy, this Court still could not create or imply a cause of action. The assumption that every violation of the Takings Clause must have a *judicial* remedy is dubious, given the nation's long reliance on Congress to enact private bills. But even if the Takings Clause forbid the elimination of all judicial remedies, this Court could not remedy that constitutional violation by doing something unconstitutional itself. *See Trump v. CASA*, 606 U.S. 831, 859 (2025) (that "everyone … is bound by law" is an "admonition" that "goes for judges too" (cleaned up)). Federal courts have no power to create an implied cause of action against the government for damages, even to vindicate constitutional rights. Nor can Fulton deny that's what he's asking this Court to do by insisting that his cause of action, unlike *Bivens*, comes from the Takings Clause itself. *Contra* EB-Br.49-50; Panel-Op.71. That argument

assumes the Takings Clause has an *express* cause of action—which, as explained, it does not. *See DeVillier*, 63 F.4th at 421 n.1 (Higginson, J., concurral).

As the Supreme Court has made increasingly clear, federal courts cannot create "any implied causes of action in the Constitution." *Egbert*, 596 U.S. at 502. The notion that courts have this "power" would have "confounded" the founding generation. *Cisco Sys. v. Doe I*, 146 S.Ct. 1882, 1892 n.3 (2026). Though the Court "at one time permitted" it, the Court has "since rejected the practice" because it conflicts with the Constitution's "separation of legislative and judicial power." *Id.* at 1890 (cleaned up). Just last term, the Court twice made it clear that "Congress determines who may sue to enforce federal law," *FS Credit*, 146 S.Ct. at 1552, and "the power to create causes of action belongs to Congress," *Cisco*, 146 S.Ct. at 1890. "Courts engaged in" the "unenviable task" of implying causes of action under the Constitution "must evaluate a range of policy considerations at least as broad as the range a legislature would consider." *Egbert*, 596 U.S. at 491 (cleaned up). And making these legislative choices is not a judicial function.

The panel's opinion proves the problem. Once the majority decided that Fulton needed a cause of action, the panel signed this Court up for a long list of fundamentally "'legislative'" tasks. Panel-Dis.34. The panel immediately had to ask and answer at least the following questions:

- Which plaintiffs can use this cause of action?
    - Property owners who cannot recover under any other state or federal cause of action. How to assess that threshold question is murky. It might

be enough that the plaintiff's right to relief is uncertain because "the state supreme court has not ruled on the issue." Panel-Op.62.

- What is the statute of limitations?
  - Four years in Georgia, even though the same claim would have a two-year statute of limitations under §1983 and *Bivens*. Panel-Op.12-15 & n.5.
  - The 12-month presentment deadline for counties does not apply. Panel-Op.13 n.4, 63.
- Which defendants can be sued under this cause of action?
  - Yes counties. Panel-Op.68.
  - Yes States, Panel-Op.60 n.23, contra the position of every State to address the issue. *E.g.*, CA11-Doc.59 (Georgia); *DeVillier*-Resp't-Br., 2023 WL 8809537 (Texas); *DeVillier*-States-Amicus-Br., 2023 WL 8900795 (17 other States).
  - Probably the United States, contra the position of the federal government across many administrations. *See, e.g.*, *DeVillier*-USA-Amicus-Br., 2023 WL 8652912.
- What defenses are available?
  - Not sovereign immunity. Panel-Op.66-68.
  - Not *Monell*. Panel-Op.59-60, 63 n.25.
  - Not qualified immunity. Panel-Op.64-65.
  - Not official immunity under state law. Panel-Op.65.
- What remedies are available?
  - Yes damages, Panel-Op.39, 53, 71, though what kind and whether other relief is available are unclear, Panel-Op.43 & n.12.
  - Probably not attorney's fees. *Cf.* Panel-Op.72.

