**No. 22-12041**

UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

BRANDON FULTON,
*Plaintiff/Appellant*,

v.

FULTON COUNTY BOARD OF COMMISSIONERS,
*Defendant/Appellee*, and

PAUL L. HOWARD, JR.,
*Defendant.*

Appeal from the United States District Court for the Northern District of Georgia
No. 1:20-cv-01936-SCJ (Hon. Steve C. Jones)

# BRIEF FOR THE UNITED STATES AS AMICUS CURIAE IN SUPPORT OF DEFENDANT/APPELLEE


ADAM R.F. GUSTAFSON
*Principal Deputy Assistant Attorney General*

AMBER B. BLAHA
JOHN L. SMELTZER
Environment & Natural Resources Division
U.S. Department of Justice
Post Office Box 7415
Washington, DC 20044
(202) 305-0343
john.smeltzer@usdoj.gov

**CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT**

In accordance with Eleventh Circuit Rule 26.1-1, I hereby certify, to the best of my knowledge, that the certificates of interested parties previously filed by the appellants, appellees, and amici curiae are correct and complete (excepting the persons listed below), and that the following persons may have an interest in the outcome of this case:

- Blaha, Amber B., U.S. Department of Justice, Environment & Natural Resources Division, counsel for the United States;
- Gustafson, Adam R.F., Principal Deputy Assistant Attorney General, U.S. Department of Justice, Environment & Natural Resources Division, counsel for the United States;
- Smeltzer, John L., U.S. Department of Justice, Environment & Natural Resources Division, counsel for the United States.

No publicly traded company or corporation has an interest in the outcome of this case or appeal.

/s/ *John L. Smeltzer*

John L. Smeltzer
Attorney for Amicus Curiae the United States

Dated: August 19, 2026

**TABLE OF CONTENTS**


TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

STATEMENT OF THE ISSUES .......... 2

STATEMENT OF THE CASE .......... 3

A. Relevant Pleadings .......... 3

B. District Court Decision .......... 4

C. Panel Decision .......... 5

SUMMARY OF ARGUMENT .......... 6

ARGUMENT .......... 7

I. The Takings Clause provides no cause of action for damages. .......... 7

A. There is no express cause of action for damages in the language of the Takings Clause. .......... 7

B. The Takings Clause cannot be construed as impliedly providing a cause of action for damages. .......... 12

C. The Fourteenth Amendment did not enlarge Fifth Amendment protections. .......... 15

II. Fulton failed to state a claim under the Takings Clause. .......... 18

A. Fulton failed to allege facts showing an authorized taking for a public purpose. .......... 18

B. Section 1983 need not be construed as leaving property owners without redress for municipal takings. .......... 21

CONCLUSION .......... 28

CERTIFICATE OF COMPLIANCE

## TABLE OF AUTHORITIES

### Cases

*AmeriSource Corp. v. United States*,
525 F.3d 1149 (Fed. Cir. 2008) ....................27

*Armstrong v. Exceptional Child Ctr., Inc.*,
575 U.S. 320 (2015)....................8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................21

*Bivens v. Six Unknown Fed. Narcotics Agents*,
403 U.S. 388 (1971)....................12

*Brott v. United States*,
858 F.3d 425 (6th Cir. 2017) ....................14

*Chabad Chayil, Inc. v. School Board of Miami-Dade County, Florida*, 48 F.4th 1222, 1229 (11th Cir. 2022)....................23

*Cisco Sys., Inc. v. Doe I*,
146 S. Ct. 1882 (2026)....................12

*Cohens v. Virginia*,
19 U.S. (6 Wheat.) 264 (1821)....................13

*Correctional Services Corp. v. Malesko*,
534 U.S. 61 (2001)....................5

*Darby Development Company, Inc. v. United States*,
112 F.4th 1017 (Fed. Cir. 2024) .................... 21, 23, 25-26

*Del-Rio Drilling Programs, Inc. v. United States*,
146 F.3d 1358 (Fed. Cir. 1998) ....................19, 21, 25, 26

*DeVillier v. Texas*,
601 U.S. 285 (2024)....................1, 8, 9, 10, 12, 27

*Eastern Enterprises v. Apfel*,
524 U.S. 498 (1998)........16

*Egbert v. Boule*,
596 U.S. 482 (2022)........12

*F.D.I.C. v. Meyer*,
510 U.S. 471 (1994)........13

*First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*, 482 U.S. 304 (1987)........10, 13

*Frein v. Pennsylvania State Police*,
47 F.4th 247 (3d Cir. 2022)........21

*Fulton v. Fulton Conty Board of Commissioners*,
148 F.4th 1224 (11th Cir. 2025)........5, 9, 21, 23, 24

*GeorgiaCarry.Org, Inc. v. Georgia,*
687 F.3d 1244 (11th Cir. 2012)........27

*Glidden Co. v. Zdanok*,
370 U.S. 530 (1962)........13

*Great Falls Mfg. Co. v. Garland*,
124 U.S. 581 (1888)........24

*Greenbaum v. Islamic Republic of Iran*,
67 F.4th 428 (D.C. Cir. 2023)........14

*Hernandez v. Mesa*,
589 U.S. 93 (2020)........8

*Jenkins v. United States*,
71 F.4th 1367 (Fed. Cir. 2023)........26-27

*Knick v. Township of Scott, Pennsylvania*,
588 U.S. 180 (2019)........9, 10, 11, 16
17, 18, 27

*Lane v. Pena*,
518 U.S. 187 (1996)....................................................................................14

*Lynch v. United States*,
292 U.S. 571 (1934)....................................................................................13

*Maine Community Health Options v. United States*,
590 US. 296 (2020)........................................................................................9

*Malone v. Bowdoin*,
369 U.S. 643 (1962)........................................................................................8

*McDonald v. City of Chicago, Ill.*,
561 U.S. 742, 759-64 (2010) ...............................................................7, 17