To be sure, courts *can* answer these questions. But when they do, they are not acting like courts, Panel-Dis.34, and they are not equipped to balance the competing policy considerations or to "predict the 'systemwide' consequences," *Egbert*, 596 U.S. at 493.

Worse, in answering these questions, the panel "upset the careful balance" that the people's elected representatives actually struck. *Hernandez*, 140 S.Ct. at 742. For example, *Monell* recognizes that, when Congress passed §1983, it chose not to make counties liable under a theory of respondeat superior. *See Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 692-93 (1978). *Monell*'s policy-or-custom requirement ensures that a county is liable "only for acts for which the county is actually responsible." *Grech v. Clayton County*, 335 F.3d 1326, 1329 (11th Cir. 2003) (en banc) (cleaned up). Without it, "virtually every" wrongdoing by a county official would become a case against the deeper-pocketed county, even when the county did nothing wrong and could not have prevented the misconduct. *City of Canton v. Harris*, 489 U.S. 378, 391-92 (1989). Yet the panel jettisoned *Monell* from its cause of action, reasoning that "Congress can't prescribe an exclusive remedy for uncompensated takings that is more restrictive than the Takings Claus[e].'" Panel-Op.60, 63 n.25.

That move was impermissible. Implied causes of action are supposed to conform to written laws, not circumvent their requirements. *See Dean v. Gladney*, 621 F.2d 1331, 1336 (5th Cir. 1980) (holding that, because *Monell* applies to §1983's express cause of action, it must also apply to *Bivens*' implied cause of action). Federal courts "cannot recognize an implied cause of action beyond what is statutorily authorized," *Carrin*, 2026 WL 2122909, at *8, and they "cannot recognize" these causes of action period when "Congress already has provided an alternative remedial structure," *Egbert*, 596 U.S. at 493 (cleaned up). Separately, if *Monell* conflicts with the Takings Clause, then the proper

judicial remedy would have been to nullify the *Monell* defense under §1983. *See* Lindley & West 35. In *Harbert*, for example, this Court asked whether it should set aside a sovereign-immunity defense under §1983 as inconsistent with the Takings Clause, not whether it should imply a new cause of action under the Takings Clause that has no sovereign-immunity defense. 157 F.3d at 1278-79. But Fulton has never argued that applying *Monell* to takings claims makes §1983 unconstitutional. *Cf.* Fed. R. Civ. P. 5.1 (requiring notice to the U.S. Attorney General when the constitutionality of a federal statute is questioned). In fact, imposing respondeat-superior liability on counties would *create* "constitutional problems" under the anti-commandeering doctrine, "implicat[ing] serious questions of federalism." *Monell*, 436 U.S. at 693; *Harris*, 489 U.S. at 392.

Thankfully, none of these thorny issues need to be resolved here—or anywhere, anytime soon. In the year 2026, property owners have more ways to get just compensation than ever before. Panel-Dis.27. Those remedies are plentiful and adequate, as even Fulton now agrees. So if federal courts can ever recognize a cause of action under the Takings Clause, they cannot do so under the legal regime in place today. *See* Lindley & West 37.

## II. Fulton's new takings claim is also untimely.

If the Court holds that Fulton has a cause of action, then the county agrees with Fulton's suggestion that it also "resolve the parties' dispute over the applicable statute of limitations." EB-Br.35 n.8. If Fulton has no cause of action, this Court should just affirm the district court's ruling on that ground. Ruling on untimeliness alone seems

artificial, since this Court would have to choose the statute of limitations for a cause of action without deciding whether that cause of action even exists. And it could be detrimental by signaling that the Court thinks this cause of action *does* exist.

If the Court does resolve timeliness, then Fulton is right that it should resolve "*the parties'* dispute," EB-Br.35 n.8 (emphasis added), not some new dispute that Fulton never raised below. In the district court, Fulton did not raise any of the timeliness theories he presses on appeal.