*McLaughlin v. City of LaGrange*,
662 F.3d 1385 (11th Cir. 1981) .....................................................................5

*Meigs v. McClung's Lessee*,
13 U.S. (9 Cranch) 11 (1815) .........................................................................9

*Moden v. United States*,
404 F.3d 1335 (Fed. Cir. 2005). ....................................................................18

*Monell v. Department of Social Services of New York City*,
436 U.S. 658 (1978)................................................................ 4-5, 22, 24, 27

*Oden, LLC v. City of Rome, Georgia*,
707 Fed. Appx. 584 (11th Cir. 2017)............................................................ 26

*OPM v. Richmond*,
496 U.S. 414 (1990)....................................................................................14

*Owen v. City of Independence, Missouri*,
445 U.S. 622 (1980)...............................................................17, 22, 23, 27

*Petro-Hunt, LLC v. United States*,
862 F.3d 1370 (Fed. Cir. 2017) ....................................................................16

*Portsmouth Harbor Land & Hotel Co. v. U.S.*,
260 U.S. 327 (1922)....................................................................................24

*Ramirez de Arellano v. Weinberger*, 724 F.2d 143 (D.C. Cir. 1983), vacated & reheard, 745 F.2d 1500 (D.C. Cir. 1984) .......................... 23-24

*Reeside v. Walker*, 52 U.S. (11 How.) 272 (1851) ............................................................15

*Reeves v. City of Jackson*, 608 F.2d 644 (5th Cir. 1979) ...............................................................5

*Ruckelshaus v. Monsanto Co.*, 467 U.S. 986 (1984)...........................................................................25

*Sammons v. United States*, 860 F.3d 296 (5th Cir. 2017) ..............................................................14

*Smith v. United States*, 14 F.4th 1228 (11th Cir. 2023) ...........................................................14

*United States v. Bormes*, 568 U.S. 6 (2012)..............................................................................16

*United States v. Causby*, 328 U.S. 256 (1946) .........................................................................24

*United States v. Dow*, 357 U.S. 17 (1958)............................................................................18

*United States v. Lee*, 106 U.S. 196 (1882)........................................................................8, 9

*United States v. Navajo Nation*, 537 U.S. 488 (2003)..........................................................................16

*United States v. Sherwood*, 312 U.S. 584 (1941)..........................................................................15

*United States v. Testan*, 424 U.S. 392 (1976)..........................................................................16

*Ware v. United States*, 626 F.2d 1278 (5th Cir. 1980) ............................................................14

*Will v. Michigan Dept. of State Police*,
491 U.S. 58 (1989) .......... 27

*Williams v. United States*,
289 U.S. 553 (1933) .......... 13, 15

*Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985) .......... 11

**Federal Statutes & Session Law**

28 U.S.C. § 1346(a)(2) .......... 16
28 U.S.C. § 1491(a)(1) .......... 11. 14
42 U.S.C. § 1983 .......... 11, 17, 22
Act of Mar. 3, 1887, ch. 359, § 1, 24 Stat. 505 .......... 16

**State Statutes**

Ga. Code Ann. § 4-13-3 .......... 19
Ga. Code Ann. § 4-13-4 .......... 19
Ga. Code Ann. § 4-13-5 .......... 19
Ga. Code Ann. § 4-13-6 .......... 19
Ga. Code Ann. § 4-13-7 .......... 19, 20
Ga. Code Ann. § 16-12-4 .......... 3, 19
Ga. Code Ann. § 17-5-54 .......... 20

**Other**

Robert Brauneis, The First Constitutional Tort: The Remedial Revolution in Nineteenth Century State Just Compensation Law, 52 Vand. L. Rev. 57, 67-83 (1999) .......... 10

Paul F. Figle & Jay Tidmarsh, The Appropriations Power and Sovereign Immunity, 107 Mich. L. Rev. 1207 (2009) .......... 14

6 P. Nichols, Eminent Domain § 24.51 (3d. rev. ed. 1972) .......... 10

## INTRODUCTION

In dismissing this takings claim brought by Plaintiff-Appellant Brandon Fulton ("Fulton") under 42 U.S.C. § 1983—on the grounds that Fulton failed to plead that the alleged taking resulted from an official policy or practice of Defendant-Appellee Fulton County, Georgia (the "County")—the district court disallowed Fulton's request to amend his complaint to assert a claim directly under the Fifth and Fourteenth Amendments of the U.S. Constitution. The court held that amendment would be futile because there is no independent cause of action under the Takings Clause. On appeal, Fulton challenges this latter holding only. The United States has a substantial interest in this question because it also implicates when and how the federal government may be sued for alleged takings.

The district court's ruling should be affirmed for two reasons. *First*, the Takings Clause must be construed in relation to federal sovereign immunity and Congress's "power of the purse" under the Appropriations Clause and related constitutional provisions. Under longstanding precedent, there is no direct constitutional right to compel the payment of monetary damages from the United States through judicial action. The United States briefed and presented oral argument on this question in the Supreme Court in *DeVillier v. Texas*, 601 U.S. 285 (2024). This brief reflects the government's views previously expressed in *DeVillier*, See U.S. Amicus Br., *DeVillier*, *supra* ("U.S. *DeVillier* Br.").

*Second*, Fulton's failure to allege the circumstances of the taking—namely, who refused to return the horses and why—is fatal to his Takings Clause claim with or without § 1983. Fulton's bare-bones pleadings gave the district court no basis to conclude that the taking was authorized and for a public purpose as necessary to show a government violation of the Takings Clause. Nor have Fulton or his supporting amici provided grounds for believing that municipal action meeting the standard for Takings Clause liability would not also constitute official action for purposes of § 1983. For these reasons, this Court need not address whether the Takings Clause provides an implied cause of action for damages.