When the county moved to dismiss his original complaint as untimely, Fulton first said the clock did not start until the Supreme Court decided *Knick*. R.25 at 9-13. Fulton does not press that point on appeal, thus forfeiting it. *United States v. Campbell*, 26 F.4th 860, 871 (11th Cir. 2022) (en banc).

Fulton's only other theory was that the clock did not start until 30 days after his criminal charges were dismissed, since OCGA §17-5-54(c)(2) gives law enforcement 30 days to return property. R.25 at 13-14. Fulton consigns this point to a footnote on appeal, forfeiting it too. *Pinson v. JPMorgan Chase Bank*, 942 F.3d 1200, 1209 n.5 (11th Cir. 2019). Fulton omits that the district court resolved this point *against* him when it granted the district attorney's motion to dismiss, a ruling that Fulton declined to appeal. R.55 at 11-15; *see* R.57 at 1-2. As the district court correctly explained, Fulton "does not fall within the scope of the subsection he cites," R.55 at 15, as that subsection applies only after "a final verdict and judgment is entered finding a defendant guilty" and only as to property "used as evidence in the trial," OCGA §17-5-54(c)(2). Fulton's horses

were never used as evidence in a trial that ended in a final verdict of guilt. R.1 at 4 ¶¶13-18. Contra Fulton, it is not "reasonable" to read this statutory language to cover a dismissal with no verdict of guilt, or to cover property that was not used as evidence in a trial. EB-Br.47 n.9. The very next subsection of the statute addresses property owners who do not meet these conditions, R.55 at 15; and that subsection does not help Fulton because it contains no supposed "30 day" waiting period, *see* OCGA §17-5-54(c)(3).

Also in the district court, Fulton never argued for anything other than a two-year statute of limitations. In his opposition to the county's motion to dismiss, Fulton "agree[d] that the statute of limitations for §1983 claims is two years." R.25 at 6. He did not argue for a different statute of limitations in his motion to amend. And after the county's opposition explained that "[t]he parties agree that the appropriate statute of limitations is Georgia's two-year personal injury statute," R.30 at 3, Fulton never argued otherwise. He neglected to file any reply in support of his motion for leave to amend, let alone counter the county's arguments for why his amendment was futile because his new takings claim remained untimely.

For the first time on appeal, however, Fulton advances three new theories of timeliness. He says the statute of limitations for his constitutional cause of action either

1. should be four years, since federal law borrows Georgia's statute of limitations for inverse-condemnation actions;
2. never started, because the county's alleged violation of the Takings Clause is "continuing"; or
3. was tolled for two months, based on a state-court tolling provision during the pandemic.

EB-Br.35-39.

Because Fulton did not raise these theories below, this Court should reject them as forfeited. *See Rhodes v. Dep't of Veterans Affs.*, 828 F. App'x 685, 687 (11th Cir. 2020); *Barron v. Fed. Rsrv. Bank of Atlanta*, 129 F. App'x 512, 515 (11th Cir. 2005). A litigant can "strengthen" an "existing" position on appeal, but he cannot "urg[e] the appellate court to consider a universe of facts and a category of law different from those he put before the district court." *Gould v. Interface, Inc.*, 153 F.4th 1346, 1355, 1358 (11th Cir. 2025). Statute-of-limitations arguments "not raised in the district court and raised for the first time in an appeal will not be considered by this Court." *Cita Tr. Co. AG v. Fifth Third Bank*, 879 F.3d 1151, 1156 (11th Cir. 2018) (cleaned up).

Even if the Court considers Fulton's new arguments, they are incorrect. So his new takings claim remains untimely, and his amendment remains futile.