## STATEMENT OF THE ISSUES

1. Whether the Fifth Amendment Takings Clause provides an implied cause of action for damages resulting from its violation, and
2. Whether Fulton pled any claim or identified any limitation in 42 U.S.C. § 1983 that requires this Court to consider whether the Takings Clause provides an implied cause of action separate from the cause of action available under § 1983.

## STATEMENT OF THE CASE

### A. Relevant Pleadings

Fulton was arrested by Fulton County animal control officers for felony cruelty to horses owned by him. App. 5 (¶12);[1] *see also* Ga. Code Ann. §§ 16-12-4(d), (e) (aggravated cruelty to animals). In his complaint, Fulton alleged that, on the day of his arrest, County officials seized seven of his horses, App. 5 (¶11), that the Magistrate Court of Fulton County issued a bond order requiring the relinquishment of those horses, App. 6 (¶13), and that the County retained custody of the horses after his arrest "in compliance with the bond order," App. 6 (¶14). On April 5, 2018, the County District Attorney dismissed the felony charges that had been filed against Fulton. App. 6 (¶15). Thereafter, Fulton allegedly made "repeated . . . efforts and requests" to the County for the return of the horses "or their equivalent value." App. 6 (¶17).

According to Fulton, County officials refused to return the horses and "[u]pon [his] information and belief, . . . placed one or more of the horses for adoption and/or sale." App. 6 (¶¶17, 18). Fulton sought damages under the Fifth Amendment Takings Clause and 42 U.S.C. § 1983 to remedy these alleged violations, naming the "Fulton County Board of Commissioners" as the sole

[1] "App." citations are to the Appendix filed by Appellant Brandon Fulton on Oct. 11, 2022 (Doc. 15-1).

defendant. App. 7 (¶21). Fulton does not allege in his complaint to whom he made his requests for the return of the horses, the identity of the County officials who allegedly refused to return the horses, or the reasons County officials gave for such refusal. *See* App. 6-7, 81-82.

### B. District Court Decision

The County moved to dismiss Fulton's complaint for failure to state a claim, arguing, among other things, that the Board of Commissioners could not be sued on a theory of *respondeat superior* and that Fulton had failed to allege that the taking of his horses resulted from an official County policy or practice. App. 25-26. In response, Fulton moved to amend his complaint to assert a just compensation claim against the County directly under the Fifth Amendment. App. 46, 57-58. But Fulton did not add any allegations about which County officials refused to return the horses or why, or that the taking was the result of an official County policy or practice. App. 54-59. Fulton instead argued that such proof is necessary only to show municipal liability for a constitutional tort and not to show municipal liability for a Fifth Amendment taking. App. 47-48.

The district court disagreed. The court explained that a "constitutional tort" is any action alleging the violation of a constitutional right and that proof of official action is necessary whenever a municipality is the named defendant. App. 82 (citing *Monell v. Department of Social Services of New York City*, 436

U.S. 658, 694 (1978)). Because Plaintiff "pleaded no facts as to how his requests were refused or from where those refusals came," the district court determined that there was no basis for inferring that the alleged "constitutional deprivation [was] the result of an official policy or practice of Fulton County rather than the independent action of a tortfeasor-employee." App. 82.

In addition, the court determined that Plaintiff's proposed amendment to sue the County directly under the Takings Clause would be futile: (1) because courts will not imply constitutional causes of action where "a statute provides an adequate remedy," *see* App. 83 (quoting *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 67–68 (2001)); and (2) because limitations on municipal liability under § 1983 generally apply to claims "based directly on the Constitution," *id.* (citing *McLaughlin v. City of LaGrange*, 662 F.3d 1385, 1388 n.1 (11th Cir. 1981) (quoting *Reeves v. City of Jackson*, 608 F.2d 644, 649–50 n.2 (5th Cir. 1979)).

**C. Panel Decision**

The divided panel reversed, holding that the Takings Clause provides a direct cause of action for damages broader than the action provided under § 1983 and that a direct Takings Clause claim is available to Fulton in this case. *Fulton v. Fulton Conty Board of Commissioners*, 148 F.4th 1224 (11th Cir. 2025).

## SUMMARY OF ARGUMENT

1. The Fifth Amendment Takings Clause prohibits the United States from taking property for a "public purpose" without paying just compensation, and federal courts have authority in equity to enforce this prohibition through injunctive relief. But the Takings Clause provides no express cause of action for damages and no such cause of action may be properly implied. Implying constitutional rights of action is a disfavored exercise. And an implied right of action to recover monetary damages from the United States treasury cannot be squared with federal sovereign immunity, the related constitutional provisions giving Congress the power over federal appropriations and obligation to pay federal debts, and the history of those provisions and the Takings Clause. Nor did the Fourteenth Amendment expand the scope of the Fifth Amendment, as applied against the states or local governments. The Fourteenth Amendment empowered Congress to abrogate state sovereign immunity to enable suits for the enforcement of federal constitutional rights, which Congress accomplished as to municipalities when it enacted § 1983. No federal cause of action against a municipality for constitutional torts exists outside of § 1983.

2. There is also no need in this case for this Court to consider whether there is a direct cause of action against municipalities under the Takings Clause and the Fourteenth Amendment. In addition to failing to allege facts sufficient to

support an inference of "official" municipal action for purposes of § 1983, Fulton's bare-bones complaint and proposed amended complaint similarly fail to allege sufficient facts to show an "authorized" taking for a "public purpose" as necessary to prove Takings Clause liability. Nor have Fulton or his supporting amici identified grounds for believing that if he had alleged facts sufficient to show an authorized taking for a public purpose that such facts would not also satisfy the requirements of § 1983 as construed by *Monell*. The question whether the Takings Clause provides its own cause of action arose in *DeVillier* only because § 1983 does not provide a cause of action against *states*. No court has heretofore recognized any deficiency in § 1983 as a vehicle for vindicating Takings Clause rights against municipalities.