**1.** The statute of limitations for Fulton's takings claim is two years. When a federal cause of action has no statute of limitations, courts borrow one from the closest state-law analog. *Wilson v. Garcia*, 471 U.S. 261, 269-70 (1985). For a constitutional cause of action directly under the Constitution, courts would borrow Georgia's two-year statute of limitations for personal-injury torts. OCGA §9-3-33. The Takings Clause guarantees a "personal right in property," *Lynch v. Household Fin. Corp.*, 405 U.S. 538, 552 (1972), so alleged violations assert a "personal injury" to the plaintiff, *Wilson*, 471 U.S. at 280. Courts borrow this limitation period when plaintiffs bring takings claim under §1983, since all violations of constitutional rights amount to "injury to the individual

rights of the person." *Id.* at 276-77. And courts borrow this limitation period when plaintiffs bring constitutional claims under *Bivens*, another implied federal cause of action for damages. *Kelly v. Serna*, 87 F.3d 1235, 1238 (11th Cir. 1996). "There is no reason to have a different period of limitations" for causes of action vindicating the same constitutional right, and there is "a strong reason not to": It would risk "recreating the uncertainty that the Supreme Court sought to eliminate" when it announced a uniform statute of limitations for constitutional claims in *Wilson*. *Bieneman v. Chicago*, 864 F.2d 463, 469 (7th Cir. 1988); *accord Azul-Pacifico*, 973 F.2d at 705 (holding that *Wilson* would apply to any "'direct' Constitutional claim" under the Takings Clause).

While Fulton wants Georgia's four-year statute of limitations for inverse-condemnation claims, EB-Br.36-37, no caselaw supports that position. Aside from the vacated panel opinion, Fulton cannot find a single federal court that has ever adopted an inverse-condemnation statute of limitations for a federal takings claim. He asserts matter-of-factly that his "federal Takings Clause claim is, in effect, a federal inverse-condemnation claim because he seeks to recover the value of his horses that were taken by the County." EB-Br.36. But Fulton's action could just as easily be described as a personal-injury tort for damages, like conversion or trespass to chattels. *See* OCGA §51-10-1 ("any deprivation" of the possession of personal property "is a tort"); *e.g.*, *Hatahley v. United States*, 351 U.S. 173, 181-82 (1956) (treating an action against federal agents for taking horses as a tort claim for trespass). Indeed, if Fulton is right that the founders

put a cause of action in the Takings Clause itself, then the founders would have expected federal courts to borrow procedural rules from one of these familiar common-law torts—not the more modern action for inverse condemnation. *See* Brauneis 69 n.33, 109.

**2.** Under a two-year statute of limitations, Fulton's time to sue expired no later than April 5, 2020—two years after his criminal charges were dismissed and 30 days before he filed his complaint. Under *Knick*, the "right to full compensation arises at the time of the taking, regardless of post-taking remedies that may be available to the property owner." 588 U.S. at 190. Fulton's complaint alleges that the county should have returned or paid for his horses once his criminal charges were dismissed in April 2018. R.1 at 4 ¶¶15-16. Even if Fulton continued quibbling with the county about his horses after that date or filed a petition for the horses' return, *see* R.1 at 4 ¶17; EB-Br.43, his pursuit of those post-taking remedies could not stop his claim from accruing on the date of the alleged taking, *Knick*, 588 U.S. at 190.

Fulton cannot now say his clock started only after he was sure that the county's continued possession of the horses was illegal. *Cf.* EB-Br.41-44. His complaint alleges the opposite: Far from uncertainty, it says Fulton made "repeated post-dismissal efforts and requests to return the horses" after his criminal charges were dismissed on April 5, 2018. R.1 at 4 ¶17. And regardless, the clock starts when the plaintiff discovers his injury, not when he discovers that the conduct causing his injury was illegal. *Rotella v.*

*Wood*, 528 U.S. 549, 555-56 (2000). The clock started when Fulton's horses were allegedly not returned, yet Fulton waited more than two years from that point to sue. So "'it is apparent from the face of the [proposed] complaint that the claim is time-barred.'" *Staley v. Sex. Offender Registr'n Rev. Bd.*, 2023 WL 1797018, at *3 (11th Cir. Feb. 7).