## ARGUMENT

### I. The Takings Clause provides no cause of action for damages.

#### A. There is no express cause of action for damages in the language of the Takings Clause.

Through the Due Process Clause of the Fourteenth Amendment, almost all individual rights and protections in the Bill of Rights, including the rights guaranteed in the Takings Clause, apply against states and municipalities "according to the same standards that protect those personal rights against federal encroachment." *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 759-64 (2010). Federal courts have long exercised their powers in equity to *enjoin* violations of the

Bill of Rights and other "unconstitutional actions." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326-327, 329 (2015). But the Constitution does not provide a cause of action to recover *damages* for such violations. *See generally Hernandez v. Mesa*, 589 U.S. 93, 99-102 (2020); *see also DeVillier*, 601 U.S. at 292.

The Takings Clause is no exception. Although it requires the government to pay "just compensation" as a condition of taking private property, it does not explicitly provide a monetary remedy in court. *See* U.S. Const. Amend. V. Instead, it simply states ". . . nor shall private property be taken for public use, without just compensation." In other words, the Takings Clause *prohibits* the government from taking "private property . . . for public use," unless the government has provided "just compensation" for the property. *Id.* If federal officials violate this prohibition, a court in *equity*—in a suit against the officials rather than the United States—may grant injunctive relief requiring the officials to surrender the property unless just compensation is made. *See*, *e.g.*, *United States v. Lee*, 106 U.S. 196, 218 (1882) (affirming order of ejectment against officials possessing private property without paying just compensation); *see also Malone v. Bowdoin*, 369 U.S. 643, 648 (1962) (recognizing equitable claim to ejectment); *see also* U.S. *DeVillier* Br. 8-9, 30. But the Fifth Amendment does not grant federal

courts the power to compel the United States' payment of just compensation from the U.S. Treasury.

"At the time of the [Nation's] founding," "there were no general causes of action through which plaintiffs could obtain compensation for property taken for public use." *Knick v. Township of Scott, Pennsylvania*, 588 U.S. 180, 199 (2019). Nor did the Constitution "expressly create" such a right of action. *Maine Community Health Options v. United States*, 590 US. 296, 323 n.12 (2020). Rather, "if a government took property without payment, a court would set aside the taking because it violated the Constitution and order the property restored to its owner." *Knick*, 588 U.S. at 200.

Historical precedent illustrates this point. *See*, *e.g., Lee*, 106 U.S. at 118 (action for ejectment); *Meigs v. McClung's Lessee*, 13 U.S. (9 Cranch) 11, 12 (1815) (same). This precedent shows that the "Takings Clause provided the substantive rule of decision for *equitable* claims" in federal court, but "does not establish" that the Takings Clause "creates a cause of action for *damages*." *DeVillier*, 601 U.S. at 292 (emphasis added); see U.S. *DeVillier* Br. 16-17 & n.1

As the panel observed, there are historic state court cases adjudicating common law trespass claims for damages against local officials alleged to have taken private property. *See Fulton*, 148 F.4th at 1250 (collecting cases). In those cases, courts disallowed trespass defenses based on official authorization and the

power of eminent domain, where named officers took property in violation of constitutional guarantees of just compensation. *Id*.; *see also* Robert Brauneis, *The First Constitutional Tort: The Remedial Revolution in Nineteenth Century State Just Compensation Law*, 52 Vand. L. Rev. 57, 67-83 (1999). But such cases involved state common law tort claims against individuals or corporate entities, where the Fifth Amendment served to defeat an asserted defense. These cases did not construe the Takings Clause or hold that it provides an independent cause of action for damages against officials or entities, much less the United States. *See* U.S. *DeVillier* Br. 15-18.

To be sure, given the "self-executing character" of the Takings Clause "with respect to compensation," an obligation to pay just compensation arises as soon as an uncompensated taking occurs, thus supporting a "constitutional claim for just compensation" without need for additional implementing action. *Knick*, 588 U.S. at 192-94 (quoting 6 P. Nichols, Eminent Domain § 24.51 (3d. rev. ed. 1972)); *see also DeVillier*, 601 U.S. at 291; U.S. *DeVillier* Br. 25-28.[2] But *Knick* did not use

---

[2] Although "just compensation" has been deemed the constitutional "remedy" for a taking, *see Knick*, 588 U.S. at 193 (citation omitted), the right to just compensation is not, strictly speaking, a remedy for a constitutional wrong. The Fifth Amendment "does not prohibit [government] taking[s] of private property," but instead "places a condition" on the exercise of eminent domain. *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*, 482 U.S. 304, 314 (1987).

the term "constitutional claim" to suggest that the Constitution itself confers a cause of action.

To the contrary, *Knick* concerned a claim under 42 U.S.C. § 1983, *see* 588 U.S. at 187, which provides a statutory cause of action in federal court against any "person" who, acting under color of state law, deprives any other person of any "rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. Analogizing to federal takings claims under the Tucker Act, 28 U.S.C. § 1491(a)(1), the Supreme Court held that the substantive right to just compensation under the Fifth Amendment arises the moment a taking occurs, *Knick*, 588 U.S. at 189-194, and, therefore, that a plaintiff may bring a § 1983 Takings Clause claim without first exhausting compensation remedies under state law, *id*. at 185, 193-204 (overruling *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985)). But nothing in the text of the Fifth Amendment or Supreme Court precedent dictates that a plaintiff may sue the United States or a state or local government in federal court to recover damages for a Takings Clause violation, in the absence of a statutory cause of action.[3]

---

[3] In *DeVillier*, the Supreme Court granted certiorari on this question but ultimately deemed it "imprudent" to "decide whether a property owner may sue for just compensation directly under the Takings Clause," where Texas law "provide[d] a