Fulton also cannot say that his clock never started because the failure to pay just compensation is an "ongoing violation" of the Constitution. EB-Br.40-41. Fulton is conflating two doctrines: an "ongoing violation" that lets a plaintiff seek forward-looking relief under *Ex parte Young*, and a "continuing violation" that lets plaintiffs extend certain statutes of limitation. Because Fulton seeks damages (not an injunction) and is suing a county (not an individual officer), the principles of *Ex parte Young* are irrelevant to him. *See Odebrecht Const. v. Sec'y, Fla. Dep't of Transp.*, 715 F.3d 1268, 1289 (11th Cir. 2013); *Peters v. Zhang*, 803 F. App'x 957, 958 (7th Cir. 2020).

The continuing-violation doctrine does not apply to Fulton's claim. That doctrine distinguishes between "continuing harm (which does not extend the limitations period)" and "a continuing violation (which may extend the period)." *McGroarty v. Swearingen*, 977 F.3d 1302, 1307-08 (11th Cir. 2020). When a plaintiff "alleges only passive effects from a one-time act," he alleges a continuing harm. *Id.* at 1308 n.6. Here, Fulton's horses were allegedly taken in April 2018, R.1 at 4 ¶¶15-16—a one-time act. The county's alleged failure to pay just compensation "does not give rise to a continuing violation, as this was merely 'passive inaction' on the part of [the government], not repeated unlawful acts." *Infinium Builders LLC v. Metro. Gov't of Nashville & Davidson Cnty.*,

2024 WL 4009874, at *7 (M.D. Tenn. Aug. 30). Fulton's position would mean that, when the government takes without paying, the statute of limitations *never* expires. That's not the law. *E.g.*, *Blodgett v. United States*, 792 F. App'x 921, 926 (Fed. Cir. 2019).

**3.** Finally, Fulton cannot toll his statute of limitations by invoking an administrative order of the Georgia state courts during COVID-19. *Cf.* EB-Br.44-46. As with all the theories he advances now, Fulton forfeited this theory by never invoking it below. *See Perez v. Florida*, 519 F. App'x 995, 997 (11th Cir. 2013) (refusing to consider a "newly-raised argument" for tolling). Had Fulton raised it below, the county could have responded that Fulton cannot borrow Georgia's tolling order without also borrowing Georgia's presentment requirement for counties, *see* OCGA §36-11-1. Fulton concedes that he did not notify the county until May 30, 2019, EB-Br.56; and because the alleged taking occurred on April 5, 2018, Fulton missed the 12-month deadline by 55 days, OCGA §36-11-1. Other than miscalculating when his claim accrued, *see* EB-Br.54-57, Fulton's only response is that the county "waived" the presentment defense by failing to argue it below, EB-Br.57-58. But Fulton cannot raise new arguments on appeal and then fault the county for raising new responses to his new arguments. *Cf. Wakefield v. Cordis Corp.*, 304 F. App'x 804, 807 n.4 (11th Cir. 2008). Fairness means this Court should consider *no* new arguments on appeal, not allow new arguments from only one side. *Rollins v. Home Depot USA*, 8 F.4th 393, 398 (5th Cir. 2021).

Fulton's new argument is also wrong. When federal courts borrow state statutes of limitations for federal causes of action, they do not also borrow administrative orders