### B. The Takings Clause cannot be construed as impliedly providing a cause of action for damages.

Nor may a cause of action for damages be implied under the Takings Clause. "Constitutional rights do not typically come with a built-in cause of action to allow for private enforcement in courts." *DeVillier,* 601 U.S. at 291. In *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), the Supreme Court "broke new ground" by holding that a person subject to an allegedly unlawful arrest under the Fourth Amendment could bring a claim for damages against responsible federal officials, even though Congress had not authorized such a claim. *Hernandez*, 589 U.S. at 99. But in the decades since, the Court has recognized that implying damages claims for constitutional violations "risks arrogating legislative power." *Id.* at 100. The Court has now refused to expand *Bivens* beyond its factual context and has "virtually eliminated the practice of fashioning" implied rights of action because "judicially created causes of action offend the separation of powers in almost every circumstance." *Cisco Sys., Inc. v. Doe I*, 146 S. Ct. 1882, 1891 (2026). Thus, if there is "'[e]ven a *single* sound reason'" to "'think Congress might doubt the efficacy or necessity of a damages remedy, the courts must refrain from creating it.'" *Id*. (quoting *Egbert v. Boule*, 596 U.S. 482, 491 (2022)).

---

vehicle for takings claims based on both the Texas Constitution and the [federal] Takings Clause." *Id*. at 290, 292-93.

For at least three reasons, the Takings Clause cannot be construed as implicitly creating a cause of action against the United States. *First*, unlike *Bivens* claims, which are directed toward federal officials in their *personal* capacity, *see F.D.I.C. v. Meyer*, 510 U.S. 471, 486 (1994), a claim for damages under the Takings Clause is directed toward the government itself and the government's exercise of eminent domain. The rule "that 'the sovereign power is immune from suit'" was "'well settled and understood' at the time of the Constitutional Convention." *Glidden Co. v. Zdanok*, 370 U.S. 530, 562-564 (1962) (plurality opinion) (quoting *Williams v. United States*, 289 U.S. 553, 573 (1933)). It was "universally" accepted that "no suit" could be "commenced or prosecuted against the United States" without federal consent. *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 411-412 (1821) (Marshall, C.J.). Such immunity applies "whatever the character of the proceeding or the source of the right sought to be enforced," including when the government is alleged to have violated "rights conferred upon the citizen by the Constitution." *Lynch v. United States*, 292 U.S. 571, 582 (1934).

Because the Takings Clause, by its terms, "places a condition on the exercise of [sovereign] power," *First English*, 482 U.S. at 314, the question whether the Takings Clause guarantees a cause of action for damages against the United States is inseparable from the question whether the Takings Clause waives federal sovereign immunity. At least two Courts of Appeals have rejected the view that

the Takings Clause waives federal sovereign immunity. *See Sammons v. United States*, 860 F.3d 296, 300 (5th Cir. 2017) (citing *Ware v. United States*, 626 F.2d 1278, 1279–80 (5th Cir. 1980)); *Brott v. United States*, 858 F.3d 425 (6th Cir. 2017). And the Supreme Court has never found an implied waiver of sovereign immunity anywhere within the constitution. Rather, the power to waive federal sovereign immunity resides exclusively with Congress. *Lane v. Pena*, 518 U.S. 187, 192, 196 (1996); *Greenbaum v. Islamic Republic of Iran*, 67 F.4th 428, 433 (D.C. Cir. 2023); *see also Smith v. United States*, 14 F.4th 1228, 1231 (11th Cir. 2023).

*Second*, the need for a Congressional waiver of sovereign immunity as a prerequisite to any damages claim against the federal government arises from and "protects . . . Congress's power of the purse" as set out in the Appropriations Clause. *Greenbaum*, 67 F.4th at 433; *see also* Paul F. Figle & Jay Tidmarsh, The Appropriations Power and Sovereign Immunity, 107 Mich. L. Rev. 1207 (2009). That clause provides that "[n]o Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law." U.S. Const. Art. I, § 9, Cl. 7. This is "an explicit rule of decision" requiring that any "claim for money from the Federal Treasury," including in any "judicial proceeding seeking payment of public funds," be "authorized by a statute." *OPM v. Richmond*, 496 U.S. 414, 424-25 (1990). "Any exercise of [judicial] power granted by the Constitution"

therefore is "limited by a valid reservation of congressional control over funds in the Treasury," ensuring "that public funds will be spent according to the letter of the difficult judgments reached by Congress as to the common good" rather than "the individual pleas of litigants." *Id*. at 425, 428; *see Reeside v. Walker*, 52 U.S. (11 How.) 272, 291 (1851).

*Third,* the resolution of "claims for money against the United States" is "a function which belongs primarily to Congress as an incident of its power to pay the debts of the United States." *Williams*, 289 U.S. at 569 (citation omitted); see U.S. Const. Art. I, § 8, Cl. 1 ("The Congress shall have power . . . to pay the Debts . . . of the United States."); *United States v. Sherwood*, 312 U.S. 584, 587 (1941). Congress, in its "discretion," may either "exercise [this authority] directly" or "delegate [it] to other agencies." *Williams*, 289 U.S. at 569 (citation omitted); *see id*. at 580. In either case, claims for payments of public debts—including claims for "just compensation under the Fifth Amendment"—are claims for which "there is *no constitutional right* to a *judicial remedy*," *id*. at 579-581 (emphasis added). The availability of a damages claim payable from the United States Treasury depends upon an act of Congress. *Id.*

### C. The Fourteenth Amendment did not enlarge Fifth Amendment protections.

The long history of takings litigation—and the absence of any recognized non-statutory cause of action for damages—confirms that neither the Fifth