"tied specifically to the status of operations in [the] state courts." *Loeb v. Cnty. of Suffolk*, 2023 WL 4163117, at *4 (E.D.N.Y. June 23) (§1983 action); *accord Touko v. United States*, 2021 WL 2685328, at *3 n.5 (D. Md. June 29) (*Bivens* action). The cited order from Georgia's chief justice is based on conditions "in our courts," meaning the state courts under his authority. Hon. Melton, *Order Declaring Statewide Judicial Emergency* 1, S.Ct. Ga. (Mar. 14, 2020), perma.cc/YA8V-BDS7. The *federal* court in Georgia, meanwhile, issued a different order that did not toll statutes of limitation and told litigants that "[t]his Order does not affect the Court's consideration of civil or criminal motions that can be resolved without oral argument," that "[e]lectronic filings may still be made through the CM/ECF system," and that "[t]he public is encouraged to continue utilizing Court services." *N.D. Ga. General Order 20-01* (Mar. 16, 2020), perma.cc/34NW-CCSW. That federal order is what governs Fulton's federal claim in federal court. *See Loeb*, 2023 WL 4163117, at *4; *Spelta v. Bakker*, 2020 WL 2732070, at *1, *3 (D. Md. May 26).

## III. The district court did not abuse its discretion by not considering other amendments that Fulton never proposed.

Fulton concludes by seeking leave to amend writ large. He says he could amend his complaint to better plead *Monell* against the county, to bring a takings claim against individual county defendants, and to bring a procedural-due-process claim against the county. EB-Br.59-62. And once he fixes at least one federal claim, Fulton says he could amend to add state-law claims against the county. EB-Br.53-57, 59 n.13.

Fulton ignores that this Court is not the district court; it is *reviewing* a district court only for "abuse of discretion." *United States v. Classified Parking Sys.*, 213 F.2d 631, 634

(5th Cir. 1954). In the district court, Fulton filed a motion for leave to amend and included a proposed amendment against the county, which made no substantive changes other than "add[ing] an additional alternative claim" directly under the Takings Clause. R.26 at 4-5. Fulton knew the county was arguing *Monell*, but his proposed amendments did not try to plead more facts to satisfy *Monell*. R.26 at 4-5; R.18-1 at 11-12. Fulton also knew he could allege procedural-due-process claims and sue individual defendants: His original complaint *did* sue individual defendants and *did* allege procedural-due-process claims. R.1 at 5-7 ¶¶22-33. But his proposed amendments did not add individual county defendants or add any claims against the county. R.26 at 2-4.

When determining whether leave to amend was futile, the district court did not err by confining its analysis to Fulton's proposed amended complaint. *See Coventry First*, 605 F.3d at 870 n.3. Nor did the district court abuse its discretion by failing to sua sponte raise possible amendments that Fulton never tried to make or asked the district court to consider. R.55 at 9 n.5; *see U.S. ex rel. 84Partners v. Nuflo*, 79 F.4th 1353, 1363 (11th Cir. 2023); *Coventry First*, 605 F.3d at 870 & n.3. At all times, Fulton was represented by counsel. And the district court considered not one but *two* of his requests to amend—neither one of which proposed any of the new changes he's proposing now. R.26 at 4-5; R.51 at 1-2. The district court did not "[d]en[y] Fulton even a single opportunity to amend." *Cf.* EB-Br.61. It considered and rightly rejected two tries as futile.

Even if Fulton's procedural choices made him lose an otherwise winnable claim, *cf.* EB-Br.61-62 (calling this result "unjust"), there is "no merit to the contention that

dismissal" based on his lawyer's litigation judgment "imposes an unjust penalty." *Link v. Wabash R. Co.*, 370 U.S. 626, 633-34 (1962). "Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent." *Id.* "[K]eeping this suit alive merely because plaintiff should not be penalized for the omissions of his own attorney would be visiting the sins of plaintiff's lawyer upon the defendant." *Id.* at 634 n.10.