Amendment, nor its incorporation to States through the Fourteenth Amendment in 1897, confers such a cause of action. *See* U.S. *DeVillier* Br. 8, 15-23. In 1887, Congress authorized takings claims against the United States through the enactment of the Tucker Act. *See* Act of Mar. 3, 1887, ch. 359, § 1, 24 Stat. 505 (codified as amended at 28 U.S.C. 1491(a)(1)); *see also Knick*, 588 U.S. at 189-90. "The Tucker Act's jurisdictional grant, and accompanying immunity waiver, supplied the missing ingredient for an action against the United States for the breach of monetary obligations not otherwise judicially enforceable." *United States v. Bormes*, 568 U.S. 6, 12 (2012). Although the Tucker Act "is not itself a source of substantive rights," *United States v. Navajo Nation*, 537 U.S. 488, 503 (2003), it provides a cause of action for damages in combination with substantive laws, like the Takings Clause, that "fairly [can] be interpreted as mandating compensation by the Federal Government for the damage sustained." *United States v. Testan*, 424 U.S. 392, 400 (1976) (citation omitted) *see also Knick*, 588 U.S. at 189 ("The Tucker Act . . . provides the standard procedure for bringing [takings] claims"); U.S. *Devilllier* Br. 22.[4]

[4] Tucker Act claims exceeding $10,000 are exclusive to the Court of Federal Claims, *see* 28 U.S.C. § 1491(a)(1); *Eastern Enterprises v. Apfel*, 524 U.S. 498, 520 (1998), an Article I court, *see Petro-Hunt, LLC v. United States*, 862 F.3d 1370, 1385 (Fed. Cir. 2017). The "Little Tucker Act" provides concurrent jurisdiction in federal district court for takings claims not exceeding $10,000. 28 U.S.C. § 1346(a)(2); *Bormes*, 568 U.S. at 10.

No different analysis applies to Takings Clause claims asserted via the Fourteenth Amendment against municipalities. Courts apply the Takings Clause against local governments according to the "same standards" that govern such claims against the federal government. *McDonald*, 561 U.S. at 759-64. Because the Takings Clause does not guarantee a cause of action for damages against the United States, it cannot be construed as guaranteeing that procedural remedy in federal court against states or municipalities. Rather, any such federal cause of action must be provided by Congress.

The Fourteenth Amendment expressly gave Congress the "power to enforce, by appropriate legislation," the personal rights guaranteed thereunder. U.S. Const. Amend. XIV, § 5. Shortly after the Amendment was ratified in 1868, Congress enacted the Civil Rights Act of 1871, which included the cause of action now codified (as amended) at 42 U.S.C. § 1983. *See Owen v. City of Independence, Missouri*, 445 U.S. 622, 635-36 (1980). Section 1983 also abrogates the governmental immunity that municipalities would otherwise enjoy by virtue of state charters and state sovereignty, *Owen*, 445 U.S. at 647, and thus provides a federal Takings Clause claim against municipalities akin to the takings claim available under the Tucker Act against the United States, *see Knick*, 588 U.S. at 187-194. In both cases, the causes of action for damages are *statutory* rights, not constitutional guarantees. *See Knick*, 588 U.S. at 189.

## II. Fulton failed to state a claim under the Takings Clause.

### A. Fulton failed to allege facts showing an authorized taking for a public purpose.

Fulton seeks to amend his complaint—to add a claim directly under the Fifth Amendment—to circumvent the district court's dismissal of his § 1983 claim, which he does not challenge. But Fulton cannot cure the deficiency in his pleadings merely by disclaiming reliance on § 1983.

A claim for "just compensation" under the Takings Clause—also known as an "inverse condemnation" claim, *see Knick*, 588 U.S. at 186—presumes that public officials have duly exercised the government's power in eminent domain to "take private property *for a public purpose*." *See* U.S. Const. amend. V (emphasis added). As the Supreme Court explained in the context of federal takings, the "United States may take property pursuant to its power of eminent domain" by filing condemnation proceedings in court, or by "enter[ing] into physical possession of property" without initiating condemnation proceedings, in which case "the property owner is provided a remedy under the Tucker Act." *United States v. Dow*, 357 U.S. 17, 21 (1958). In the latter context, however, a plaintiff seeking just compensation must show, among other things, that the taking was an "authorized activity" that "appropriated a benefit to the government." *Moden v. United States*, 404 F.3d 1335, 1342 (Fed. Cir. 2005). If the activity is *unauthorized*, "the acts of officers may be enjoinable, but they do not constitute [a]

taking effective to vest . . . title in the government and entitlement to just compensation in the owner." *Del-Rio Drilling Programs, Inc. v. United States*, 146 F.3d 1358, 1362 (Fed. Cir. 1998) (cleaned up).

As the district court observed, Fulton's complaint and proposed amended complaint contained no allegations as to whom he made application for return of his horses, "how his requests were refused," or "from where those refusals came." App. 81-82. Under Georgia law, any "sheriff, deputy sheriff, or other law enforcement officer" may "impound any equine which has not been furnished with adequate food and water, which has not received humane care, or which has been subjected to cruelty in violation of Code Section 4-13-3," where an examination and "determination as to the condition or treatment of the equine" has been made "by a licensed veterinarian employed by the state or federal government," Ga. Code Ann. § 4-13-4; *see also id*. § 4-13-3(1) (referencing *id*. § 16-12-4). Georgia law requires State and municipal officers, upon notice to the owners, to hold impounded horses upon specified terms. *Id.* §§ 4-13-5, 4-13-6. An owner must meet various conditions to secure the return of an impounded horse, including provisions for the repayment of the costs of impoundment. *Id.* § 4-13-7. State and municipal officers may dispose of impounded horses via sale or otherwise, where an owner refuses or fails to satisfy the conditions for the return of the horses. *Id.*

In his complaint, Fulton cited a Georgia statute that requires law enforcement agencies to return to "the rightful owner," "any personal property used as evidence in [a] trial . . . within 30 days following the final judgment." App. 7 (citing Ga. Code Ann. § 17-5-54(c)(2)). But there was no trial in this case, and Fulton did not allege that his horses were being held by the County as evidence for trial, as opposed to for reasons of animal welfare. *See* App. 6-7, 58. Nor did Fulton allege that he applied for the return of the horses in accordance with the terms of any statute. *Id.*; *see also* Ga. Code Ann. §§ 4-13-7; 17-5-54(c)(3).