Perhaps Fulton's trial lawyers had good reasons not to propose the amendments he now presses. On *Monell*, for example, Fulton now says "it was *presumably*" the Fulton County Attorney "who determined that the County was not required to return the horses or pay just compensation." EB-Br.59-60 (emphasis added). Perhaps Fulton's trial lawyers lacked a Rule 11 basis for pleading that presumption as fact, which is why they conceded to the panel that "[t]he trial court was right that *Monell* … bars Mr. Fulton's Takings Clause claim raised through §1983." CA11-Doc.13 at 12. Or perhaps those lawyers knew that such a speculative "presumption" is insufficient under *Twombly* and *Iqbal*. *See McCullough v. Bd. of Regents of the Univ. Sys. of Ga.*, 623 F. App'x 980, 983 (11th Cir. 2015); *Doe v. Samford Univ.*, 29 F.4th 675, 685 (11th Cir. 2022). As for Fulton's state-law claims, perhaps his lawyers knew those claims would fail under Georgia's presentment requirement for counties, OCGA §36-11-1—a defense that the county would have invoked if Fulton had tried to plead state-law claims. And perhaps they thought injecting that issue would jeopardize Fulton's *federal* claims too, as a court might decide

to borrow Georgia's presentment requirement when fashioning a cause of action under the Takings Clause.

Fulton's other new ideas for amendments face even harder problems, including jurisdiction. Without a valid federal claim, the district court would lack jurisdiction over any state-law claims, since all actual and contemplated parties lack diversity of citizenship. EB-Br.59 n.13; *see* R.1-1 at 1 (listing all parties' residence as Georgia). And Fulton's arguments about adding new defendants or procedural-due-process claims against the county are outside *this* Court's jurisdiction on appeal. In his notice of appeal, Fulton appealed the district court's "February 24, 2021 Order" and its "Final Judgment entered on May 11, 2022 (only as to Defendant Fulton County Board of Commissioners)." R.57 at 1-2. His notice of appeal cannot be read to include procedural-due-process claims, which were addressed in a separate order and never alleged against the county. *See* R.55; R.1 at 5-7 ¶¶22-33. And it cannot be read to include defendants other than the county itself; Fulton's notice reiterates that "[n]o other Defendant is a party to this appeal." R.57 at 2. "[W]here some portions of a judgment and some orders are expressly made a part of the appeal," this Court "must infer that the appellant did not intend to appeal other unmentioned orders or judgments" and cannot exercise jurisdiction over them. *Osterneck v. E.T. Barwick Indus.*, 825 F.2d 1521, 1528-29 (11th Cir. 1987).

Fulton made strategic choices that he now regrets. It happens. But those choices are not a reason to craft a rules-free cause of action out of the penumbral emanations of the Takings Clause—one that apparently escaped the country's notice for at least a

century, and one that overrides the cause of action that Congress actually passed through the federalism-protecting procedures of bicameralism and presentment.

## CONCLUSION

This Court should affirm the district court.

Dated: August 19, 2026

Respectfully submitted,

*/s/ Cameron T. Norris*

Cameron T. Norris
Gilbert C. Dickey
Nicholas B. Venable*
CONSOVOY MCCARTHY PLLC
ANTONIN SCALIA LAW SCHOOL
SUPREME COURT CLINIC
1600 Wilson Boulevard, Suite 700
Arlington, Virginia 22209
(703) 243-9423
cam@consovoymccarthy.com

*Supervised by principals of the firm admitted to practice in Virginia

Michael D. Hoffer
Karen Woodward
CRUSER, MITCHELL, NOVITZ, SANCHEZ, GASTON & ZIMET, LLP
275 Scientific Dr., Ste. 2000
Peachtree Corners, Georgia 30092
(404) 881-2622

*Counsel for Defendant-Appellee*

## CERTIFICATE OF COMPLIANCE

This brief complies with Rule 40(d)(3) because it contains 12,162 words, excluding the parts that can be excluded. It also complies with Rules 32(a)(5)-(6) and Circuit Rule 27-1(a)(11) because it's prepared in a proportionally spaced face using Microsoft Word 2016 in 14-point Garamond font.

Dated: August 19, 2026 *_/s/ Cameron T. Norris_*

## CERTIFICATE OF SERVICE

I e-filed this brief, which will email everyone requiring notice.

Dated: August 19, 2026 *_/s/ Cameron T. Norris_*