Because Fulton made no allegations regarding the County's compliance or noncompliance with applicable law, or who acted for the County and why, the district court had no basis on which to infer that the alleged "constitutional deprivation [was] the result of an official policy or practice of Fulton County rather than the independent action of a tortfeasor-employee." App. 82.[5] If Fulton's horses were taken by "tortfeasor-employees" acting in disregard of applicable law, he may have a claim under Section 1983 against those employees, for their

[5] In response to a motion to dismiss by individual Defendant Paul Howard (a former County District Attorney named in a separate due process claim, App. 7-8, 81), Fulton proffered some additional facts relating to the County's impoundment of his horses. *See* Response to Mr. Howard's Motion to Dismiss, N.D. Ga. No. 1:20-cv-01936-SCJ, Doc. 50 and attachments (Dec. 17, 2021); *see also* En Banc Brief for Appellant at 3, 40-43 (July 20, 2026). But this proffer came *after* the district court dismissed Fulton's claim against the County (Doc. 39 (Feb. 24, 2021)), and Fulton never sought reconsideration of that order.

unlawful taking of private property "under color of law." *See*, *e.g.*, *Frein v. Pennsylvania State Police*, 47 F.4th 247, 251-53 (3d Cir. 2022).

But the independent acts of tortfeasor employees do not give rise to an inverse condemnation claim against a municipality. *Cf. Del-Rio Drilling Programs, Inc*., 146 F.3d at 1362. By failing to allege an "authorized" taking "chargeable" to the County, Fulton failed to state a Takings Clause claim against the County under Section 1983 or otherwise. *See Darby Development Company, Inc. v. United States*, 112 F.4th 1017, 1027 (Fed. Cir. 2024); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation").

### B. Section 1983 need not be construed as leaving property owners without redress for municipal takings.

The panel majority determined that § 1983 as construed by *Monell* "makes the § 1983 remedy narrower" than the substantive guarantees of the Takings Clause, *Fulton*, 148 F.4th at 1256, leaving a "gap" in coverage and a "substantial class of plaintiffs" unable to recover just compensation (under § 1983) for Takings Clause violations, *id*. at 1258. This limitation, the panel reasoned, offends the Constitution, because "Congress [cannot] prescribe an exclusive remedy for uncompensated takings that is more restrictive that the Taking Clause's guarantees." *Id*. As explained (pp. 7-17, *supra*), the Takings Clause does not

guarantee a *damages* remedy in court for an uncompensated taking. But in any event, the panel majority's concerns regarding the scope of § 1983 are overstated.

Section 1983 provides "an action at law" or "suit in equity" against "every person, who under color of . . . [state or municipal] law," subjects another person to a "deprivation" of any "rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. As the Supreme Court observed in *Monell* itself, Congress enacted § 1983, in part, to impose liability on local governments for uncompensated takings of private property. *See Monell*, 463 U.S. at 685 n. 45 (quoting statement of Rep. Bingham, Cong. Globe, 42d Cong., 1st Sess., Appendix at 85 (1871)). Moreover, unlike individual officers, municipalities enjoy no qualified immunity for "good faith constitutional violations." *Owen*, 445 U.S. at 650. Nothing in the text of § 1983 or the Supreme Court cases interpreting § 1983 suggests that Congress intended a "gap" in the scope of § 1983 claims with respect to municipal takings.

To be sure, when holding that municipalities are "persons" subject to suit under § 1983, the Supreme Court explained that municipal liability arises only from an "official" action that causes a "constitutional tort," and not merely—under the principle of *respondeat superior*—because a municipality "employs a tortfeasor." *Monell*, 436 U.S. at 691. Expounding on *Monell*, this Court has determined that a plaintiff alleging municipal liability must identify: (1) "an

official policy," (2) "an unofficial custom or widespread practice that is so permanent and well settled as to constitute a custom and usage with the force of law," or (3) "a municipal official with final policymaking authority whose decision violated the plaintiff's constitutional rights." *See Chabad Chayil, Inc. v. School Board of Miami-Dade County, Florida*, 48 F.4th 1222, 1229 (11th Cir. 2022).

But there is no precedent for applying *Monell* (and thus construing § 1983) in a manner that would deprive property owners of the ability to sue municipalities for uncompensated takings that are "appropriately chargeable to the populace as a whole." *See Owen*, 445 U.S. at 657.[6] The panel relied on Tucker Act cases that imposed takings liability on the federal government in circumstances where federal officials exceeded or allegedly exceeded their statutory authority. *See Fulton*, 148 F.4th at 1256-58. These cases conclude that an "invasion of property rights" that goes beyond statutory authority may be properly "chargeable to the government," if the responsible federal officials act in good faith "within the general scope of their duties" and not contrary to an "express prohibition." *Darby Development Company*, 112 F.4th at 1024-27. Writing for the D.C. Circuit, then Judge Scalia described such liability as "akin to . . . the doctrine of *respondeat superior*,"

[6] In contrast, not every taking that qualifies as "official" municipal action under *Monell* would necessarily qualify as an "authorized" taking for a public purpose under Takings Clause precedent.

*Ramirez de Arellano v. Weinberger*, 724 F.2d 143, 151 (D.C. Cir. 1983) (Scalia, J.), vacated & reheard, 745 F.2d 1500 (D.C. Cir. 1984) (emphasis added). The panel contrasted this description with *Monell*'s holding that § 1983 does not impose liability based on respondeat superior. *See Fulton*, 148 F.4th at 1258 (citing *Monell*, 436 U.S. at 691).

As the D.C. Circuit made clear, however, governmental Takings Clause liability is "not as liberal" as *respondeat superior*. *Ramirez*, 724 F.2d at 151. Most inverse condemnation claims arise in circumstances where federal officials duly carry out their constitutional or statutory authorities in a manner that results in the taking of private property, but where the officials lack express condemnation authority. *See*, *e.g.*, *United States v. Causby*, 328 U.S. 256 (1946) (military overflights within approved glide paths deemed a compensable taking of a navigational servitude); *Portsmouth Harbor Land & Hotel Co. v. U.S.*, 260 U.S. 327 (1922) (repeated firing of guns from military fort across private property deemed a possible compensable taking of servitude); *see also Great Falls Mfg. Co. v. Garland*, 124 U.S. 581 (1888) (inverse condemnation proceeding allowed where an official took and occupied property within a statutory grant of condemnation authority, but beyond the footprint of a direct-condemnation survey). In this context, the taking of private property is not unauthorized per se. Rather, authority to take and retain the property in question is implied as part of a general statutory

authorization, subject to the remedy of just compensation under the Tucker Act. *See Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1016-17 (1984) (equitable relief is not available to enjoin takings of private property for public use duly authorized by general statutory authority, where Congress has provided a suit for the recovery of just compensation); *see also Knick*, 588 U.S. at 195.

It is true that the Federal Circuit has found federal takings liability in cases where federal authority to act (as distinguished from authority to condemn) has been challenged or found wanting. *See Darby Development Company*, 112 F.4th at 1024; *see also Del-Rio*, 146 F.3d at 1363. But these cases do not dispense with the understanding that takings liability is predicated on official action. *Darby* concerned an emergency order by the Centers for Disease Control and Prevention ("CDC"), in response to a Presidential directive, that prohibited housing evictions during the COVID-19 pandemic. 112 F.4th at 1020-21. The Federal Circuit held that alleged takings resulting from the CDC order were "authorized" for purposes of claims for just compensation under the Takings Clause, even though the order was ultimately vacated as ultra vires. *Id.* at 1021-22, 1023-27. The Federal Circuit held that the case did not implicate concerns about "guarding the public fisc," because the CDC had acted on the directive "of the President himself," Congress had once extended the CDC's order, and the combined action represented a

"sustained, comprehensive governmental effort bearing hallmarks of official governmental action." *Id.* at 1029.

In contrast to *Darby*, *Del-Rio* did not involve a judicial determination that a federal action, which caused an alleged taking, was ultra vires. *Del Rio* involved a federal decision to deny a drilling permit on a mineral lease. *See* 146 F.3d at 1360. The lessee merely alleged that the denial was ultra vires. 1360-62. The Federal Circuit held that any good faith permit denial was "authorized" for Takings Clause purposes and that the plaintiff was free to pursue a takings claim in lieu of challenging the permit denial. *Id.* at 1362-68.

Fulton and his supporting amici cite no reason to believe that a § 1983 suit would not lie against a municipality in a comparable circumstance; *e.g.*, where municipal officers duly charged with authority to occupy or seize private property for a public purpose exercise such authority in good faith. For example, if County officials retained Fulton's horses in good faith under Georgia's animal welfare statutes, the taking of the horses presumably would be an "official" action of County officials under Georgia law and would be subject to suit under § 1983, subject to any defenses the County might raise under its police powers (as distinguished from its powers of eminent domain), *see Oden, LLC v. City of Rome, Georgia*, 707 Fed. Appx. 584, 589-90 (11th Cir. 2017); *Jenkins v. United States*,

71 F.4th 1367, 1373 (Fed. Cir. 2023); *AmeriSource Corp. v. United States*, 525 F.3d 1149, 1153-55 (Fed. Cir. 2008).

Significantly, the issue whether the Takings Clause provides a direct cause of action separate from § 1983 arose in *DeVillier* because § 1983 does not abrogate state sovereign immunity, *see Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66 (1989), and provides no cause of action for an uncompensated taking by a state. *See DeVillier*, 601 U.S. at 290. No concerns were raised in *DeVillier* about limitations in § 1983 as a vehicle for vindicating Takings Clause rights against *municipalities*. And the Supreme Court has consistently ruled in favor of enabling § 1983 claims against municipalities. *See Monell*, 436 U.S. 664-95; at *Owen*, 445 U.S. at 635-657; *Knick*, 588 U.S. at 189-202.

* * *

Because Fulton failed in his original and proposed amended complaint to allege facts necessary to show a taking by the County—and because he makes no showing that a pleading sufficient to state a Takings Clause violation would not be redressable under § 1983—there is no cause for this Court to opine on whether the Takings Clause provides a damages claim independent from the cause of action provided by Congress in § 1983. *See GeorgiaCarry.Org, Inc. v. Georgia,* 687 F.3d 1244, 1253 (11th Cir. 2012) (court may not imply a constitutional cause of action where relief is available by statute).

## CONCLUSION

For the foregoing reasons, this Court should affirm the district court's judgment.

Respectfully Submitted

ADAM R.F. GUSTAFSON
*Principal Deputy Assistant Attorney General*

/s/ *John L. Smeltzer*

AMBER BLAHA
JOHN L. SMELTZER
Environment & Natural Resources Division
U.S. Department of Justice
Post Office Box 7415
Washington, DC 20044
(202) 305-0343
john.smeltzer@usdoj.gov

August 19, 2026
D.J. No. 90-12-18194

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS**

I certify that:

This amicus brief complies with the word limit of FRAP 29(a)(5) and 32(a)(7)(B)(i), because, excluding the parts of the documented exempted by FRAP 32(f), this brief contains **6,438** words.

This brief complies with the typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6).

/s/ *John L. Smeltzer*

John L. Smeltzer
Attorney for Amicus Curiae the United States
Dated: August 19, 2026